**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SANDRA GARZA, as<br>the personal representative<br>of THE ESTATE OF BRIAN SICKNICK<br><br>*Plaintiff,*<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:23-cv-00038 (APM)<br>)<br>)<br>) |

**PLAINTIFF'S OPPOSITION TO**
**MOTION TO DISMISS BY DEFENDANT DONALD J. TRUMP**

This suit seeks to hold accountable three men—Donald J. Trump, Julian Khater, and George Tanios—whose actions on January 6, 2021, directly and foreseeably caused the untimely death of United States Capitol Police Officer Brian Sicknick.

Mr. Trump has filed a Motion to Dismiss (Dkt. 24) the Complaint (Dkt. 1). For the most part, the issues he raises in this Motion are not new. In fact, they have been litigated in a number of prior cases before several judges in this District, including this Court. And, universally, these arguments have been rejected each time (and some are now pending before the D.C. Circuit Court of Appeals).

For example, this Court has previously held:

1. Mr. Trump's words and actions on January 6th are not protected by Presidential immunity. *Thompson v. Trump*, 590 F.Supp. 3d 46, 74 (D.D.C. 2022) ("After careful consideration, the court concludes that, on the facts alleged, absolute immunity does not shield President Trump from suit…");

2. The First Amendment does *not* bar claims against Mr. Trump for the events of January 6th. *Id.* at 118 ("Dismissal of Plaintiff's claims on First Amendment grounds is not warranted."); and,

3. Claims virtually identical to those presented here *are* sufficient to state a claim for relief under 42 U.S.C. § 1985(1), *and* they support a claim for monetary damages. *Smith v. Trump*, 2023 U.S. Dist. LEXIS 13602 *20 (D.D.C. Jan. 26, 2023) (allowing conspiracy claim against Mr. Trump filed by Capitol Police Officers to proceed); *Thompson*, 590 F. Supp. 3d at 73 (holding that the plaintiff's injuries were fairly traceable to Mr. Trump before and on January 6th, 2021, and redressable with money damages).[1]

For the reasons expressed below, this Court should reject Mr. Trump's arguments and order that this case proceed on the remaining counts.

## ARGUMENT

### I.     A PRESIDENT IS NOT SHIELDED BY BLANKET IMMUNITY FROM CIVIL SUIT MERELY BECAUSE HIS WORDS TOUCH ON MATTERS OF PUBLIC CONCERN

Mr. Trump's several arguments on the subject of Presidential Immunity have already been rejected by this Court many times over.  By way of summary, Ms. Garza offers the chart on the following page:

---

[1] Mr. Trump does raise some new issues specific to this case. These include whether Ms. Sandra Garza possesses standing to sue, and whether her aiding-and-abetting assault claim should be dismissed.  For the reasons that follow, Ms. Garza has standing as the lawfully appointed, personal representative of Officer Sicknick's estate, and the Plaintiff is withdrawing her Aiding and Abetting Assault claim.

| The Defendant's Motion to Dismiss: | This Court's prior holdings on the same facts: |
|---|---|
| The President's use of the "bully pulpit" on a matter of public concern bars the Plaintiff's claims because of "absolute immunity." Donald J. Trump's Memorandum of Law in Support of his Motion to Dismiss (Dkt. 24-1) (Def's Memo) at 19 | "Blanket immunity cannot shield a President from suit merely because his words touch on matters of public concern.  The context in which those words are spoken and what is said matter."  *Thompson*, 590 F.Supp. 3d at 80. |
| President Trump's words and actions before and on January 6, 2021, were within the outer perimeter of his presidential duties.  Def's Memo at 13. | The following acts were ***not*** within the outer perimeter of Mr. Trump's duties:<br><br>1.  Tweets criticizing state officials for not doing enough to enable him to prevail in their states.<br>2.  Lawsuits "plainly … directed at securing incumbency."<br>3.  Tweets which "expressly stated or implied that the rallies would help him remain President."<br>4.  Calling upon the Vice President to reject Electoral College votes.<br>5.  Planning the January 6th Rally.<br>6.  Delivering a speech with an electoral purpose not in furtherance of any official duty.<br><br>*Thompson,* 590 F.Supp.3d at 82-83. |
| Mr. Trump was "ensur[ing] the faithful execution of the laws of the United States and lobbying for proper legislative action to the same ends." Def's Memo at 20. | "The court finds that President Trump's Take Care Clause argument is misleading and wrong as a matter of law…" *Thompson*, 590 F.Supp.3d at 77. |

Instead of relating to any official act, as this Court has observed, Mr. Trump's acts and statements leading up to, and on, January 6, 2021, instead "entirely concern[ed] his efforts to remain in office for a second term," and were not grounded in "faithfully executing the laws,

conducting foreign affairs, commanding the armed forces, or managing the Executive Branch." *Id*. at 84.

Therefore, Mr. Trump was, and still is, incorrect to claim that using the "bully pulpit" automatically armors a president against this suit when discussing matters of public concern. Def's Memo at 21-22.  "To construct an immunity from suit for unofficial acts grounded purely in the identity of [the President's] office is unsupported by precedent." *Clinton v. Jones*, 520 U.S. 681, 695 (1997).

This Court should reject Mr. Trump's latest reiteration of his untethered Presidential immunity claims, just as it has rejected them previously.

A. <u>**Presidential Immunity is Not Absolute**</u>

In *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), the Supreme Court undertook to define the scope of immunity afforded to the President of the United States.  The Court considered Presidential immunity "a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of separation of powers," and reasoned that without immunity, a President could too easily be distracted by "cognizance of [his] personal vulnerability to suit." *Id*. at 749, 752.  President Nixon *was* immune from suit because his actions—firing a federal employee—"lay well within the outer perimeter of [his] authority."  *Id*. at 757.

Fifteen years later in *Jones*, the Court ruled that the *Fitzgerald* rationale—that Presidents need to function without fear that a particular decision could give rise to personal liability—is not absolute.  Presidential immunity does *not* apply to "unofficial conduct." 520 U.S. at 693-694; *Thompson*, 590 F.Supp.3d at 75.

*No court* has ruled that presidential immunity is absolute.  Presidential immunity extends only as far as necessary to prevent "distortion of the Executive's 'decision-making process.'" *Trump v. Vance*, 140 S. Ct. 2412, 2416 (2020) (*quoting Jones*, 520 U.S. at 694, n.19).  Presidential

immunity does not apply against civil litigation involving private conduct; nor does it immunize a President from the inconvenience of subpoenas.  *See U.S. v. Nixon*, 418 U.S. 683, 702 (1974); *Trump v. Vance, supra.*  A President is *not* immunized against actions for equitable relief even with respect to official duties.  *See Clinton v. City of New York,* 524 U.S. 417, 438 (1998)).  Nor is a President protected against suits for "unofficial conduct" with no relation to a president's official responsibilities.  *Jones*, 520 U.S. at 693.  And Presidential immunity certainly does not provide cover for threatening state election officials or stirring up a mob with social media posts, a rally, and a speech.  *Thompson*, 590 F. Supp. 3d at 82-84.

Thus, a president is subject to lawsuits for acts taken outside his official capacity.  *Jones*, 520 U.S. at 696.

### B.  Mr. Trump's Words and Actions Before and During the January 6, 2021, Rally Exceeded the Outer Perimeter of the President's Duties

This Court has already held that "[i]n evaluating a presidential claim of absolute immunity, the court must consider the relationship of the challenged conduct to the claimed corresponding function of the President."  *Thompson*, 590 F.Supp. 3d at 83.  Now Mr. Trump claims he is immune from suit because he was speaking about a matter of public concern, and therefore was within the "outer perimeter of his official duties."  Def's Memo at 8-9.

But this Court has already rejected that claim as "too simplistic."  *Thompson*, 590 F.Supp. 3d at 77.  Rather than afford immunity merely because the president was speaking on a matter of public concern, the proper test is to "evaluate the defense on the specific facts alleged and, based on those facts, determine whether President Trump's words were spoken in furtherance of a presidential function."  *Id.* at 81.

The Complaint has alleged facts sufficient to show Mr. Trump's words and actions were *not* spoken in furtherance of an immunized, official presidential function.  Instead, the

Defendant's words and actions were plainly outside legitimate presidential action.  As this Court has observed, his words and actions were aimed at securing his incumbency; "complain[ing] about perceived cases of election fraud;" "urg[ing] members of Congress to object to certain state certifications;" and "exhort[ing] the Vice President to return those certifications to those states to be recertified." *Id.* at 82-84.  "The words spoken by the President—without delving into the motivation behind them—reflect an electoral purpose, not speech in furtherance of any official duty." *Id.*  As such, these acts were *not* within the outer perimeters of any official act.

As also stated in the Complaint, Mr. Trump directly contacted local election officials and state legislators in Michigan, Pennsylvania, and Georgia to pressure them to overturn their states' election results.  Complaint at ¶¶ 35-51.  This included saying to Georgia's Secretary of State, "I just want to find 11,780 votes, which is one more than we have." *Id.* at ¶ 50.  He also publicly referred to that same state official as an "enemy of the people." *Id*. at ¶ 46.  And he filed multiple lawsuits seeking to undo the election results, but only in states where he did not prevail. *Id.* at ¶¶ 56-57.  He issued tweets and statements that did not advocate any policy changes or legislation, but were instead expressly made to gin up a fervor that he hoped would help him retain his position. *Id.* at ¶ 77 ("We will never give up."); *id.* at ¶ 78 ("We will never concede, it doesn't happen."); *id.* at ¶ 79 ("We will not let them silence your voices. We're not gonna let it happen."); *id*. at ¶ 80 ("[W]hen you catch somebody in a fraud, you're allowed to go by very different rules.").  And Mr. Trump instructed his rallygoers to march upon the Capitol to "take back [their] country." *Id*. at ¶ 117.  As alleged in the Complaint, these unofficial acts (and other acts, tweets, and statements) make Mr. Trump directly and vicariously liable for the death and destruction that predictably followed. *Id*. at ¶ 119-177.

These were not official actions taken in furtherance of a presidential duty.  *Thompson*, 590 F.Supp. 3d at 82.  These statements and calls for action do not relate to anything in a President's responsibilities, functions, or powers.  They relate solely to Mr. Trump's effort to remain in office for a second term, and so are not within "the immunity's justifying purpose" of protecting a president's official functions.  *Fitzgerald*, 457 U.S. at 755.

Cases supporting Executive Immunity are all grounded in obvious examples of executive-level functions unique to the presidency—that is, duties one must actually be the president to discharge.  Immunity therefore covers, among other actions, making personnel decisions (*see Fitzgerald*, *supra*); determining contract awards (*see In re Global Crossings, Ltd. Securities Litigation*, 314 F. Supp. 2d 172 (S.D.N.Y. 2003)); enacting federal legislation (*see State of Mississippi v. Johnson*, 71 U.S. 475 (1866)); and managing the logistics of a national emergency (*see Freeman v. United States*, No. 20-13341, 2020 WL 7383191, at *1 (D.N.J. Dec. 16, 2020)).  Mr. Trump's actions surrounding January 6, 2021, were neither kith nor kin to any Article II power or mandate—they were wholly outside his official acts.  *Thompson*, 590 F.Supp. 3d at 82-83 (observing that tweeting criticism at state election officials, summoning supporters to rallies to help him remain President, turning his supporters' ire against the Vice President, planning the January 6th Rally, and then speaking at the rally were not in furtherance of any official duty).

Presidents are immunized from suit where the underlying act is linked to the president's job description, and not a personal or unofficial undertaking.  But it is *not* a function of the presidency to secure or perpetuate incumbency.  *Thompson*, 590 F.Supp. 3d at 82.  The Defendant's words and actions, as alleged in the complaint, were not "speech in furtherance of

any official duty," were not within the outer perimeter of his constitutional role, and are not immunized from suit.  *Id*. at 83.

### C.   The "Take Care Clause" Does Not Confer Immunity in this Case

Mr. Trump next claims the events of January 6, 2021, were within the outer perimeter of his Article II duties because President Trump was using the "bully pulpit" to ensure laws of the United States were "faithfully executed."  Def's Memo at 20, 26.  This is an incorrect understanding of the Take Care Clause, and this Court has already rejected this same argument. *Thompson,* 590 F.Supp. 3d at 77 ("President Trump's Take Care Clause argument is misleading and wrong as a matter of law….").

The Court's previous analysis is correct and should not be disturbed: neither the Take Care clause nor the Electoral Counting Act gives the President any power, duty, or immunity in the process of counting electoral votes.

The Electoral Count Act prescribes no role for the President.  The President is—by wise design—absent from that process.  There is nothing for the President to do, enact, or enforce with regard to the counting of electoral votes.  There are no subordinates whose actions need to be directed, choreographed, budgeted, or regulated.  The process of counting votes is unthinking and virtually robotic; it is ceremonial, with no room for any policy variations or the Executive Branch's stylistic acumen.  3 U.S.C. § 15.

Nor does Article II bestow upon the President any power concerning Congressional procedure, except that the President may adjourn Congress when there is disagreement as to the time for adjournment.  U.S. Constitution, Article II, § 3.  And the Twelfth Amendment, which concerns the counting of electoral votes, makes no mention of Presidential powers or duties whatsoever.  "The President's Take Care Clause duty therefore does *not* extend to government

officials over whom he has no power or control." *Thompson*, 590 F.Supp. 3d at 78 (italics in original).

Assuming *arguendo* the President had some role in executing the Electoral Count Act or the relevant Constitutional provisions, the Take Care clause would still require him to act "faithfully." That adverb is not superfluous, *see generally Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883), and cannot reasonably be read to encompass obstructing, halting, preventing, and threatening by violence the procedures that law requires. As mandated by the Constitution, the election was held in November 2020, the electoral votes were cast in December 2020, and those votes were set to be counted on January 6, 2021, when Mr. Trump's tweets, rally, speech, and conduct interfered.

Therefore, this Court should again decline to extend presidential immunity to acts taken in obvious opposition to Constitutional mandates and federal law.

*** 

Because none of the Defendant's acts as alleged in the complaint were within even the outer perimeters of presidential functions, this Court should, respectfully, deny his Motion to Dismiss.

## II.      THE COMPLAINT IS NOT BARRED BY THE FIRST AMENDMENT

Mr. Trump next tries to cast this case as an attack on his "political speech" and an effort to limit "speech on matters of public concern." Def. Memo at 25-26. Not so. This case regards accountability for dangerous speech—speech that formed an unlawful conspiracy, and speech that incited violence—all of which led to Officer Brian Sicknick's death. Speech "directed to inciting or producing imminent lawless action and is likely to incite or produce such action" is not and never has been protected by the First Amendment. *Brandenburg v. Ohio*, 395 U.S. 444,

447 (1969).  This Court has already rejected Mr. Trump's First Amendment defenses concerning his speech on January 6, 2021.  *Thompson*, 590 F.Supp. 3d at 108 ("Only in the most extraordinary circumstances could a court *not* recognize that the First Amendment protects a President's speech.  But the court believes this is that case.") (italics in original).

This Court has also analyzed Mr. Trump's January 6th, 2021, speech, word by word, and phrase by phrase, and as a result already concluded that dismissal of claims arising from that speech on First Amendment grounds is not warranted.  *Thompson*, 590 F.Supp. 3d at 115.  Just as it has before, this Court should find that Mr. Trump's January 6, 2021, speech is not protected on First Amendment grounds and reject his recycled arguments here.

A.  **The *Brandenburg* Standard for Incitement**

The First Amendment does not protect speech that directly incites imminent lawlessness, as Mr. Trump's speech and exhortations to his rallygoers did here.  *Id*. at 115.

As this Court has observed, there is not an exact test for what constitutes unlawful incitement.  *Id*. at 112-113.  Nonetheless, certain commonalities within Supreme Court cases post-*Brandenburg* are instructive, and they all weigh against First Amendment protection for Mr. Trump's speech.  In *Hess v. Indiana*, 414 U.S. 105, 108-09 (1973) (*per curiam*), for example, the Court held that language that was "intended to produce, and likely to produce, imminent disorder," and directed to specific persons, runs afoul of the First Amendment.  Nine years later, in *N.A.A.C.P. v. Claiborne Hardware*, 458 U.S. 886, 929 (1982), the Court reasoned that one may look to evidence of a speaker's "authorization of wrongful conduct" to determine whether their speech constitutes unlawful incitement.  And, along with the actual words spoken, the *context* for the speech—the setting in which the speech occurred—can illuminate whether the speech was unlawful incitement.  *See FCC v. Pacifica Foundation*, 438 U.S. 726, 744 (1978), *quoting Schenk v. United States*, 249 U.S. 47, 52 (1919) ("[T]he character of every act depends

upon the circumstances in which it is done …. The most stringent protection of free speech would not protect a man falsely shouting fire in a theater….").

At bottom, the key to the *Brandenburg* exception to the First Amendment is this: language that is meant to incite or produce imminent lawless action, and is likely to incite or produce such action is *not protected speech*.  *Thompson*, 590 F.Supp. 3d at 112.  Mr. Trump's speech and conduct fall squarely within that category.

### B.  <u>Mr. Trump's Speech Exceeds the *Brandenburg* Standard for Incitement</u>

Applying *Brandenburg* as it actually is, and not how Mr. Trump would prefer it be interpreted, his speech is at least "plausibly" unprotected by the First Amendment.  *Thompson*, 590 F.Supp. 3d at 115.  Therefore, this Court should respectfully deny his Motion to Dismiss on First Amendment grounds.

As in other First Amendment cases, the Court is obligated "'to make an independent examination of the whole record.'"  *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499 (1984), *quoting New York Times v. Sullivan*, 376 U.S. 254, 284–286 (1964). This Court has already done so.  Applying *Brandenburg* and its progeny to President Trump's "Stop the Steal Rally," this Court has ruled that *Brandenburg* weighs against a finding that the speech is protected.  *Thompson*, 590 F. Supp. 3d at 115-118.

> 1.  **The language was intended to produce, and was likely to produce, imminent lawlessness from its audience.**

Mr. Trump told the crowd, "they rigged an election." He added, "They rigged it like they've never rigged an election before."  Complaint at ¶ 76.  He said "We will never concede, it doesn't happen.  You don't concede when there's theft involved.  Our country has had enough. We will not take it anymore and that's what this is all about."  *Id.* at ¶ 78.  Right before turning

the crowd loose on the U.S. Capitol, Mr. Trump exclaimed, "You'll never take back our country with weakness.  You have to show strength, and you have to be strong." *Id.* at ¶ 144.

As this Court has held, "There is no safe haven under *Brandenburg* for the strategic speaker who does not directly and unequivocally advocate for imminent violence or lawlessness, but does so through unmistakable suggestion and persuasion."  *Thompson*, 590 F.Supp. 3d at 115.  And, as this Court has also ruled, "These words stoked an already inflamed crowd," and therefore "plausibly crossed the line into unprotected territory."  *Id*. at 116.

### 2.  Mr. Trump's speech authorized and encouraged imminent wrongful conduct.

Mr. Trump was—and still is—telling nearly half the country, including all of those at his rally, that the 2020 election was hijacked by President Biden who had illegally usurped power and directly undermined the will of the people.  As part of that fantasy, Mr. Trump called for immediate action to stop the counting of electoral votes.

The facts here starkly contrast with those in cases where the Supreme Court has found the threat of lawless conduct to be too remote.  In *Claiborne Hardware*, 458 U.S. at 902, for instance, the Court found that a threat of *future* "discipline" for violators of a boycott was not likely to produce imminent disorder.  And in *Hess*, 414 U.S. at 107 the Court found that a protestor's promise that "We'll take the fucking street *later*" (emphasis added), or "We'll take the f------g street again" was not immediate enough to trigger *Brandenburg*.

But, as this Court has noted, any claim that Mr. Trump's words did not stoke imminent violence is belied by the full context of that day.  Phrases like, "We fight like hell and if you don't fight like hell, you're not going to have a country anymore," immediately before instructing followers to "walk down Pennsylvania Avenue," make it at least "plausible that those

words were implicitly 'directed to inciting or producing imminent lawless action and [were] likely to produce such action.'" *Thompson,* 590 F.Supp. 3d at 115.

Mr. Trump argues that because he "clearly reminded his supporters to 'peacefully and patriotically make [their voices] heard' at the Capitol," his speech could not even *plausibly* be seen as incitement.  Def's Memo at 27.  But, as this Court has noted, these words must be contrasted against his exhortation, an hour later, to "fight like hell."  *Thompson*, 590 F.Supp. 3d at 117.  Whatever Mr. Trump said about peaceful protest on January 6th—and it wasn't much— was undercut by his own, later statements.  Within the context of the larger speech and the circumstances surrounding it, his use of the words "peaceful," and "patriotic," in an apparent afterthought, does not make the speech protected expression.  *Id.*

In light of this context, his January 6th Rally Speech was "speech … brigaded with action" that was plausibly "directed to inciting or producing imminent lawless action and likely to incite or produce such action."  *Id.*, quoting *Brandenburg*, 395 U.S. at 456, and *Hess*, 414 U.S. at 108–09.

## C.  Mr. Trump's Proposed Additions to the *Brandenburg* Analysis Have No Basis in Law, and this Court Has Already Rejected Them

Mr. Trump's Motion to Dismiss attempts to layer additional and unnecessary requirements upon *Brandenburg*.  Respectfully, this Court has already rejected each of these contentions and should do so again here.

### 1.  *Brandenburg* is not grounded in "true threats."

First, Mr. Trump argues that incitement is "limited to true threats" and that "mere encouragement is quintessential protected advocacy," with D.C.'s anti-riot laws subject to a facial challenge if this Court would hold otherwise.  Def's Memo at 29, *quoting United States v. Miselis*, 972 F.3d 518, 536 (4th Cir. 2020).  To be sure, "true threats" are not protected by the

First Amendment.  *Watts v. United States*, 394 U.S. 705, 708 (1969) (*per curiam*).  But "true threats" and incitement are separate types of unprotected speech: "Incitement creates a risk that third parties will inflict violence on the victim, whereas threats engender fear and intimidation that usually reach the victim directly."  *First Amendment - Freedom of Speech - Second Circuit Affirms Threats Conviction in Internet Speech Case*, 127 Harv. L. Rev. 2585, 2589 (2014).  What they share is that, in both types of speech, the threat of wrongdoing is imminent.  That is what matters to the analysis—not whether the imminent threat is made directly to the intended victim or instead is routed through third parties.

### 2. *Brandenburg* does not compel this Court to consider President Trump's speech in light of other politicians' speeches.

Second, Mr. Trump argues that allowing this case to proceed will "clutter the dockets of federal courts and incentivize using courts as a weapon against political opponents."  Def's Memo at 29.  Again, this Court has already rejected this "what-aboutism" argument that points towards what other politicians have said and complains about the "floodgates of litigation" that could open regarding other speeches and protests.  *Id*. at 26, 29.  As this Court has stated, "[e]ach case must be evaluated on its own merits."  *Thompson*, 590 F.Supp. 3d at 117.  A *Brandenburg* analysis does not compel analogy to other speeches; it asks merely whether there was an implicit call for imminent violence or lawlessness.  *Id.* (noting that Mr. Trump "called for thousands 'to fight like hell' immediately before directing an unpermitted march to the Capitol, where the targets of their ire were at work, knowing that militia groups and others among the crowd were prone to violence.").

### 3.   There is no "negligence" factor within *Brandenburg*.

Third, Mr. Trump also argues that "one cannot have negligent liability for incitement" and therefore that "an individual cannot be liable for incitement based on how others interpreted his speech." Def's Memo at 28-29.  For this proposition, he cites to the dissent from *Morse v. Frederick*, 551 U.S. 393 (2007) and argues that a *Brandenburg* analysis would rely too much upon how others interpreted the speech.  This Court has again already ruled that the speech at issue was inciteful and unprotected regardless of how anyone actually reacted to it.  *Thompson*, 590 F.Supp. 3d at 117.

***

This Court has previously rejected Mr. Trump's First Amendment defenses. Respectfully, it should do so again here.

## III.    OFFICER SICKNICK'S ESTATE HAS PROPERLY STATED CLAIMS

### A.  Officer Sicknick's Estate Has Properly Stated A Claim Under 42 U.S.C. § 1985(1)

Mr. Trump asserts several arguments that Plaintiff has failed to state a claim under 42 U.S.C. § 1985(1) because the Estate "does not adequately allege that President Trump caused the events of January 6."  Def's Memo at 22.  Each of these arguments should be outright rejected. For one thing, the Plaintiff's entire complaint spells out in detail specific factual allegations that Mr. Trump was directly responsible for the unlawful events of January 6th, *see* Complaint at ¶¶ 23-118, and of course at this stage of the pleadings the Estate's well-pleaded facts are to be viewed in the most favorable light and all reasonable inferences are to be drawn in its favor. *Hurd v. District of Columbia*, 864 F.3d 671, 675 (D.C. Cir. 2017).  In any event, each of Mr. Trump's proffered arguments have already been rejected by this Court.

First, Mr. Trump asserts that the alleged failure of the Estate to plausibly claim he entered into an agreement with any other alleged co-conspirator "alone is fatal to her claims of conspiracy." Def's Memo at 22. This Court has already articulated in clear fashion the principles of civil conspiracy and why it is at least plausible that Mr. Trump joined in a § 1985(1) conspiracy with well-known militia groups, such as the Proud Boys and Oath Keepers, as well as the individual rioters who stormed the Capitol. *Thompson*, 590 F.Supp. 3d at 96-97; *see also Smith*, 2023 U.S. Dist. LEXIS at *20 (allowing conspiracy claim against Mr. Trump filed by Capitol Police Officers to proceed).

Indeed, in *Thompson* this Court detailed the many facts, which will not be repeated here but which are respectfully incorporated, involving the events of January 6th that involved the former President and allowed the Plaintiffs there to survive a similar Motion to Dismiss. *Thompson*, 590 F.Supp. 3d at 97-105.[2] After consideration, this Court determined that the asserted facts plausibly supported a conspiracy claim under § 1985(1) between Mr. Trump and "others who entered the Capitol on January 6th with the intent to disrupt the Certification of the Electoral College vote through force, intimidation, or threats." *Thompson*, 590 F.Supp. 3d at 101. That includes the two other individual defendants – George Tanios and Julian Khater – in this action, both of whom pled guilty for their actions on January 6th.

On July 20, 2022, Defendant Tanios pled guilty to Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2) and (b)(2).[3] In his factual

---

[2] Some of the undersigned counsel in this action are also counsel for plaintiffs in *Thompson* and many of the alleged facts that support the respective Complaints are, not surprisingly, identical.

[3] This Court can, and should, take judicial notice that many Defendants have been convicted—either by plea or by jury verdict—of participating in a criminal conspiracy to obstruct Congress, other conspiratorial conduct, or related criminal conduct. *See Covad Commc'ns Co. v. Bell Atl.*

proffer, Defendant Tanios admitted to accompanying Defendant Khater to the January 6th rally in D.C. and admitted to purchasing and carrying the spray Defendant Khater used on Officer Sicknick.  He was sentenced to time served (after having served five months in jail) on January 27, 2023.  Complaint at ¶ 13[4]

On August 26, 2022, Defendant Khater pled guilty to Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b).  Officer Sicknick was one of the officers Defendant Khater admitted he assaulted as a part of his guilty plea.  *Id.* at ¶ 14.  He received a sentence of eighty months in prison on January 27, 2023.[5]

Second, the notion that Mr. Trump's involvement in the conspiracy constituted "protected speech" or that he has immunity, Def's Memo at 22, has also been rejected by this Court and needs no further analysis than that applied above.  *Thompson*, 590 F.Supp. 3d at 73-84 (rejecting identical arguments).  Similarly, Mr. Trump's arguments concerning the inapplicability of § 1985(1), *see* Def's Memo at 23-25, must also be dismissed.  *Thompson*, 590 F.Supp. 3d at 90-94 (rejecting identical arguments).

---

*Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (stating that, when reviewing motions to dismiss for failure to state a claim, courts may take judicial notice of facts on the public record).  The Estate's claim of civil conspiracy, and the Defendants' involvement in it, including President Trump, is therefore plausible.  The alleged acts of assault and wrongful death against MPD officers were "reasonably foreseeable" consequences of the scheme, for which the Defendants can be held liable, even if they themselves did not carry out those tortious acts. *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983).

[4] *See also Time-Served Sentence for Jan. 6 Rioter Linked to Sicknick Assault Will Promote 'Respect' of Law: Feds*, LAW & CRIME, https://lawandcrime.com/u-s-capitol-breach/time-served-sentence-for-jan-6-rioter-linked-to-sicknick-assault-will-promote-respect-of-law-feds/ (last accessed Apr. 24, 2023, 9:05 AM).

[5] *See also Man Who Shot Pepper Spray at Officer on Jan. 6 Gets Nearly 7 Years in Prison*, NEW YORK TIMES, https://www.nytimes.com/2023/01/27/us/politics/brian-sicknick-julian-khater-george-tanios-jan-6.html (last accessed Apr. 24, 2023, 9:10 AM).

Third, Mr. Trump again seeks to persuade this Court that Members of Congress and the Vice President are not Officers pursuant to section 1985(1).  This argument, too, obviously must fail.  *Thompson*, 590 F.Supp. 3d at 90-96 (rejecting similar arguments).

Finally, Mr. Trump also boldly claims as a general premise, i.e., lacking any specific legal precedent or analysis, that section1985(1) does not apply to the President of the United States.  Def's Memo at 33.  Even beyond the fact that for the events in question he was acting in a political, not presidential, status,[6] Mr. Trump cannot identify even one court (of the many) that has addressed this § 1985(1) claim against him that has agreed with that assertion.  That speaks volumes.

### B.  Plaintiff has Properly Stated Claims Under District of Columbia Law.

In addition to relying upon previously rejected arguments, Mr. Trump also argues that Plaintiff's three District of Columbia state law violations: (1) wrongful death,
(2) incitement to riot, and (3) aiding and abetting common law assault, should be dismissed on the basis she has "failed to adequately allege plausible facts to state a claim under any of these statutes." Def's Memo at 25-26.  These arguments, with one exception noted below,[7] should similarly be rejected.

First, Mr. Trump asserts that "Plaintiff has failed to allege that a spouse, domestic partner, or next of kin exists that may recover under the wrongful death statute." *Id*. at 26.  For

---

[6] *United States v. Chrestman*, 525 F. Supp. 3d 14, 33 (D.D.C. 2021) ("[A] President cannot, within the confines of his constitutional authority, prevent the constitutionally mandated certification of the results of a Presidential Election or encourage others to do so on his behalf, nor can he direct an assault on the coequal Legislative branch of government.").

[7] The Estate respectfully withdraws Count Five (Aiding and Abetting Common-Law Assault) against Mr. Trump.

good reason, none of those are claims being pursued within this lawsuit.  The Plaintiff properly

filed these claims, individually *and* as "the personal representative for the Estate of Brian

Sicknick," Complaint at ¶ 8, though  no personal claims are being pursued.  Given that President

Trump has filed a Motion to Dismiss, again, the Court assumes all of Plaintiff's facts to be "true

(even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Thus, that

Ms. Garza asserts she is the authorized personal representative for the deceased, Officer

Sicknick, is sufficient as a matter of fact and law to defeat President Trump's Motion at this

stage of the proceedings.[8]

Second, Mr. Trump alleges that the Estate's Complaint "fails to adequately allege that

Officer Sicknick's death was caused by a wrongful or negligent act of President Trump or by

President Trump's default" because it "admits that Officer Sicknick's death was determined to

have been caused by natural causes."  Def's Memo 28, *citing* Complaint at ¶ 110.  Based on Mr.

Trump's analysis, this "negates the necessary element of causation: a showing that an alleged

wrongful act caused Officer Sicknick's tragic passing."  Def's Memo at 28.  This argument is

disingenuous and based on a slanted, completely distorted, view of the Estate's allegations.

For one thing, the Estate directly ties the events of January 6th to the death of Officer

Sicknick.  As a direct result of the attack by Defendants Khater and Tanios and others—with

whom Mr. Trump conspired per the plausible allegations in the Complaint—Officer Sicknick

---

[8] Plaintiff's claim of wrongful death is pursued under D.C. Code §16-2702 which "shall be brought by and in the name of the personal representative of the deceased person, and within 2 years after the death of the person injured."  The term "personal representative" is limited to officially appointed executors and administrators.  *Saunders v. Air Fla., Inc.*, 558 F. Supp. 1233 (D.D.C. 1983), *quoting Strother v. District of Columbia*, 372 A.2d 1291 (1977).  Although at this stage this issue is settled by the requirement that the Court accept the Complaint's facts as true, documentation exists reflecting that Ms. Garza was lawfully appointed as the personal representative of Officer Sicknick's estate.  Exhibit "1".

suffered physical injuries.  *Id*. at ¶ 130.  From those injuries, Officer Sicknick died.  *Id*. at ¶131-32.

The Complaint alleges more than enough to establish causation for wrongful death.  *See generally Halberstam v. Welch*, 705 F.2d 472, 481-482 (D.C. Cir. 1983) (noting that even "suggestive words" may be enough to create civil liability in a conspiracy and wrongful death action).  Further, documentation as to the cause of death would be a proper request as part of the forthcoming discovery process and would be responded to accordingly.

Of course, there is no question that Mr. Trump caused the actions that led to Officer Sicknick's death and even intervening criminal acts of third parties do not break the chain if they are reasonably foreseeable.  *See Bradley v. NCAA*, 464 F. Supp. 3d 273, 298 (D.D.C. 2020); *Briggs v. Washington Metropolitan Area Transit Authority*, 468 F.Supp. 2d 8, 12 (D.D.C. 2006).  Here, not only were the acts of the individual rioters foreseeable, but they were also the intended result of Mr. Trump's words and conduct.

Finally, Mr. Trump again attempts to argue that he is neither factually nor legally responsible for the January 6th events, relying upon the same reasons asserted earlier to extricate himself from any conspiracy claims.  Def's Memo at 29.  Based on the same responses explained previously, this argument is unavailing.  *Thompson*, 590 F.Supp. 3d at 96-97.

For the foregoing reasons, this Court should respectfully deny the Defendant's Motion to Dismiss.

Dated: April 25, 2023                    Respectfully submitted,

                                          *s/Matthew Kaiser*
                                          _____
                                          KAISERDILLON PLLC
                                          Matthew Kaiser (D.C. Bar No. 486272)
                                          Noah Brozinsky (D.C. Bar No. 1655789)
                                          1099 Fourteenth Street, N.W., 8th Fl.

Washington, D.C. 20005
Tel: (202) 640-2850
Email: mkaiser@kaiserdillon.com
       nbrozinsky@kaiserdillon.com

*s/Philip Andonian*

_____

CALEBANDONIAN PLLC
Philip Andonian (D.C. Bar No. 490792)
Joseph Caleb (D.C. Bar No. 495383)
1100 H Street, N.W. – Ste. 315
Washington, D.C. 20005
Tel: (202) 953-9850
Email:  phil@calebandonian.com
       joe@calebandonian.com


*s/Mark S. Zaid*

_____

Mark S. Zaid, Esq. (D.C. Bar #440532)
Bradley P. Moss, Esq. (D.C. Bar #975905)
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 498-0011
(202) 330-5610 fax
Mark@MarkZaid.com
Brad@MarkZaid.com

*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

     I certify that on April 25, 2023, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

               /s/ Noah Brozinsky
               Noah Brozinsky
               *Attorney for Plaintiff*