**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SANDRA GARZA** | * | |
| **Plaintiff** | * | |
| **v.** | * | **Case No.: 1:23-cv-00038** |
| **DONALD J. TRUMP, et al.,** | * | |
| **Defendants** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>**DEFENDANT GEORGE PIERRE TANIOS' STATEMENT OF AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**</u>

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES……………………………………………………………3

INTRODUCTION……………………………………………………………………....6

STATEMENT OF MATERIAL FACTS……………………………………………6

ARGUMENT………………………………………………………………………..11

    A.  Legal Standard applicable to Rule 12(b)(6) Motion…………………………………12

    B.  Plaintiff has failed to state a legally cognizable claim for Wrongful Death…………12

        1.  Plaintiff does not allege that she is a beneficiary under the Act or that there are any beneficiaries under the Act……………………………………………...13

        2.  Plaintiff does not allege that any covered beneficiary suffered a financial harm due to the Wrongful Death of the decedent……………………………… 14

    C.  The Plaintiff has failed to state a legally cognizable 42 U.S.C. §1985(1) claim…….. 15

    D.  Plaintiff 's claim for Common Law Assault is time barred and otherwise fails to plausibly plead a legally recognized claim against Defendant Tanios………………..19

    E.  Plaintiff's claim for Negligence Per Se predicated on an alleged violation of the District's anti-riot statute fails to state a claim upon which relief can be granted…….21

CONCLUSION……………………………………………………………………25

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal,* ………………………………………………………………………...12
556 U.S. 662, 678 (2009)

*Barr v. Clinton,* …………………………………………………………………………16
370 F.3d 1196 (D.C. Cir. 2004)

*Bell Atl. Corp. v. Twombly*, …………………………………………………………...12
550 U.S. 544, 549 (2007)

*Buchanan v. United States,* …………………………………………………………...20
32 A.3d 990, 1003 (D.C. 2011)

*Civic v. Signature Collision Ctrs.*, LLC, …………………………………………...24
221 A.3d 528, 530 (D.C. 2019)

*District of Columbia v. Brown,* ……………………………………………………...24
589 A.2d 384, 387 (D.C. 1991)

*District of Columbia v. Hawkins,* …………………………………………………...12
782 A.2d 293 (D.C. 2001)

*District of Columbia v. Mitchell,* …………………………………………………...23
533 A.2d 629, 639 (D.C. 1987)

*Doe v. Blinker,*  ………………………………………………………………………13
492 A.2d 857, 863 (D.C. 1985)

*Evans-Reid v. District of Columbia,* ………………………………………………...20
930 A.2d 930, 937 (D.C. 2007)

*Joy v. Bell Helicopter Textron, Inc.,* ………………………………………………...23
999 F.2d 549, 558, 303 U.S. App. D.C. 1 (D.C. Cir. 1993)

*Konopka v. Borough of Wyo.,* ………………………………………………………...18
383 F. Supp 2d 666, 672 (M.D. Pa. 2005)

*Lamb v. State,* ………………………………………………………………………...20
93 Md. App. 422, 613 A.2d 402, 412 (1992)

*Lewis v. News-Press & Gazette Co.,* ………………………………………………...18
782 F. Supp. 1338, 1341-3 (W.D. Mo. 1992)

*Madden v. D. C. Transit System, Inc.*, ……………………………………………………..20
307 A.2d 756, 757 (D.C. 1973)

*Marusa v. District of Columbia*, …………………………………………………21, 22, 23, 24
484 F.2d 828, 834, 157 U.S. App. D.C. 348 (D.C. Cir. 1973)

*McNeil Pharm. v. Hawkins*, ……………………………………………………………..22
686 A.2d 567, 579 (D.C. 1996)

*Morast v. Lance*, …………………………………………………………………...18
631 F. Supp. 474, 478 (N.D. Ga. 1986)

*Mwani v. Al-Qaeda*, …………………………………………………………………..20
2022 U.S. Dist. LEXIS 72640

*Parker Bldg. Servs. Co. v. Lightsey*, …………………………………………………..25
925 S.2d 927 (Ala. 2005)

*Semler v. Psychiatric Institute of Washington, D.C.*, …………………………………..13
188 U.S.App D.C. 41, 43-44, 575 F.2d 922, 924-25 (D.C.Cir. 1978)

*Smith v. Trump*, …………………………………………………………………...22, 23
2023 WL 417952 (U.S.D.C. Dist. of Columbia)

*Thomas v. Kettler Bros.*, …………………………………………………………...24
632 A.2d 725, 728 n.8 (D.C. 1993)

*Thompson v. Trump*, …………………………………………………………16, 17, 22
590 F. Supp. 3d 46, 62 (2023)

*Trinity Indus. v. Greenlease Holding Co.*, …………………………………………..25
35 F. Supp. 3d 698, 725 (W.D. Pa. 2014)

*Wagner v. Anzon, Inc.*, …………………………………………………………..25
453 Pa. Super. 619, 684 A.2d 570, 574-75 (Pa. Super. Ct. 1996)

*Windsor v. The Tennessean*, …………………………………………………………..16
719 F.2d 155, 157 (6th Cir. 1983)

## STATUTES

42 U.S.C. 1985(1)  …………………………………………………...11, 15, 16, 17, 18, 19

D.C. Code § 12-301(a)(4)  …………………………………………………………19

D.C. Code §16-2701 (2001) ………………………………………………………12, 14

D.C. Code § 22-1322 ……………………………………………………11, 21, 23, 24, 25

D.C. Code § 27-101 …………………………………………………………………11, 18


**RULES**

Federal Rule of Civil Procedure, §12(b)(6) ……………………………………………6, 12


**OTHER**

STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA,
§14-05 (Rev. 2002) …………………………………………………………………...15

Restatement (Second) of Torts § 21 ……………………………………………………20

Standard Civil Jury Instructions for the District of Columbia (2016 Revised Ed.)
§ 5.09[2] ………………………………………………………………………………25

W. Page Keeton, et al., …………………………………………………………………24
Prosser and Keeton on the Law of Torts (Prosser) § 36, at 222 (5th ed. 1984)

Covid Order, Chief Judge of the Superior Court for the District of Columbia…………….. 19, 20

## INTRODUCTION

This case arises out of the events that transpired at the United States Capitol on January 6, 2021, following a rally headlined by former President Donald Trump.  In this case the Personal Representative of the Estate of Brian Sicknick, Sandra Garza, is seeking to recover damages under the Wrongful Death Act despite her admission that his death on January 7, 2021, was officially attributed to natural causes.  Plaintiff has pleaded alternate theories of recovery, without alleging that any of the wrongful conduct by Defendant Tanios caused any financial harm to Mr. Sicknick or his beneficiaries.  Defendant Tanios has filed a Motion to Dismiss pursuant to Federal Rule 12(b)(6) because none of the alleged theories of recovery state a claim against him upon which relief can be granted.  To the extent that the preliminary motions filed by other Defendants in this case assert arguments not raised herein, Defendant Tanios incorporates those arguments to the extent they apply to him by reference as if fully set forth herein.

## STATEMENT OF MATERIAL FACTS

The Complaint alleges sparse facts pertaining to or concerning the claims against Defendant Tanios, but they are repeated throughout the pleading.  The following represents those Paragraphs that address the claims against Defendant Tanios and the arguments asserted herein:

1. "The peaceful transfer of power is a sacrament of American democracy.  Defendant Donald Trump ("Trump"), together with other co-conspirators, defiled that orderly transition through a campaign of lies and incendiary rhetoric which led to the ransacking of the United States Capitol as part of an insurrectionist effort on January 6, 2021 by Defendants Julian Khater ("Khater") and **George Tanios** ("Tanios"), and many others. That attack on the United States Capitol cost U.S. Capitol Officer Brian Sicknick ("Officer Sicknick"), who was bravely defending the cradle of American Democracy, his life. *(Pages 1 – 2)*

***

7. The horrific events of January 6, 2021, including Officer Sicknick's tragic, wrongful death, were a direct and foreseeable consequence of the **Defendants'** unlawful actions.  As such, the Defendants are responsible for the injury and destruction that followed. *(Page 3)*

8. Plaintiff Sandra Garza is the personal representative for the Estate of Brian Sicknick. *(Page 3)*

*** 

12. Defendants Khater and **Tanios** live in Somerset, New Jersey and Morgantown, West Virginia, respectively. ***(Page 4)***

13. On July 20, 2022, **Defendant Tanios** pled guilty to Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2) and (b)(2). In his factual proffer, Defendant Tanios admitted to accompanying Defendant Khater to the January 6th rally in D.C. and admitted to purchasing and carrying the bear spray Defendant Khater used on Officer Sicknick.[1] Per his plea agreement, Defendant Tanios faces a recommended sentence of 0 – 6 months in prison. ***(Page 4)***

*** 

19. Officer Sicknick joined the U.S, Capitol Police in July 2008 and was a member of that Department's First Responder's Unit. Before joining the U.S. Capitol Police, Officer Sicknick served in the New Jersey Air National Guard and had deployed overseas in support of U.S. military missions.  ***(Page 5)***

20. On January 5, 2021, Defendant Khater contacted Defendant Tanios just prior to Tanios' purchase of Frontiersman brand bear spray and pepper spray. Defendant Tanios gave some of the pepper spray to Defendant Khater, which Defendant Khater then carried with him as the two travelled from Morgantown, West Virginia, to Washington, D.C. the next day.  ***(Page 5)***

21. On January 6, 2021, Officer Sicknick was part of a police line guarding the perimeter of the Lower West Terrace of the U.S. Capitol.  ***(Page 6)***

22. Defendants Khater and **Tanios** were among the people who stormed the U.S. Capitol on January 6, 2021. In an effort to gain entrance to the building, they confronted law enforcement officers guarding the Lower West Terrace, including Officer Brian Sicknick. Defendants Khater and **Tanios** assaulted officers with their hands and feet.[2] From less than 8 feet away, Defendant Khater sprayed Officer Sicknick in the face with the bear spray provided by Defendant **Tanios**.[3]  ***(Page 6)***

*** 

70. By the morning of January 6th, thousands of Trump supporters—including Defendants Khater and **Tanios**—had flooded Washington, D.C. … ***(Page 22)***

*** 

83. Defendant Trump put out a clear call to action, and the crowd—including Defendants Khater and **Tanios**—responded. … ***(Page 25)***

---

[1] This is factually incorrect as Defendant Tanios' proffer makes no mention of anyone using "bear spray" on Officer Sicknick.  Regardless, for the purpose of this Motion the Court must assume the truth of the allegations pleaded herein.

[2] This is factually incorrect as Defendant Tanios was never charged with assaulting anyone at the Capitol on January 6, 2021. Regardless, for the purpose of this Motion the Court must assume the truth of the allegations pleaded herein.

[3] This is factually incorrect as no person was ever charged with spraying "bear spray" at Officer Sicknick. Regardless, for the purpose of this Motion the Court must assume the truth of the allegations pleaded herein.

*** 

90. At approximately 2:09 p.m., Defendants Khater and **Tanios** walked on restricted grounds and proceeded from the south grassy area of the U.S. Capitol toward the Lower West Terrace. **(*Page 27*)**

91. After separating briefly, Defendants Khater and **Tanios** reunited at approximately 2:14 p.m. near the police barricade on the steps of the south side of the Lower West Terrace. Defendant Khater told Defendant **Tanios**, "Give me that bear shit," and then reached his hand into Defendant **Tanios**' backpack and retrieved a white canister of bear spray. **(*Page 27*)**

92. While still trespassing in the restricted grounds of the U.S. Capitol, Defendant **Tanios** encouraged other rioters to do the same, and videotaped the rioters assaulting police. **(*Page 27*)**

*** 

94. Around that same time, Defendants Khater and **Tanios** were engaged in a confrontation with law-enforcement officers, including Officer Sicknick, who were guarding the Lower West Terrace of the U.S. Capitol. They and others began pulling down barriers and assaulting and attacking officers with their hands and feet and other objects.[4] From less than 8 feet away, Defendant Khater sprayed Officer Sicknick in the face with the bear spray Defendant **Tanios** had brought with them.[5] **(*Page 27 - 28*)**

95. Officer Sicknick turned his head away and retreated from the police line, incapacitated by the bear spray. … **(*Page 28*)**

*** 

106. … In total, six people—including Officer Sicknick—lost their lives directly because of the riot, 140 officers were injured, and scores of people were left emotionally and/or physically damaged. **(*Page 31*)**

*** 

109. Around 10:00 p.m. on January 6, 2021, Officer Sicknick, who was still at the U.S. Capitol, collapsed and was rushed to a nearby hospital for treatment. Around 9:30 p.m. the next day, Officer Sicknick died. **(*Page 32*)**

110. According to the District of Columbia's Chief Medical Examiner, Officer Sicknick died of "natural causes"—specifically, a series of strokes. The Medical Examiner further stated that "all that transpired on [January 6] played a role in his condition" that led to his death. **(*Page 32*)**

*** 

---

[4] This is factually incorrect as Defendant Tanios was never charged with assaulting anyone at the Capitol on January 6, 2021. Regardless, for the purpose of this Motion the Court must assume the truth of the allegations pleaded herein.

[5] This is factually incorrect as no person was ever charged with spraying "bear spray" at Officer Sicknick. Regardless, for the purpose of this Motion the Court must assume the truth of the allegations pleaded herein.

113.   In July and August 2022, Defendants Khater and **Tanios** signed factual proffers as part of their plea agreements, in which they admitted to their crimes that day. Defendant **Tanios**' signed proffer admits to trespass and disorderly conduct; … (***Page 33***)

***

121.   … on January 6, 2021, a mob of individuals incited by Defendant Trump and others, including Defendants Khater and **Tanios**, stormed the U.S. Capitol.  (***Page 36***)

***

125.   Officer Sicknick was inside the U.S. Capitol as the mob gathered outside. The mob, including Defendants Khater and **Tanios**, attacked Officer Sicknick and other law enforcement officers protecting the U.S. Capitol and intentionally and unlawfully forced its way inside the building.[6]  (***Page 37***)

126.   Many individuals in the mob, including Defendants Khater and **Tanios**, either carried weapons or used objects such as poles and fire extinguishers as weapons before and after entering the building. … (***Page 37***)

127.   The mob, including Defendants Khater and **Tanios**, also unlawfully and intentionally entered non-public areas of the U.S. Capitol building, including Members' private offices.[7]… (***Page 37***)

***

129.   After rioters broke through the police line where he was stationed, individuals in the mob, including Defendants Khater and **Tanios**, intentionally and forcibly assaulted Officer Sicknick and others.[8] Defendant Khater sprayed Officer Sicknick in the face with bear spray, which incapacitated Officer Sicknick and left him unable to defend himself from the mob.[9] (***Page 38***)

130.   As a direct result of the attack by Defendants Khater and **Tanios** and others— which Defendant Trump instigated—Officer Sicknick suffered physical injuries. (***Page 38***)

131.   The following day, on January 7, 2021, Officer Sicknick tragically died. (***Page 38***)

132.   All that transpired on January 6th—including the actions taken by Defendants Trump, Khater, and **Tanios**—played a significant role in the medical condition that led to Officer Sicknick's death the following day.  (***Page 38***)

---

[6] This is factually incorrect as Defendant Tanios was never charged with assaulting anyone at the Capitol on January 6, 2021. In addition, Defendant Tanios never entered the Capitol Building and was never charged with doing so. Regardless, for the purpose of this Motion the Court must assume the truth of the allegations pleaded herein.

[7] This is factually incorrect.  Defendant Tanios never entered the Capitol Building and was never charged with doing so.  Regardless, for the purpose of this Motion the Court must assume the truth of the allegations pleaded herein.

[8] This is factually incorrect as Defendant Tanios was never charged with assaulting anyone at the Capitol on January 6, 2021. Regardless, for the purpose of this Motion the Court must assume the truth of the allegations pleaded herein.

[9] This is factually incorrect as no person was ever charged with spraying "bear spray" at Officer Sicknick. Regardless, for the purpose of this Motion the Court must assume the truth of the allegations pleaded herein.

133.    Officer Sicknick's death was a reasonable and foreseeable consequence of Defendants' intentional words and actions. (***Page 38***)

                                                  ***

135.    For all these reasons, the Defendants are directly and vicariously liable to the Plaintiff for the wrongful death of Officer Sicknick and for all damages arising therefrom.  (***Page 38***)

                                                  ***

138.    … Defendants, by force, intimidation, or threat, agreed and conspired with one another and others to undertake a course of action to prevent Congress and Vice President Mike Pence from discharging their duties to count the Electoral College Vote and certify President Biden and Vice President Harris as the winners of the 2020 presidential election. In this effort the Defendants induced Congress and Vice President Pence to leave the U.S. Capitol while they were performing their official duties, as required by the 12th Amendment and federal law, by interrupting, hindering, and impeding the performance of those duties. (***Page 39***)

                                                  ***

142.    … the purpose of the rally was to gather a crowd in an effort to incite them to disrupt the certification of the Electoral College votes by Congress and to deny President Biden and Vice President Harris their respective offices. (***Page 40***)

143.    … Many of those supporters, including Defendants Khater and **Tanios**, understood Defendant Trump's tweet to be a call to violent action to stop Congress from certifying the Electoral College vote. … By answering his call, conspirators indicated their agreement to his unlawful conspiracy to disrupt Congress and deny office to President Biden and Vice President Harris. (***Pages 40 - 41***)

                                                  ***

149.    … on January 6, 2021, a mob of individuals incited by Defendant Trump and others, including Defendants Khater and **Tanios**, stormed the U.S. Capitol. (***Page 42***)

150.    Officer Brian Sicknick was inside the U.S. Capitol as the mob gathered outside. The mob, including Defendants Khater and **Tanios**, attacked Officer Sicknick and other law enforcement officers protecting the U.S. Capitol and intentionally and unlawfully forced its way inside the building.[10] (***Page 42***)

151.    On or about August 26, 2022, Defendant Khater pleaded guilty in the United States District Court for the District of Columbia to assaulting, resisting, or impeding Officer Sicknick and other officers while using a deadly weapon (bear spray) provided to him by Defendant

_____

[10] This is factually incorrect.  Defendant Tanios never entered the Capitol Building and was never charged with doing so.  Regardless, for the purpose of this Motion the Court must assume the truth of the allegations pleaded herein.

Tanios. (*Page 42*)

152.    Having already pleaded guilty to assaulting, resisting, or impeding Officer Sicknick, Defendant Khater is liable to the Plaintiff for common-law assault for the same conduct. Defendant **Tanios** is liable for his role in those same acts. (***Page 42***)

***

159.    Defendants Khater and **Tanios** violated D.C. Code § 22-1322 by actively participating in a riot, including, among other things, physically assaulting Officer Sicknick.[11] (***Page 44***)

160.    Officer Sicknick was directly harmed by the actions of Defendants Khater and **Tanios** and others and died as a result of that harm. (***Page 44***)

***

168.    As described above, Officer Sicknick was harmed by the rioting mob Defendant Trump incited—specifically by the actions of Defendants Khater and **Tanios**. (***Page 45***)

169.    The mob's intentional and unlawful entry into the U.S. Capitol, and the words and actions of its participants before and after entry, caused Officer Sicknick to suffer direct physical harm. " (***Page 45***)

## <u>ARGUMENT</u>

On or about January 5, 2023 the Plaintiff filed a five Count Complaint individually and as the personal representative of the Estate of Brian Sicknick.  In it the Plaintiff alleges the following claims for relief:

Count 1 – Wrongful Death, D.C. Code §27-101 (against all Defendants);

Count 2 – Conspiracy to Violate Civil Rights (interference with official duties) 42 U.S.C. §1985(1)(Against all Defendants)

Count 3 – Common-Law Assault (Against Defendants Khater and Tanios)

Count 4 – Negligence *Per Se* (Violation of D.C. Code §22-1322 – Rioting or inciting Riot)(Against all Defendants); and

Count 5 – Aiding and Abetting Common-Law Assault (Against Defendant Trump).

---

[11] This is factually incorrect as Defendant Tanios was never charged with assaulting anyone at the Capitol on January 6, 2021. Regardless, for the purpose of this Motion the Court must assume the truth of the allegations pleaded herein.

Plaintiff prays for compensatory damages of not less than $10,000.00, an unspecified amount of punitive damages, and for attorneys' fees and the cost of the investigation and prosecution of this suit.  For the reasons set forth herein, Defendant George Pierre Tanios has filed a Motion to Dismiss each of the four counts alleged against him pursuant to Rule 12(b)(6) for failing to state a claim against him upon which relief can be granted.

### A.    Legal Standard applicable to a Rule 12(b)(6) Motion.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." To state a claim upon which relief may be granted, Plaintiff is charged with pleading her Complaint so that it plausibly lays out a legally recognized case against Defendants. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 549 (2007). While she need not include "detailed factual allegations," she must do more than state an unadorned "the-defendant-unlawfully-harmed-me" accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

### B.    Plaintiff has failed to set forth a legally cognizable claim for Wrongful Death.

Count 1 of the Complaint asserts a claim for the wrongful death of Brian Sicknick pursuant to D.C. Code §16-2701 (2001).[12]  That Act creates a right in favor of the spouse/domestic partner and next of kin of the deceased person for damages arising out of a negligent act causing death. *Id*.  *See also, District of Columbia v. Hawkins*, 782 A.2d 293 (D.C. 2001).  "It is designed to

---

[12] The Plaintiff has not pleaded a Survivor's action on behalf of the decedent.

provide a remedy whereby close relatives of the deceased who might have expected maintenance or assistance from the deceased had he lived, may recover compensation from the wrongdoer commensurate with the loss sustained." *See Semler v. Psychiatric Institute of Washington, D.C.*, 188 U.S.App. D.C. 41, 43-44, 575 F.2d 922, 924-25 (D.C.Cir. 1978).  In other words, the damages are the loss of economic support suffered by the decedent's spouse, domestic partner, or next of kin.  In addition to allowing recovery for economic losses resulting from the loss of financial support the decedent could have been expected to provide, recovery is also allowed for the value of services the decedent would have provided (e.g., loss of care, education, training, guidance, and personal advice). *See Doe v. Blinker,* 492 A.2d 857, 863 (D.C. 1985).

In this case the Plaintiff has failed to satisfactorily plead a claim for Wrongful Death and Count 1 must be dismissed.  Specifically, the Plaintiff has failed to allege that the Decedent was survived by a spouse or domestic partner.  In addition, the Plaintiff has not alleged that the decedent was survived by any next of kin who would be entitled to recover under the Wrongful Death Act.

Moreover, the Plaintiff has failed to allege that any qualified person sustained economic losses as the result of the wrongful death of the decedent.  It is not alleged that the decedent was providing financial maintenance or assistance to anyone.  It is not alleged that any qualified person was receiving or expecting to receive the kind of services required by the Act to sustain a claim for damages.  Indeed, the only injuries alleged within the 47-page Complaint are for personal injuries allegedly suffered by the decedent and injuries to the democratic process, neither of which are compensable losses under the Wrongful Death Act as a matter of law.

1. **Plaintiff does not allege that she is a beneficiary under the Act or that there are any beneficiaries under the Act**.

 The Wrongful Death Act provides as follows:

> (a) When, by an injury done or happening within the limits of the District, the death of a person is caused by the wrongful act, neglect, or default of a person … and the act, neglect, or default is such as will, if death does not ensue, entitle the person injured, or if the person injured is married or domestic partnered, entitle the spouse or domestic partner, either separately or by joining with the injured person, to maintain an action and recover damages, the person who … is liable if death does not ensue is liable to an action for damages for the death…. (Emphasis supplied.)

*See* D.C. Code §16-201(a)(2001).  In this case the Plaintiff brought suit "individually and as the Personal Representative for the Estate of Brian Sicknick."  However, in the Complaint the Plaintiff is only identified as "…the personal representative for the Estate of Brian Sicknick." *See Complaint at* ¶8.  At no point in any of the 177 paragraphs of the Complaint does the Plaintiff allege that the decedent was married or domestic partnered, or that she was his wife or domestic partner.  In fact, Plaintiff fails to identify any cognizable legal theory upon which she might possess a legal claim to assert "individually" against the any of the Defendants. Similarly, the Plaintiff does not allege that the decedent was survived by any next of kin.  The only reasonable and permissible inference that can be drawn from these omissions is that the decedent was not married or domestic partnered to Plaintiff or anyone else, and that he was not survived by any qualified next of kin.  As a result, the Plaintiff has not pleaded a legally cognizable Wrongful Death claim and Count 1 of the Complaint must be dismissed as a matter of law.

## 2. Plaintiff does not allege that any covered beneficiary suffered a financial harm due to the Wrongful Death of the decedent.

The Wrongful Death Act limits the type of damages that might be recovered as follows:

> (b) The damages shall be assessed with reference to the injury resulting from the act, neglect, or default causing the death, to the spouse or domestic partner and the next of kin of the deceased person; and shall include the reasonable expenses of last illness and burial…. (Emphasis supplied.)

See D.C. Code §16-2701(b).  As discussed above, the only damages recoverable "to the spouse or domestic partner and the next of kin" take the form of either financial loss for assistance/maintenance that the beneficiaries were expecting to receive and the financial value of

services that the beneficiaries were receiving or expecting to receive.  The Act does not permit an award of damages for the sorrow, mental distress, grief, of loss of love and affection experienced by the decedent's beneficiaries.  See STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, §14-05 (Rev. 2002)(The Wrongful Death Act does not permit you to, and you must not, award the beneficiaries any amount for the sorrow, mental distress or grief, or for the loss of love and affection that they may have suffered because of the death).

In this case the Plaintiff does not allege that anyone, much less a qualified beneficiary, suffered a financial loss as a result of the wrongful death of the decedent.  There is no allegation that a qualified beneficiary received financial assistance or maintenance from the decedent before he died.  Similarly, the Complaint is silent as to whether any qualified beneficiary was receiving services from decedent, or expected to receive services from decedent, that could be reduced to a financial value. The only reasonable and permissible inference that can be drawn from these omissions is that no qualified beneficiary experienced a financial loss as a result of Brian Sicknick's death.  As a result, the Plaintiff has not pleaded a legally cognizable Wrongful Death claim and Count 1 of the Complaint must be dismissed as a matter of law.

**C.      The Plaintiff has failed to set forth a legally cognizable 42 U.S.C. §1985(1) claim.**

In Count 2 of the Compliant the Plaintiff has alleged that Defendant Tanios is liable for participating in a civil conspiracy to violate civil rights (Interference with Official Duties) under 42 U.S.C. §1985(1).  The Act describes the proscribed conduct as follows:

> If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged

in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties.

42 U.S.C. §1985(1).  This Court has previously observed that Section 1985(1) is not strictly speaking a civil rights provision, rather it "…safeguards federal officials and employees against conspiratorial acts directed at preventing them from performing their duties." *See Thompson v. Trump*, 590 F. Supp. 3d 46, 62 (2023).  Any targeted party injured by such acts can sue to recover damages.

In this case the Plaintiff has failed to satisfactorily plead a claim for civil conspiracy to violate civil rights (Interference with Official Duties) under 42 USC §1985(1) and Count 2 must be dismissed.  Specifically, Plaintiff has failed to allege that there was a conspiracy to interrupt or interfere with Officer Sicknick's ability to discharge his duties as a Capitol Police Officer. Cases permitting Section 1985(1) actions uniformly allow suits by the federal official who was the target of the conspiracy at issue. In *Barr v. Clinton*, a U.S. congressman brought a Section 1985(1) complaint against a former U.S. President and his advisors alleging they conspired against him to gather and disseminate disparaging information about him in retaliation for his role in the President's impeachment.  370 F.3d 1196 (D.C. Cir. 2004). In *Windsor v. The Tennessean*, a former Assistant United States Attorney alleged that a newspaper, its employees, and a former United States Attorney conspired to remove him from his position. 719 F.2d 155, 157 (6th Cir. 1983). While the plaintiff did not prevail in either case, the aggrieved parties in both cases alleged that the conspiracy was formed to specifically harm the plaintiff.  In *Thompson v. Trump,* this Court held that ten members of Congress had satisfactorily alleged that there was a conspiracy to prevent them from discharging their duties and, thus, their Section

1985(1) claims were allowed to proceed.[13]

In Count 2 of the subject Complaint the Plaintiff alleged as follows:

138.    …by force, intimidation or threat, the Defendants agreed and <u>conspired</u> with one another and others to undertake a course of action <u>to prevent Congress and Vice president Mike Pence from discharging their duties to count the Electoral College Vote and certify President Biden and Vice President Harris as the winners of the 2020 presidential election</u>.  In this effort, the Defendants <u>induced Congress and Vice President Pence to leave the US Capitol while they were performing their official duties</u>, as required by the 12th Amendment and federal law, by <u>interrupting, hindering, and impeding the performance of those duties</u>.

*** 

142.    Among other purposes, the purpose of the rally was to gather a crowd in an effort to incite them <u>to disrupt the certification of the Electoral College votes by Congress and to deny President Biden and Vice President Harris their respective offices</u>.

143.    …Many of those supporters, including Defendants … Tanios, understood Defendant Trump's tweet to be <u>a call to violent action to stop Congress from certifying the Electoral College vote</u>.  Defendant Trump's tweets were, in essence, <u>an offer to join a conspiracy to disrupt Congress</u>.  By answering his call, conspirators indicated their agreement to <u>his unlawful conspiracy to disrupt Congress and deny office to president Biden and Vice President Harris</u>.  (Emphasis supplied.)

Thus, it is clear from the Complaint that the Plaintiff does not allege that there was a conspiracy to interfere with the discharge of his official duties.  There is no allegation that a conspiracy was formed to prevent him from holding his employment as a Capitol Police Officer or to force him to leave a place where the performance of his duties was required.  The Plaintiff does not even articulate the decedent's official duties on January 6 or that he was interrupted in performing those duties.  The only conspiracy that is pleaded involved the official duties of Congress and the Vice President in certifying the Electoral College vote.  In essence, the Plaintiff is seeking to recover damages resulting from a conspiracy to interfere with someone else's

---

[13] Two Plaintiffs in the *Thompson* case were Capitol Police Officers, but the issue of whether they properly pleaded a 1985(1) action was not addressed by the Court.

performance of their official duties.  This novel legal theory, if accepted, would be the first time

that a court recognized third-party standing for a Section 1985(1) claim. [14]

Similarly, the Plaintiff does not allege that the decedent was a federal official covered by

Section 1985(1).  The Plaintiff simply alleged that she "…is the personal representative for the

Estate of Brian Sicknick."  *See Compliant (Document 1) at page 3, Para. 8*.  Plaintiff also

alleged as follows:

> 19.     Officer Sicknick joined the U.S. Capitol Police in July 2008 and was a member of
> the Department's First Responder's Unit.  Before joining the U.S. Capitol Police, Officer
> Sicknick served in the New Jersey Air National Guard and had deployed overseas in
> support of U.S. military missions.

*Complaint (Doc. 1) at page 5*.  Many § 1985(1) cases have failed when the plaintiff does not

demonstrate that they are an officer for the purposes of § 1985(1).  *See Morast v. Lance*, 631 F.

Supp. 474, 478 (N.D. Ga. 1986) (The Court held that the Vice-president of a heavily regulated

national bank was not a person "holding any office, trust or place of confidence 'under the

United States'" within the meaning of § 1985(1).); *Lewis v. News-Press & Gazette Co.*, 782 F.

Supp. 1338, 1341-3 (W.D. Mo. 1992) (The Court held that a state judge's § 1985 claim failed

because he was not a federal official although he took an oath to support the constitution.);

*Konopka v. Borough of Wyo.*, 383 F. Supp 2d 666, 672 (M.D. Pa. 2005)  (The court found that a

borough tax collector was not a federal official for the purposes of a § 1985 claim.).

The only reasonable and permissible inference that can be drawn from these omissions is

that the decedent was not the target of a conspiracy involving Defendant Tanios, and that

Plaintiff was not a federal official, whose duties, if interfered with, would give rise to a Section

1985(1) claim.  As a result, the Plaintiff has failed to allege a legally cognizable claim for civil

---

[14] The fact that Plaintiff is not claiming that the decedent was the target of a conspiracy and that the suit is not
seeking to recover injuries to the decedent is supported by the fact that the Plaintiff has not alleged a Survivor's
Action under D.C. Code 12-101 to recover for personal or other injuries that arose prior to Brian Sicknick's death.

conspiracy to violate civil rights (Interference with Official Duties) under 42 U.S.C. §1985(1)

and Count 2 of the Complaint must be dismissed as a matter of law.

**D.      Plaintiff's claim for Common Law Assault is time-barred and otherwise fails to plausibly plead a legally recognized case against Defendant Tanios.**

Plaintiff's Complaint includes a claim of common law assault (Count 3) against

Defendants Tanios and Khater. *See* Complaint at ¶¶148-149. In these five paragraphs, Plaintiff

alleges that on January 6, 2021, a mob stormed the U.S. Capital (¶149), Officer Sicknick was

inside the U.S Capitol as the mob gathered outside then forced its way inside the building (¶150),

Defendant Khater – <u>not Defendant Tanios</u> – later pleaded guilty to assaulting, resisting, or

impeding Officer Sicknick and other officers while using a deadly weapon (bear spray) provided

to him by Defendant Tanios (¶151), Defendant Khater – <u>not Defendant Tanios</u> – having already

pleaded guilty to assaulting, resisting, or impeding Officer Sicknick, is liable to Plaintiff for

common-law assault for the same conduct (¶152), and Defendant Tanios is liable for his role in

this same acts (¶152).

As an initial matter, Plaintiff's Count 3 for common law assault is time-barred. The

District provides a one-year limitations period for assault. D.C. Code § 12-301(a)(4). During the

Covid pandemic, the Court briefly extended the limitations period through March 31, 2021[15] but

even this extension does not rescue Plaintiff's untimely assault count.

Plaintiff's cause of action for "assault" began to accrue on January 6, 2021 when the

alleged assault occurred on Officer Sicknick. The one-year limitations period would ordinarily

---

[15] The Order from the Chief Judge of the Superior Court for DC tolled the statute of limitations for all civil claims that would otherwise expire before May 15, 2020 "during the period of the [COVID-19] emergency." This Order was initially issued on March 18, 2020 and was extended multiple times (March 19, 2020, May 14, 2020, June 19, 2020, August 13, 2020, and November 5, 2020). This Order effectively "paused" the limitations period for claims that would have accrued between March 18, 2020 and March 31, 2021. Calculation of the applicable limitations requires adding 388 days to the original deadline.

have run on January 6, 2022. The Court's COVID Order in effect at that time paused the limitations period until March 31, 2022. This difference of 84 days extended the statute of limitations for common law assault until March 31, 2022. Since Plaintiff filed the Complaint more than nine months later on January 5, 2023, the District's statute of limitations as extended by the emergency Court Order bars Count 3 (Common Law Assault).

Plaintiff's assault count also fails to state a claim upon which relief can be granted. Common law assault requires: (1) an intentional act; (2) done without lawful justification; (3) that threatens or attempts harmful or offensive bodily contact;[16] and (4) creates apprehension of imminent harmful or offensive contact in the Plaintiff. *See e.g.¸ Mwani v. Al-Qaeda*, 2022 U.S. Dist. LEXIS 72640, * (D.D.C.); *see also Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007); *Madden v. D. C. Transit System, Inc.*, 307 A.2d 756, 757 (D.C. 1973). Specifically, unlike battery, "the [intentional] tort of assault requires the victim to be 'put in … apprehension' of harmful or offensive contact." *Id.* (citing *Mwani I*, 2014 U.S. Dist. LEXIS 135599, 2014 WL 4749182, at *10 (quoting Restatement (Second) of Torts § 21).  Here, Plaintiff in the Complaint commits two fatal pleading errors that preclude a plausible claim for common law assault and warrant dismissal. First, she does not plead the elements required for common law assault thereby failing to put Defendant Tanios on notice of such requirements and leaving the Court to guess whether Plaintiff somewhere, somehow has pleaded allegations to support them. Second, assuming it falls on Defendant Tanios (and the Court) to search through Plaintiff's Complaint to guess whether such elements have been pleaded, she compounds the first failure by not including

---

[16] *See Buchanan v. United States*, 32 A.3d 990, 1003 (D.C. 2011) ("It is also worth noting that, under the common law of Maryland, from which the common law of the District of Columbia is derived, '[b]oth varieties of assault are specific intent crimes,' *Lamb v. State*, 93 Md. App. 422, 613 A.2d 402, 412 (1992), such that '[a]n assault of the attempted battery variety requires a specific intent to perpetrate a battery,' *id.*, and '[a]n assault of the intentional frightening variety . . . requires a specific intent to place the victim in reasonable apprehension of an imminent battery,' *id.* at 413.").

any allegation that anyone, including Officer Sicknick, was apprehensive of a harmful or offensive contact --- indeed the words "apprehensive" or "offensive" (or any variant) cannot be found in the 47 page, 177 paragraph, Complaint. Plaintiff's remaining conclusory allegations are themselves insufficient under the *Iqbal-Twombley* plausibility standard and cannot overcome the devastating failures of omission concerning the required elements and allegation of apprehension.

Finally, notwithstanding the two prior grounds for dismissal, Plaintiffs' allegations principally relate to Defendant Khater based on his plea and conviction for assaulting, resisting, or impeding Officer Sicknick. Defendant Tanios entered no such plea, and he has no such convictions. In contrast to Defendant Khater, Defendant Tanios entered a plea and received a conviction only for disorderly conduct and trespassing. *See* Complaint ¶ 3. Plaintiff's intentional omission of this fact under Count 3 suggests she agrees it does not support Count 3 for common law assault. This leaves only the allegation that Defendant Tanios provided bear spray which itself cannot establish any element of assault, and there is no allegation that Officer Sicknick or anyone else saw Defendant Tanios "provide" it to Defendant Khater. This falls short of the plausibility standard under *Iqbal-Twombley*.

**E.**     **Plaintiff's *Negligence Per Se* claim predicated on an alleged violation of the District's anti-riot statute fails to state a claim upon which relief can be granted.**

Plaintiff predicates her claim for negligence per se on an alleged violation of D.C. Code § 22-1322, which prohibits a riot, to advance a theory under District of Columbia law that violations of criminal statutes can create civil liability. *See Marusa v. District of Columbia*, 484 F.2d 828, 834, 157 U.S. App. D.C. 348 (D.C. Cir. 1973) (setting forth "guidelines for determining whether violation of a criminal statute can create civil liability"). Plaintiff alleges that Defendant Tanios (and Defendant Khater) "violated D.C. Code § 22-1322 by actively

participating in a riot, including, among other things, physically assaulting Officer Sicknick" and that "Officer Sicknick was directly harmed by the actions of Defendants Khater and Tanios and others and died as a result of that harm." *See* Complaint ¶ 159 – 160. These allegations fail to establish such a cause of action.

This Court has already conclusively determined that such a negligence *per se* count fails to state a claim under District of Columbia law because the referenced criminal statute is not the type of criminal statute that District of Columbia law would recognize to support a negligence *per se* theory. *See Smith v. Trump*, 2023 WL 417952 (U.S.D.C. Dist. of Columbia)(court agrees "that this claim fails because none of the statutes Plaintiff cites [including § 22-1322] are the type of criminal statute that District of Columbia would recognize to support a negligence *per se* theory").[17]

Under District of Columbia law, a "violation of a criminal statute can create civil liability." *Marusa*, 484 F.2d at 834. Courts, at a minimum, must make three inquiries: "[1] the law or regulation should be one designed to promote safety; [2] the plaintiff must be 'a member of the class to be protected' by the statute; and [3] the defendant must be a person upon whom the statute imposes specific duties." *Id.; see also McNeil Pharm. v. Hawkins*, 686 A.2d 567, 579

---

[17]This Court in *Smith v. Trump* indicated that:

> Many but not all Defendants have moved to dismiss the complaint. The arguments they raise are in large part duplicative of those the court already considered and addressed in *Thompson v. Trump*, 590 F.Supp.3d 46, 2022 WL 503384 (D.D.C. 2022). Because of this substantial overlap, the court in this memorandum opinion will fully address only those arguments that are made for the first time by these Defendants."

In that earlier case of *Thompson*, this Court voiced its skepticism that the negligence per se counts based on § 22-1322 stated claims under District of Columbia law but Defendant Trump had failed to develop those arguments in his motion to dismiss. *See Thompson v. Trump*, 590 F.Supp.3d 46, 119-120 (U.S.D.C. Dist. of D.C. 2022)("At oral argument, the court expressed skepticism that the negligence per se counts state claims under District of Columbia law," "[b]the court's skepticism is nowhere matched by an argument in President Trump's motion to dismiss," and "it is not the court's job to raise arguments that a party has not"). Here, Defendant Tanios explicitly raises such arguments.

(D.C. 1996). As this Court said in *Smith v. Trump,* "the statute offered to establish a standard of care 'must not merely repeat the common law duty of reasonable care, but must set forth "specific guidelines to govern behavior."'" *Smith,* 2023 WL 417952, *30 (quoting *McNeil Pharm., 686 A.2d at 579* (quoting *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 558, 303 U.S. App. D.C. 1 (D.C. Cir. 1993)). For instance, in *District of Columbia v. Mitchell*, the plaintiff alleged a violation of a statute requiring that the D.C. Department of Corrections be "responsible for the safekeeping, care, protection, instruction, and discipline" of inmates at the Lorton Reformatory, but the court held that "[w]e see nothing in the statute—certainly no specifics— that could give rise to a claim of negligence per se." 533 A.2d 629, 639 (D.C. 1987); *see also Joy*, 999 F.2d at 558 (holding that an aviation regulation that "simply restates the general common law duty that pilots should exercise reasonable care" did not merit a negligence per se instruction). By contrast, in *Marusa*, the court held that a law making it a criminal offense to serve alcohol to persons who are intoxicated or appear to be intoxicated met the criteria for a negligence per se theory. 484 F.2d at 833-35. The court reasoned that, as applied there, the statute imposed a duty on tavern owners meant to protect the general public from "inebriated persons." *Id.* at 834.

The criminal statute on which Plaintiff relies here, as did the Plaintiff in *Smith v. Trump*, more closely resembles those at issue in *Mitchell* and *Joy* than *Marusa*. *Smith v. Trump*, 2023 WL 417952, *30. D.C. CODE § 22-1322 provides that whoever "willfully engages . . . [or] incites or urges other persons to engage in a riot" of five or more persons is subject to criminal penalties. This Court has already determined that this statute does not impose "specific guidelines to govern behavior;" rather, it is a generally drawn statute applicable to all and prohibits certain behaviors, so, therefore, it cannot sustain a claim of negligence per se. *Smith v. Trump*, 2023 WL

417952, *30.

In this case, while the Plaintiff correctly states that "[D.C. Code § 22-1322], on its face, is a statute designed to promote public safety," *see* Complaint at ¶ 155, the Plaintiff still must prove that (1) Plaintiff was "a member of the class to be protected" by § 22-1322, and (2) Defendant Tanios was a person upon whom § 22-1322 imposed specific duties. *See Marusa v. District of Columbia*, 484 F.2d 828, 834 (D.C. Cir. 1973) (declining to impose negligence per se doctrine).

Under Count 4, the Plaintiff asserts a claim of negligence per se against Defendant Tanios based on an alleged violation of D.C. Code § 22-1322 (rioting or inciting to riot):

- A riot is defined under § 22-1322(a) as "a public disturbance involving an assemblage of 5 or more persons which by tumultuous and violent conduct or the threat thereof creates grave danger of damage or injury to property or persons."

- Under this statute it is unlawful to: (1)(a) engage in, or (b) incite or encourage others to engage in; and (2) a riot.

- Further, based on the definition of riot under section (a), the type of injury this statute is designed to prevent is "grave danger of damage or injury to property or persons."

Section 22-1322, a public safety statute, applies to and serves to protect the public at large. As such, a violation of this statute cannot form the basis of a negligence per se claim because it has no (1) specific or vulnerable classes of persons protected under the statute, and (2) specific duties imposed upon a certain class of persons (of which the defendant is a member).[18] *See Civic v. Signature Collision Ctrs.*, LLC, 221 A.3d 528, 530 (D.C. 2019) ("To the extent that § 1003.6 is viewed as merely part of the general Building Code, we do not see any basis upon which to conclude that § 1003.6 was intended to provide a class of unusually vulnerable persons with heightened protections."); *Thoma v. Kettler Bros.*, 632 A.2d 725, 728 n.8 (D.C. 1993)

---

[18] *See* W. Page Keeton et al., Prosser and Keeton on the Law of Torts (Prosser) § 36, at 222 (5th ed. 1984) (in determining the class of persons to whom a statutory violation pertains, courts "have been careful not to exceed the purpose which they attribute to the legislature"). *Cf. District of Columbia v. Brown,* 589 A.2d 384, 387 (D.C. 1991) (D.C. elevator code not meant to protect members of general public from their own negligence).

(Negligence per se instruction improper where regulations at issue are "general" and do not significantly differ from the common law standard of reasonable care under the circumstances.); *see also Parker Bldg. Servs. Co. v. Lightsey*, 925 So. 2d 927, 931 (Ala. 2005) ("The first element of negligence per se requires that a statute have been enacted to protect a class of persons. A class of persons is to be distinguished from the general public."); *see also Trinity Indus. v. Greenlease Holding Co.*, 35 F. Supp. 3d 698, 725 (W.D. Pa. 2014) ("Because the CERCLA is an environmental statute that is not tailored to 'protect a particular class of individuals,' it does not establish the applicable standard of care for purposes of negligence law *(citing Wagner v. Anzon, Inc.*, 453 Pa. Super. 619, 684 A.2d 570, 574-75 (Pa. Super. Ct. 1996).).

For a violation of criminal or regulatory law to create civil liability, (1) the specific law should generally be designed to promote safety, (2) the plaintiff must be a member of the class protected by the law, and (3) the law must impose a specific duty on the defendant. *See* Standard Civil Jury Instructions for the District of Columbia (2016 Revised Ed.) § 5.09[2]. In this case, while D.C Code § 22-1322 may appear to promote safety, the statute does not protect a specific class of people or impose specific duties upon the defendant. Accordingly, a violation of § 22-1322 cannot be used to establish negligence per se.[19] It follows then that Plaintiff has failed to state a claim upon which relief can be granted and Count 4 for negligence per se must be dismissed.

## CONCLUSION

For the reasons set forth above, Counts 1 through 4 of the Complaint fail to state legally cognizable claims against Defendant George Pierre Tanios upon which relief can be granted.  As

---

[19] Note also that Plaintiff acknowledges in the Complaint that Defendant Tanios signed a factual proffer as part of his plea agreements, in which he only admitted to trespass and disorderly conduct. *See* Complaint, ¶ 3. In other words, neither trespass nor disorderly conduct constitutes a violation of D.C. Code § 22-1322, and Defendant Tanios was not prosecuted for violation of D.C. § 22-1322.

a result, Counts 1 through 4 must be dismissed against Defendant George Pierre Tanios as a matter of law.

Respectfully submitted,

James R. Andersen (Bar ID: MD0186)
Roderick R. Barnes (Bar ID: MD0158)
Adam T. Sampson (Bar ID: MD0188)
Rollins, Smalkin, Richards & Mackie, L.L.C.
300 E. Lombard Street, Suite 900
Baltimore, MD 21202
Ph: (410) 727-2443
Fx: (410) 727-8390
jandersen@rsrm.com
rbarnes@rsrm.com
asampson@rsrm.com
*Attorneys for Defendant George Pierre Tanios*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 10th day of May 2023, a copy of the foregoing Motion to Dismiss Complaint, Statement of Authorities in Support of Motion to Dismiss, and proposed Order were served via the Court's e-filing to:

Matthew Kaiser, Esquire
Noah Brozinsky, Esquire
KaiserDillon PLLC
1099 Fourteenth Street, NW, 8th Floor
Washington, DC 20005

Philip Andonian, Esquire
Joseph Caleb, Esquire
CalebAndonian PLLC
1100 H Street, N.W., Suite 315
Washington, DC 20005

Mark S. Zaid, Esquire
Bradley P. Moss, Esquire
Mark S. Zaid, P.C.
1250 Connecticut Ave., NW, Suite 700
Washington, DC 20036
*Attorneys for Plaintiff*

Jesse R. Binnall, Esquire
Binnall Law Group
717King Street, Suite 200
Alexandria, VA 22314
*Attorney for Defendant Donald J. Trump*

David Patrick Sheldon, Esquire
Law Offices of David P. Sheldon, PLLC
100 M Street, SE, Suite 600
Washington, DC 20003
*Attorney for Defendant Julian Elie Khater*

Roderick R. Barnes (Bar ID: MD0158)