**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SANDRA GARZA, individually and as | ) | |
| the personal representative | ) | |
| of THE ESTATE OF BRIAN SICKNICK, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD J. TRUMP, | ) | Case No. 1:23-cv-00038 (APM) |
| JULIAN KHATER, | ) | |
| and GEORGE TANIOS, | ) | |
| | ) | |
| *Defendants.* | ) | |

<u>**DEFENDANT JULIAN KHATER'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF HIS MOTION TO DISMISS.**</u>

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ........................................................................................................... 5

**STATEMENT OF FACTS** ............................................................................................ 7

**STATEMENT OF THE LAW** ...................................................................................... 9

   **A.** **Standard of Review-Rule 12(b)(6)** ................................................................... 9

   **B.** **Standard of Review-Rule 12(b)(1)** ................................................................. 10

   **C.** **Elements of Federal Civil Conspiracy** ............................................................. 11

   **ARGUMENT** ........................................................................................................... 12

**I.** **PLAINTIFF HAS FAILED TO PLEAD FACTS SUFFICIENT TO CONCLUDE THAT DEFENDANT KHATER ENTERED INTO A CONSPIRACY TO VIOLATE CIVIL RIGHTS (INTERFERENCE WITH OFFICIAL DUTIES) IN VIOLATION OF 42 U.S.C. § 1985(1).** ........................................................................................... 12

**II.** **18 U.S.C. § 1752(a)(2) DOES NOT RECOGNIZE A PRIVATE RIGHT OF ACTION, AND PLAINTIFF HAS FAILED TO PLEAD FACTS SUFFICIENT TO CONCLUDE THAT DEFENDANT KHATER VIOLATED 18 U.S.C. § 1752(a)(2).** ....... 16

**III.** **PLAINTIFF HAS FAILED TO PLEAD FACTS NECESSARY TO SUSTAIN AN ACTION FOR WRONGFUL DEATH AND NEGLIGENCE PER SE.** ........................... 18

**IV.** **BECAUSE NO FEDERAL QUESTION EXISTS, IF PLAINTIFF'S ALLEGATIONS IN COUNTS III AND V ARE DISMISSED, THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR LACK OF SUBJECT-MATTER JURISDICTION.** ................................................................................................. 23

**CONCLUSION** ........................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................. 9

*BedRoc Ltd. v. United States*, 541 U.S. 176 (2004) ...................................................... 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................ 9, 10, 18, 20, 21, 23

*Ben-Rafael v. Islamic Republic of Iran,* 540 F.Supp.2d 39, 54 (D.D.C. 2008). .................... 19

*Black Lives Matter D.C. v. Trump*, 2021 WL 2530722 (D.D.C. June 21, 2021) ................... 11

*City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018) .................................... 16

*Doe v. Blinker*, 492 A.2d 857 (D.C. 1985). ................................................................ 22

*Eagle Pharmaceuticals, Inc. v. Azar*, 952 F.3d 323, 330, 331 (D.C. Cir. 2020) ................ 16

*Elshazli v. District of Columbia,* 415 F.Supp.3d 20  (D.D.C.2019) ............................ 11, 23, 24

*Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1088 (D.C. Cir. 1996) .................................. 16

*Equal Employment Opportunity Commission v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624
  (D.C. Cir. 1997) ................................................................................................ 10

*Graves v. United States*, 961 F. Supp. 314, 321 (D.D.C. 1997) ..................................... 11

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). .................................................. 11

*Janko v. Gates*, 741 F.3d 136 (D.C. Cir. 2014) ........................................................... 16

*Jianqing Wu v. Special Counsel, Inc.*, 54 F.Supp.3d 48 (D.D.C.2014). ......................... 11, 23, 24

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994). ............................ 10

*McNeil Pharmaceutical v. Hawkins,* 686 A.2d 567 (D.C. Ct. App., 1996) ....................... 19, 21

*Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ......................................... 9

*Semler v. Psychiatric Institute of Washington, D.C.,* 188 U.S. App. D.C. 41 (D.C. Cir. 1978). ...... 22

*Smith v. Trump*, 2023 U.S. Dist. LEXIS 13602, (D.D.C. Jan. 26, 2023) .......................... 15

*Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) .................................................... 10

*United States v. Caldwell,* 540 F.Supp.3d 66 (D.C. Cir. 2021) ....................................... 17

*United States v. Grider,* 617 F.Supp.3d 42 (D.C. Cir. 2022) .......................................... 17

*United States v. Griffin,* 549 F.Supp.3d 49 (D.C. Cir. 2022)........................................................17

*United States v. Jabr,* 4 F.4th 97 (D.C. Ct. App. 2021) ...............................................................17

*United States v. McHugh,* 583 F.Supp.3d 1 (D.C. Cir. 2022)........................................................17

*United States v. Puma,* 596 F.Supp.3d 90 (D.C. Cir. 2022) ........................................................17

*United States v. Rivera,* 607 F.Supp.3d 1 (D.C. Cir. 2022).........................................................17

**Statutes**

18 U.S.C. § 1752(a)(2)...............................................................................................7, 16, 17, 18

18 U.S.C. § 1752(a)(2)...............................................................................................................16

18 U.S.C. § 1752(a)(4)...............................................................................................................20

28 U.S.C. § 1331..................................................................................................................10, 23

28 U.S.C. § 1367.........................................................................................................................10

28 U.S.C. § 1367(c)(3)................................................................................................................10

28 U.S.C. § 1367(d)....................................................................................................................24

42 U.S.C. § 1985(1) ................................................................................................11, 12, 14, 16

D.C. Code § 16-2701 ........................................................................................................19, 21, 22

D.C. Code § 16-2702 .................................................................................................................22

D.C. Code § 22-1322 .......................................................................................................20, 21, 23

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .......................................................................5, 7, 11, 24

Federal Rule of Civil Procedure 12(b)(6) .......................................................................5, 7, 9, 18

*United States v. Robertson,* 610 F.Supp.3d 229 (D.C. Cir. 2022) ................................................17

*United States v. Sabol*, 534 F.Supp.3d 58 (D.C. Cir. 2021).........................................................17

*United States v. Whitton,* 534 F.Supp.3d 32 (D.C. Cir. 2021).....................................................17

*Vindman v. Trump*, 2022 U.S. Dist. LEXIS 203547, at *15 (D.D.C. Nov. 8, 2022). ....................11

*Wenner v. C.G. Bretting Mfg. Co., Inc*., 917 F.Supp. 640, 649 (W.D.Wis.1995) ...................10, 23

COMES NOW, Defendant Julian Khater, by and through undersigned counsel, and respectfully submits this memorandum of law in support of his motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) for Plaintiff's failure to state a claim upon which relief can be granted and lack of subject-matter jurisdiction.

## INTRODUCTION

The Plaintiff's Amended Complaint does its best to transform a state tort action and tragic death into a federal civil conspiracy between the uppermost of American political power and two individual demonstrators present outside the grounds of the United States Capitol on January 6, 2021. The Plaintiff contends that the primary link between these alleged co-conspirators is a series of tweets from former President and Defendant Trump falsely and fraudulently contesting the validity of the 2020 Presidential election to a vast swath of his followers, including the Co-Defendants in this present action, who were sadly led to the tragic violence of January 6, 2021.

Much of the Amended Complaint is devoted to summarizing the state of modern American politics by detailing Defendant Trump's efforts in states such as Georgia, Michigan, and Pennsylvania to dispute the results of a highly contested election.

The few strained connections the Amended Complaint makes between Defendant Trump and his supporters have no bearing on any alleged conspiracy between the Defendants. Rather, the Amended Complaint cites obscure and anonymous internet users such as "MrMcGreenGenes," "Buttfart88," "BathouseBarry". Amended Complaint ("Compl.") ¶¶ 59-66. The Amended Complaint attempts to stretch these anonymous comments from the fringe of the internet as a blanket generalization for how Defendant Trump's supporters interpreted his rhetoric in the days and months after the election.

While the Amended Complaint is replete with political context, it pleads nothing more than conclusory allegations that the named Defendants made an agreement to commit an unlawful act in furtherance of a common scheme, which are the necessary elements to prove a civil conspiracy. Instead, the Amended Complaint alleges a federal conspiracy between Defendant Khater and Defendant Trump despite the two never having met, communicated, or interacted in any way, shape, or form.  Julian Khater and his co-defendant, George Tanios, were and are not affiliated with any political organization, civil or otherwise.  They were not members of the Proud Boys, the Oath Keepers, or any other type of insurrectionist group.  In December 2020, Defendant Khater attended a rally centered around a local business on Staten Island which was protesting COVID restrictions.  This event remained completely peaceful from beginning to end. Defendant Khater expected the same would happen in D.C. on January 6, 2021.

But rather than make specific allegations against Defendant Khater, the Amended Complaint focuses on generalizations of "Trump followers" referring to "many of the rioters," "some of Defendant Trump's supporters," or "many people." The Amended Complaint does nothing to connect Defendant Khater and Defendant Trump's actions in furtherance of a "common scheme" other than attempt to associate Defendant Khater with the most radical of political dissent demonstrated on January 6th, something which is factually untrue.

In addition, the Amended Complaint seeks damages for wrongful death against the Defendants despite the Plaintiff's own startling and, of course, *required factual admission* that Officer Sicknick died of natural causes, not the actions of Defendant Khater. Yet, the Plaintiff brings forth a claim of wrongful death knowing this full well, admitting as much, and seeking to hold Defendant Khater responsible for something he clearly did not do as a matter of fact.

The Amended Complaint also fails to allege economic loss by a proper representative of Officer Sicknick. In fact, the Amended Complaint fails to assert that the Plaintiff meets the requirement of D.C. Code § 16-2701(b) that the plaintiff in a wrongful death action be the deceased's spouse, domestic partner, or next of kin.

Trying her best to avoid removal from federal court, while simultaneously appreciating that the federal conspiracy charges against Defendant Khater are fatally flawed, the Plaintiff also alleges that Defendant Khater violated 18 U.S.C. § 1752(a)(2). But 18 U.S.C. § 1752(a)(2) does not recognize a private right of action. Even if they did, Plaintiff has failed to plead facts sufficient to show that Defendant Khater violated these statutes.

The Amended Complaint's deficient allegations of a federal conspiracy and a spurious claim regarding 18 U.S.C. § 1752(a)(2) are the only alleged bases for federal jurisdiction. If the federal claims are dismissed, the Plaintiff's remaining causes of action should be dismissed as well for lack of subject matter jurisdiction. For these reasons, this Court should dismiss the Amended Complaint against Defendant Khater pursuant to Rule 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

On January 5, 2023, Plaintiff Sandra Garza, individually and as the representative of the Estate of Brian Sicknick, filed her Complaint against Defendants President Donald J. Trump, Julian Khater, and George Tanios. ECF No. 1. On May 31, 2023, Plaintiff amended the Complaint against Defendants Trump, Khater, and Tanios, advancing five counts of action against Defendants: (I) Wrongful Death under D.C. Code § 16-2701;  (II) a Survivor's Action under D.C. Code § 12-101; (III) Conspiracy to Violate Civil Rights (Interference with Official Duties) in violation of 42 U.S.C. § 1985(1); (IV) Negligence Per Se in violation of D.C. Code §§

22-1322; and (V) Negligence Per Se in violation of 18 U.S.C. § 1752(a)(2) and (4). *See* Amended Compl. ¶¶ 119-175.

In the Amended Complaint, Plaintiff claims that Defendant Khater sprayed Officer Sicknick in the face with pepper spray on January 6, 2021. Amended Compl. ¶¶ 93, 94. Based on the Amended Complaint, Defendant Khater sprayed Officer Sicknick with pepper spray from approximately eight feet away at around 2:20pm on January 6, 2021. Amended Compl. ¶¶ 93, 94.

Screen grab images inserted into the Amended Complaint depict demonstrators backed behind metal barricades outside of the Capitol Building with an unknown spray being directed at the demonstrators. Amended Compl. ¶ 93. Officer Sicknick temporarily left his post to recover and was able to do so within 15 minutes. Approximately eight hours later, after being engaged in the tireless and honorable defense of the Capitol, Officer Sicknick collapsed and was rushed to a nearby hospital for treatment at 10:00pm that evening. Amended Compl. ¶ 108.

The Amended Complaint omits any details of Officer Sicknick's activities between 2:00pm and 10:00pm when he collapsed and was taken to the hospital. Tragically, at 9:30pm the next day, more than 24 hours after his encounter with Defendant Khater, Officer Sicknick died. Amended Compl. ¶ 108. The Amended Complaint acknowledges that, according to the District of Columbia's Chief Medical Examiner, "Officer Sicknick died of 'natural causes.'" Amended Compl. ¶ 109. The only further support the Amended Complaint offers for its belief that Defendant Khater caused Officer Sicknick's death is its statement that, "[T]he Medical Examiner further stated that 'all that transpired on [January 6] played a role in his condition' that led to his death." Amended Compl. ¶ 109.

As for the conspiracy between Defendant Khater and Defendant Trump, the Amended Complaint states that, "Defendant Trump encouraged, directed, and incited others to confront state and local officials to build public support for Defendant Trump's false claims of election-rigging and fraud. These statements were intended to have the effect, and did have the effect, of communicating strategies of for accomplishing the aims of the illegal conspiracy to other members of the conspiracy, including Defendants Khater and Tanios and other persons who took violent action on January 6, 2021." Amended Compl. ¶ 147.

The Amended Complaint contains numerous references to tweets made by the former President, which the Plaintiff contends incited violence. The Amended Complaint makes no specific allegation that Defendant Khater actually received, let alone read, any of these communications, or understood them to be a call to violence to disrupt the certification of the results of the 2020 Presidential election.

## STATEMENT OF THE LAW

### A.  Standard of Review-Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief may be granted. In evaluating such a motion to dismiss, courts must treat the complaint's factual allegations as true and grant the plaintiff the benefit of all inferences that can be derived from the alleged facts. *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).

To that end, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Therefore, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*,

550 U.S. at 555. Importantly, where the defendant's alleged unlawful conduct has "an obvious alternative explanation," the complaint must allege facts that "plausibly suggest" and are "not merely consistent with" the defendant's liability. *Twombly*, 550 U.S. at 557, 567.

The court need not accept as true legal conclusions couched as factual allegations. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). Neither must the court accept inferences unsupported by the facts set out in the complaint. *Kowal v. MCI Communications Corp*., 16 F.3d 1271, 1276 (D.C. Cir. 1994). In this sense, the plaintiff may not rely on "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" *Twombly*, 550 U.S. at 555.

In ruling on a 12(b)(6) motion, the court may consider the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice. *Equal Employment Opportunity Commission v. St. Francis Xavier Parochial Schoo*l, 117 F.3d 621, 624 (D.C. Cir. 1997).

**B. Standard of Review-Rule 12(b)(1)**

A federal court has subject matter jurisdiction over all cases arising under federal laws, statutes, or the U.S. Constitution. *See* 28 U.S.C. § 1331. A federal court may hear state law claims if they are attached to a federal claim and the state law claims are so closely related to the federal claim as to form part of the same case or controversy. *See* 28 U.S.C. § 1367. However, if a plaintiff's federal law claims are dismissed, any state law claim may be dismissed by the court. *See* 28 U.S.C. § 1367(c)(3). "When federal claims are dismissed before trial…the decision to exercise supplemental jurisdiction over state law claims is a matter of discretion. However, in all but the rarest instance, the court is to decline to do so." *Wenner v. C.G. Bretting Mfg. Co., Inc*., 917 F.Supp. 640, 649 (W.D.Wis.1995) (internal citations omitted). Once the underlying federal claims have been dismissed, case law in the District Court for the District of Columbia weighs

heavily in favor of dismissing state law claims brought under supplemental jurisdiction for "lack of subject-matter jurisdiction". Fed. R. Civ. P. 12(b)(1); *See Elshazli v. District of Columbia,* 415 F.Supp.3d 20, 28-29 (D.D.C.2019) ("Generally, when all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." (internal citations omitted); *see also Jianqing Wu v. Special Counsel, Inc.*, 54 F.Supp.3d 48, 57 (D.D.C.2014).

## C. Elements of Federal Civil Conspiracy

To prevail on a claim under 42 U.S.C. § 1985(1), the Plaintiff must properly plead all the general elements of a civil conspiracy. *Vindman v. Trump*, 2022 U.S. Dist. LEXIS 203547, at *15 (D.D.C. Nov. 8, 2022). The elements of a civil conspiracy are:

1) an agreement between two or more persons;
2) to participate in an unlawful act, or a lawful act in an unlawful manner;
3) an injury caused by an unlawful overt act performed by one of the parties to the agreement;
4) which overt act that was done pursuant to and in furtherance of the common scheme.

*Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).

Agreements or acts in furtherance of an illegal objective must be specifically pleaded, and not cursorily alleged: "Merely alleging that the defendant . . . communicated, without alleging any details of those communications that suggest an unlawful agreement, cannot justify inferring the requisite agreement for a § [1985(1)] conspiracy." *Black Lives Matter D.C. v. Trump*, 2021 WL 2530722, at *12 (D.D.C. June 21, 2021); *see also Graves v. United States*, 961 F. Supp. 314, 321 (D.D.C. 1997) (dismissing a claim where plaintiff merely alleged that his former employer "colluded" with the Department of Education to keep him underemployed, without putting forth "any facts showing the existence or establishment of an agreement").

11

Moreover, a plaintiff's conspiracy allegations must be pled with particularity. *See McCord v. Bailey*, 636 F.2d 606 (D.C. Cir. 1980).

## ARGUMENT

**I.   PLAINTIFF HAS FAILED TO PLEAD FACTS SUFFICIENT TO CONCLUDE THAT DEFENDANT KHATER ENTERED INTO A CONSPIRACY TO VIOLATE CIVIL RIGHTS (INTERFERENCE WITH OFFICIAL DUTIES) IN VIOLATION OF 42 U.S.C. § 1985(1).**

### a.   *Plaintiff has not pleaded facts necessary to establish a civil conspiracy.*

A violation of 42 U.S.C. § 1985(1) occurs when two or more persons conspire to:

"prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties"

42 U.S.C. § 1985(1).

To prevail on a claim under § 1985(1), the plaintiff must properly plead all the general elements of a civil conspiracy. *Vindman*, 2022 U.S. Dist. LEXIS 203547, at *15.  Accordingly, the elements of a civil conspiracy are:

1) "an agreement between two or more persons;
2) to participate in an unlawful act, or a lawful act in an unlawful manner;
3) an injury caused by an unlawful overt act performed by one of the parties to the agreement;
4) which overt act that was done pursuant to and in furtherance of the common scheme."

*Welch*, 705 F.2d at 477.

The Plaintiff's Amended Complaint goes to great lengths to detail Defendant Trump's bombastic, baseless rhetoric, both leading up to and during the events of January 6, 2021. The Amended Complaint focuses generally on how "many" Trump supporters interpreted such

comments to be an incitement to act violently and prevent the certification of the 2020 U.S. Presidential election. In doing so, the Plaintiff includes references to anonymous internet postings on a variety of fringe websites. Amended Compl. ¶¶ 58-66. Specifically, the Amended Complaint references internet posts from accounts like "MrMcGreenGenes" who wrote, "Well, shit. We've got marching orders bois." The Amended Complaint goes on to state, "Buttfart88 similarly understood Defendant Trump's tweet as 'marching orders.'" Amended Compl. ¶ 61.

The Amended Complaint contains numerous other asides to the mindset of other anonymous internet users with no relevant connection to this matter or to Defendant Khater. For example, the Amended Complaint references that, "NamelessKing understood Defendant Trump's tweet as a call to bring weapons to D.C." Amended Compl. ¶ 61. The sources cultivated by the Plaintiff include internet postings from accounts such as:

1. MrMcGreenGenes;
2. Buttfart88;
3. NamelessKing;
4. EvilGuy;
5. PepeVsCommies;
6. SWORDofLIBERTY;
7. BathouseBarry;
8. Loveshock

Accompanied by screen grab images, the Plaintiff includes at least eleven different references to these types of valueless anecdotes concerning the mindset of anonymous internet users that have no bearing on the conspiracy claim against Defendants Tanios and Khater. Amended Compl. ¶¶ 60-66. Nowhere in the Amended Complaint does Plaintiff allege that any of these accounts were operated by the Defendants. This is because there is no evidence, and because factually it is untrue.

This volume of unnecessary and irrelevant information cannot hide Plaintiff's failure to allege facts demonstrating that Defendant Khater engaged in a conspiracy in violation of 42

U.S.C. § 1985(1) with Defendant Trump and/or Defendant Tanios. Specifically, the Plaintiff has not alleged the elements of a conspiracy required to sustain this cause of action.

First, the Plaintiff has failed to allege the existence of an agreement between the parties. The Amended Complaint fails to allege that there was direct or indirect communication between Defendant Trump and Defendants Khater or Tanios. As for the tweets made by Defendant Trump, Plaintiff has alleged no facts which would indicate that Defendants Khater or Tanios interpreted them as a call to violence. Plaintiff has not and cannot make any claim that Defendants Khater or Tanios had any direct or indirect communications concerning any agreement to conspire to commit any act whatsoever.

Tellingly, the Amended Complaint contains no specifics regarding whether Defendant Khater was informed of Defendant Trump's incendiary remarks, or whether Defendant Khater understood such remarks in the same manner as some of Defendant Trump's most radical supporters, as alleged in the Amended Complaint. Moreover, the Amended Complaint is unclear whether Defendant Khater was present for Defendant Trump's in person remarks on January 6, 2021, or if Defendant Khater was merely present outside the grounds of the Capitol during the most contentious moments of the protest. In fact, Defendants Khater and Tanios never entered the United States Capitol on January 6, 2021, leaving shortly after the pepper spray incident.

Under Plaintiff's logic, every person who listened to Defendant Trump's speech on January 6, 2021, would have engaged in a conspiracy with Defendant Trump just by virtue of being present after Defendant Trump held his politically charged rally. Without any factual support, the Amended Complaint attempts to impute the mindset and intentions of hundreds of nameless rioters to Defendant Khater. The Plaintiff has failed to allege specific facts to support her conclusory statements.

14

Plaintiff asserts that Defendant Khater "planned violence at the U.S. Capitol in advance" but does not provide a shred of evidence for this conclusory assertion. Amended Compl. ¶ 2. Plaintiff contends that Defendants Khater and Tanios purchased the pepper spray before Defendant Trump held his rally on January 6, 2021. Amended Compl. ¶ 13.  In fact, Defendant Khater did not buy, in tandem or alone, any pepper spray.  The Defendants only agreed to attend the rally on the Ellipse late the night before, arriving in Washington and checking into a local hotel in Crystal City, Virginia.  They did not meet with anyone else; they did not plan for any type of violence against any other person, and they certainly did not plan to overthrow the government. Additionally, Defendant Khater did not carry or possess on his person or belongings any type of spray.

Similarly, the Amended Complaint fails to establish an agreement between Defendant Khater and Defendant Tanios.  Unlike the defendants in *Smith v. Trump*, 2023 U.S. Dist. LEXIS 13602, at *19 (D.D.C. Jan. 26, 2023), Defendants Khater and Tanios are not alleged to be members of a common group. Instead, the extent of the Plaintiff's allegations are that the two traveled together and that Tanios gave Defendant Khater pepper spray shortly before it was deployed. These facts fall far short of establishing a civil conspiracy between the two Defendants.  And there is absolutely no evidence whatsoever that Defendants Tanios or Khater deployed any type of "bear spray" irritant. Defendant Khater actually used pepper spray, a relatively common item which is widely used to stop an unwanted advancement.[1]

---

[1] According to the January 6th Senate Report, the Capitol Police used pepper spray on January 6, 2021 (see https://www.rules.senate.gov/imo/media/doc/Jan%206%20HSGAC%20Rules%20Report.pdf, page 24). The Report states that the Capitol Police used ""the MK-9, which is just a more powerful OC spray, as well as the MK-46, another type of OC spray" (page 59, footnote 378).  At Defendant Khater's sentencing, it was established that he did not use bear spray, but pepper spray (*see* Transcript of Sentencing Before the Honorable Thomas F. Hogan, United States District Court Senior Judge, page 77, lines 14-24).

For these reasons, the Plaintiff has not pled any facts necessary to establish that Defendant Khater engaged in a conspiracy to violate civil rights (interference with official duties) in violation of 42 U.S.C. § 1985(1). Therefore, Plaintiff's claim against Defendant Khater as to Count III should be dismissed.

## II.   18 U.S.C. § 1752(a)(2) DOES NOT RECOGNIZE A PRIVATE RIGHT OF ACTION, AND PLAINTIFF HAS FAILED TO PLEAD FACTS SUFFICIENT TO CONCLUDE THAT DEFENDANT KHATER VIOLATED 18 U.S.C. § 1752(a)(2).

### a.   18 U.S.C. § 1752(a)(2) does not recognize a private right of action.

A violation of 18 U.S.C. § 1752(a)(2) occurs when any person:

> knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

18 U.S.C. § 1752(a)(2).

When considering the meaning of a statute, D.C. Circuit courts begin, naturally, with the text itself. *Eagle Pharmaceuticals, Inc. v. Azar*, 952 F.3d 323, 330, 331 (D.C. Cir. 2020); *see also City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018); *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1088 (D.C. Cir. 1996). Courts "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Janko v. Gates*, 741 F.3d 136, 139–40 (D.C. Cir. 2014), *quoting BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (plurality opinion of Rehnquist, C.J.) (alteration in the original).

Nowhere in the text of 18 U.S.C. § 1752(a)(2), or any portion of 18 U.S.C. § 1752, is there any hint that private parties possess a right of action under the statute. A clear reading of the text, therefore, is that no such right of action is afforded to private parties. *Cf.* 42 U.S.C. § 1985, which explicitly carves out a right of private action: "the party so injured or deprived may

16

have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." Moreover, all cases which defense counsel has been able to locate concerning violations of 18 U.S.C. § 1752(a)(2) arising out of the events on January 6, 2021, have been brought by the federal government. *See United States v. Jabr,* 4 F.4th 97 (D.C. Ct. App. 2021); *United States v. Rivera,* 607 F.Supp.3d 1, (D.C. Cir. 2022); *United States v. McHugh,* 583 F.Supp.3d 1 (D.C. Cir. 2022); *United States v. Grider,* 617 F.Supp.3d 42 (D.C. Cir. 2022); *United States v. Griffin,* 549 F.Supp.3d 49 (D.C. Cir. 2022); *United States v. Puma,* 596 F.Supp.3d 90 (D.C. Cir. 2022); *United States v. Robertson,* 610 F.Supp.3d 229 (D.C. Cir. 2022); *United States v. Whitton,* 534 F.Supp.3d 32 (D.C. Cir. 2021); *United States v. Sabol*, 534 F.Supp.3d 58 (D.C. Cir. 2021); *United States v. Caldwell,* 540 F.Supp.3d 66 (D.C. Cir. 2021). Therefore, the plain text of the statute, and the weight of case law, both strongly suggest that Plaintiff does not have a right to bring an action against Defendant for a violation of 18 U.S.C. § 1752(a)(2).

> **b.  *Plaintiff has not pled facts sufficient to conclude that Defendant violated 18 U.S.C. § 1752(a)(2).***

Even if this Court were to determine that Plaintiff possesses a private right to bring an action against Defendant Khater for a violation of 18 U.S.C. § 1752(a)(2), Plaintiff has still not pled facts sufficient to conclude that Defendant violated this title.

Nowhere in the Plaintiff's Amended Complaint does Plaintiff establish that Defendant Khater entered any restricted building or grounds. Plaintiff asserts that the "United States Capitol and its Lower West Terrace were restricted buildings or grounds on January 6, 2021". Amended Compl. ¶ 171. Assuming this is true, Defendant Khater was not within restricted buildings and grounds. Plaintiff's Amended Complaint asserts that Defendant Khater sprayed Officer Sicknick while outside the Lower West Terrace. Amended Compl. ¶ 90, 93, 94. The Plaintiff's Amended

17

Complaint does claim that "[a]t approximately 2:09 p.m., Defendants Khater and Tanios walked *on restricted grounds* and proceeded from the south grassy area of the Capitol toward the Lower West Terrace." Amended Compl. ¶ 89 (emphasis added). But nowhere does Plaintiff enumerate what these so-called restricted grounds are, or where they were. This is a legal conclusion disguised as a well-pleaded fact. *See Twombly,* 550 U.S. at 555-57.

Assuming that the Court were to find that the Defendant did enter a restricted building or grounds, Plaintiff has still not pled facts sufficient to conclude that Defendant knew those buildings or grounds to be restricted. 18 U.S.C. § 1752(a)(2). Plaintiff has also not pled facts sufficient to conclude that Defendant Khater entered these buildings or grounds "with intent to impede or disrupt the orderly conduct of Government business or official function". 18 U.S.C. § 1752(a)(2). Finally, Plaintiff has also pled no facts to support the determination that Defendant Khater's conduct that day did, in fact, impede or disrupt "the orderly conduct of Government business or official functions". 18 U.S.C. § 1752(a)(2). The Plaintiff's assertion that Defendant Khater's alleged conduct occurred "during the certification of Electoral College votes while Vice President Mike Pence was visiting the Capitol" is insufficient to show that Defendant Khater intended to disrupt those proceedings. Amended Compl. ¶ 171.

For these reasons, Plaintiff's claim against Defendant for a violation of 18 U.S.C. § 1752(a)(2) should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## III.   PLAINTIFF HAS FAILED TO PLEAD FACTS NECESSARY TO SUSTAIN AN ACTION FOR WRONGFUL DEATH AND NEGLIGENCE PER SE.

### a.   *Plaintiff fails to state a claim that Defendant Khater caused Officer Sicknick's death.*

A violation of D.C. Code § 16-2701 occurs "[w]hen, by an injury done or happening within the limits of the District, the death of a person is caused by the wrongful act, neglect, or

default of a person or corporation." D.C. Code § 16-2701. To state a claim upon which relief may

be granted in a negligence action, Plaintiff must allege causation and damages. *McNeil*

*Pharmaceutical v. Hawkins,* 686 A.2d 567, 578 (D.C. Ct. App., 1996). The causation requirement

attaches to actions brought under a theory of negligence per se. *See id.* Causation can be found so

long as there is "some reasonable connection" between a defendant's actions and the damage

suffered by the plaintiff. *Ben-Rafael v. Islamic Republic of Iran,* 540 F.Supp.2d 39, 54 (D.D.C.

2008).

Plaintiff alleges that Officer Sicknick was on duty at the U.S. Capitol on January 6, 2021.

Amended Compl. ¶¶ 124, 128. Plaintiff also alleges that in the course of his duties, Officer

Sicknick encountered Defendant Khater, who sprayed Officer Sicknick in the face with pepper

spray. Amended Compl. ¶¶ 93, 94, 128, 130. While Officer Sicknick temporarily left his post due

to being peppered sprayed by Defendant Khater, he later resumed in his duties and worked in

tandem defending the Capitol alongside his brave fellow officers of the United States Capitol

Police and the Metropolitan Police Department.  Approximately eight hours after Officer

Sicknick's encounter with Defendant Khater, Officer Sicknick collapsed and was rushed to the

hospital. Amended Compl. ¶ 108. The next day, Officer Sicknick tragically died of natural

causes. *Id.*

Plaintiff has not pled facts necessary to establish that Defendant Khater caused Officer

Sicknick's death. The Plaintiff concedes in her Amended Complaint that according to the

"District of Columbia's Chief Medical Examiner" Officer Sicknick died of "'natural causes'—

specifically, a series of strokes." Amended Compl. ¶ 109. Plaintiff has not satisfactorily alleged a

causal link between these strokes –which by the Plaintiff's own words, occurred naturally –and

Defendant Khater's actions. *See id.*  This Court is not required to accept the Plaintiff's

unsupported allegation that Defendant Khater caused Officer Sicknick's death, which is inconsistent with the facts presented in the Plaintiff's Amended Complaint, including:

1) The medical examiner's determination that Officer Sicknick died of natural causes,

2) The medical examiner's determination that Officer Sicknick's specific cause of death was a series of strokes, and,

3) The eight-hour period between when Officer Sicknick was sprayed and when he collapsed.

Similarly, in Counts II, IV, and V, Plaintiff brings a survivor's action against Defendant under D.C. Code § 12-101 for "the Wrongful Death of Officer Brian Sicknick", alleges that Defendant "violated D.C. Code § 22-1322 by actively participating in a riot", and further alleges that Defendant "violated [18 U.S.C. § 1752(a)(4)], by, among other things, participating in a riot at the U.S. Capitol and the assault upon Officer Sicknick." Amended Compl. ¶¶ 139, 160, 171. Plaintiff again alleges that Defendant Khater caused harm to Officer Sicknick in cursory fashion: "the Defendants actions [sic] directly and negligently caused the Wrongful Death of Officer Brian Sicknick", "Officer Sicknick was directly harmed by the actions of Defendants Khater and Tanios and others and died as a result of that harm." Amended Compl. ¶¶ 139, 167; *see also* Amended Compl. 173-175. But once more, Plaintiff does not support these conclusory legal assertions with evidence sufficient to survive a motion to dismiss. *See Twombly,* 550 U.S. at 555-57. The only evidence which Plaintiff provides is the reported offhand comment of the medical examiner, who stated that "all that transpired played a role in his [Officer Sicknick's] condition." Amended Compl. ¶ 109. But as discussed above, this comment standing alone cannot form a sufficient factual basis for concluding that Defendant's actions caused Officer Sicknick's death,

especially considering that the medical examiner determined the death was the result of natural causes. *Twombly*, 550 U.S. at 555-57; Amended Compl. ¶ 109.

Without a sufficient factual basis to allege that Defendant caused Officer Sicknick's death, Plaintiff's causes of action for Counts II, IV, and V fail, for the same reasons as Count I fails. Plaintiff has not alleged any other harm, or alleged any other damages, under these Counts besides Officer Sicknick's death, and Plaintiff has not pled facts sufficient to conclude that Defendant Khater caused Officer Sicknick's death. *See McNeil Pharmaceutical,* 686 A.2d at 578; *See generally* Amended Compl. ¶¶ 93, 94, 108, 109, 138-142, 161-168, 173-175. For these reasons, Plaintiff's survivorship action under D.C. Code § 12-101 and claims against Defendant for negligence per se through violation of 18 U.S.C. § 1752(a)(4) and D.C. Code § 22-1322 should all be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### b.  *Plaintiff has not established that she is a proper representative or suffered economic damages under D.C. Code § 16-2701.*

D.C. Code § 16-2701 establishes statutory limitations on who may recover damages in a wrongful death lawsuit. Specifically, the statute requires that the damages "shall be assessed with reference to the injury resulting from the act, neglect, or default causing the death, to the spouse or domestic partner and the next of kin of the deceased person[.]" D.C. Code § 16-2701.

The Amended Complaint fails to plead facts sufficient to conclude that the Plaintiff is the spouse, domestic partner or next of kin of Officer Sicknick. In fact, as cited in Defendant Trump's Motion to Dismiss, the Court may take judicial notice that the Plaintiff has publicly admitted to not being married to Officer Sicknick and separating six months before his death.[2]

---

[2] Eric Flack, Stephanie Wilson, and Jordan Fischer, 'I will always love you forever, Brian' | Officer Sicknick's partner recalls family's agonizing goodbye, WUSA9 (Nov. 9, 2021, 7:00 AM), https://www.wusa9.com/article/news/national/capitol-riots/brian-sicknick-sandragarza-girlfriend-final-moments-capitol-riot-january-6-donald-trump/65-6f8cafc4-

Although Plaintiff may be the executor of Officer Sicknick's estate, such a relationship does not fall within the specifically enumerated categories of the statute. *See* D.C. Code § 16-2701; Amended Compl. ¶¶ 8, 133.  Moreover, any attempt by the Plaintiff to bring such claims in her individual capacity equally fails under D.C. Code § 16-2702, which states, "An action pursuant to this chapter shall be brought by and in the name of the personal representative of the deceased person."

Next, the Plaintiff has not alleged proper injury under D.C. Code §16-2701.  More specifically, D.C.'s wrongful death statute is "designed to provide a remedy whereby close relatives of the deceased who might have expected maintenance or assistance from the deceased had he lived, may recover compensation from the wrongdoer commensurate with the loss sustained." *See Semler v. Psychiatric Institute of Washington, D.C.,* 188 U.S. App. D.C. 41, 43-44, (D.C. Cir. 1978). These economic damages can be better understood as the loss of economic support, including future expected financial support, suffered by the decedent's spouse, domestic partner, or next of kin.[3]

Here, the Amended Complaint fails to establish that a spouse, domestic partner, or next of kin sustained economic losses as the result of the wrongful death or that any party was receiving or expected to receive the kind of financial support or services contemplated in the statute. The Plaintiff does assert that she "has suffered financial loss from Officer Sicknick's death in the form of lost financial support" and has "suffered further financial loss from Officer Sicknick's death in the form of the reasonably calculable value of services that Officer Sicknick would have provided to Ms. Garza in the form of care, guidance, personal advice, and other pecuniary

---

293e-4f60-a915-1c9798d11863.

[3] This also includes the value of services the decedent would have provided, including loss of care, education, training, guidance, and personal advice.  *See Doe v. Blinker*, 492 A.2d 857, 863 (D.C. 1985).

benefits". Amended Compl. ¶¶ 134-135. But these are not well-pleaded facts, they are legal conclusions formulated as facts. This Court is not required to accept them. *See Twombly,* 550 U.S. at 555-57.

## IV.   BECAUSE NO FEDERAL QUESTION EXISTS, IF PLAINTIFF'S ALLEGATIONS IN COUNTS III AND V ARE DISMISSED, THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR LACK OF SUBJECT-MATTER JURISDICTION.

When federal claims are dismissed before trial, "the decision to exercise supplemental jurisdiction over state law claims is a matter of discretion. However, in all but the rarest instance, the court is to decline to do so." *Wenner*, 917 F.Supp. at 649. The District Court for the District of Columbia has joined its sister districts in applying this principle. *See Elshazli,* 415 F.Supp.3d at 28-29; *Jianqing Wu,* 54 F.Supp.3d at 57.

Plaintiff's claims in Counts I, II, and IV of her Amended Complaint do not raise issues of federal law. *See* 28 U.S.C. § 1331; *See generally* Amended Compl. ¶¶ 118-137, 138-142, 160-168. Instead, Plaintiff alleges that Defendant wrongfully caused Officer Sicknick's death and "violated D.C. Code § 22-1322 by actively participating in a riot". Amended Compl. ¶¶ 118-137, 138-142, 160-168. These allegations concern District tort law claims. Accordingly, if the Court dismisses Plaintiff's federal law claims outlined in Counts III and V, Plaintiff's claims in Counts I, II, and IV should also be dismissed.

Generally, when all federal-law claims are eliminated before trial, the balance of factors should be considered under the pendent jurisdiction doctrine. These factors include judicial economy, convenience, fairness, and comity. *Jianqing Wu,* 54 F.Supp.3d at 57.

Here, each factor supports declining to exercise jurisdiction over the remaining state-law claims. Judicial economy militates in favor of dismissal, because the case "has only been pending here for a short time and the parties have invested no resources in discovery." *Elishazli,*

23

415 F.Supp.3d at 29.  Furthermore, fairness and convenience are not adversely impacted if the Court determines that the state-law claims should be dismissed. Plaintiff will not be prejudiced if her claim is dismissed, as the statute of limitations for any claim over which this Court could exercise supplemental jurisdiction is tolled while the case has been pending and for thirty days after the dismissal of the claim. Plaintiff will therefore still be able to bring her D.C. claims in D.C. court. *See* 28 U.S.C. § 1367(d). Additionally, because the case has not progressed past Defendant's Motion to Dismiss, "and the Court has developed no particular familiarity with the issues presented" there is no "undue inconvenience or unfairness to the litigants that would result from" dismissing the claim. *Jianqing Wu*, 54 F.Supp.3d at 57. Finally, Plaintiff's negligence claims raise issues of D.C. law, and so this case "presents a local issue that would be better resolved by local jurists." *Elishazli*, 415 F.Supp.3d at 29.

For these reasons, Plaintiff's claims against Defendant in Counts I, II, and IV for wrongful death, a survivor's action, and actively participating in a riot should be dismissed for "lack of subject-matter jurisdiction". Fed. R. Civ. P. 12(b)(1).

## **CONCLUSION**

For the reasons stated above, Plaintiff has failed to state a claim against Defendant over which this Court should exercise jurisdiction, or upon which relief can be granted, in her Amended Complaint. Therefore, the Court should dismiss the Amended Complaint.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/*David P. Sheldon*
David P. Sheldon (DC Bar # 446039)
Law Offices of David P. Sheldon, P.L.L.C.
100 M Street, S.E., Suite 600
Washington, DC  20003
Tel: 202.546.9575
Fax: 202.546.0135
*Attorney for Defendant*

</div>

**CERTIFICATE OF SERVICE**

I, undersigned, hereby certify that a true and correct copy of the foregoing was filed

electronically with the Court's ECF electronic filing system and delivered electronically to

counsel of record for the Plaintiff, listed below, this 27th day of June 2023:

Mark S. Zaid
mark@markzaid.com

/s/*David P. Sheldon*
David P. Sheldon