# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANDRA GARZA, as<br>the personal representative<br>of THE ESTATE OF BRIAN SICKNICK<br><br>*Plaintiff,*<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:23-cv-00038 (APM)<br>)<br>)<br>) |

## PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN REPLY TO DEFENDANT TRUMP'S AND TANIOS'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND DEFENDANT <u>KHATER'S MOTION TO DISMISS</u>

On May 31, 2023, Plaintiff Sandra Garza, Executor for the Estate of deceased Capitol

Police Officer Brian Sicknick, filed a Motion for Leave to File a First Amended Complaint (ECF

35, "Motion for Leave").  Thereafter, Defendants Tanios and Trump filed their oppositions to

that motion (ECF 37 and ECF 39, respectively "Tanios Response" and "Trump Response").  On

June 27, 2023, Defendant Khater filed a Motion to Dismiss the Amended Complaint (ECF 40-1).

Plaintiff Garza, through undersigned counsel, offers this omnibus reply, addressing each

Defendants' responses and motions.

In short, the Amended Complaint does not prejudice Defendant Trump, as the absolute

immunity claims he advanced in his Motion to Dismiss (ECF 24-1, "Trump Motion to Dismiss")

would—if correct as a matter of law, which Plaintiff disputes—apply with equal force to both the

original and Amended Complaints.  Thus, any burden imposed by amending the Complaint is

minimal as Defendant Trump is free to adopt the same arguments from his earlier Motion to Dismiss to the First Amended Complaint.

Nor does Defendant Tanios present any valid reason for denying the Motion for Leave to File the First Amended Complaint.  First, Defendant Tanios's objection that Plaintiff "failed to comply with the Local Rule LCvR7(a) requirement that [she] include a Statement of Points and Authorities" is, respectfully, a misreading of that rule.  Second, Plaintiff's counsel *did* ask if Defendant Tanios consented to the filing but was unable to share an early draft of the Motion for Leave or the First Amended Complaint due to the press of time.  Nonetheless, although no prejudice can be or has been cited, Plaintiff apologizes for failing to meet and confer as to the Motion for Leave to File an Amended Complaint.  Third, the Plaintiff's Motion for leave to file the First Amended Complaint would *not* be futile, as the claims against Defendant Tanios are legally cognizable.

Finally, Defendant Khater's Motion to Dismiss should be denied.  Plaintiff Garza's First Amended Complaint has stated claims for which relief can be granted: she has adequately pled a conspiracy, survivorship, and wrongful death charge; she is *not* advancing a private right of action for any criminal statute; and this Court has, and should retain, jurisdiction.

Respectfully, this Court should grant the Plaintiff's Motion for Leave and order that the First Amended Complaint be the active Complaint in this matter.  And this Court should thereafter deny Defendant Khater's Motion to Dismiss.

## I.     Defendant Trump is not unduly burdened by the timely filing of the First Amended Complaint.

As stated in the Motion for Leave, that motion was brought under Fed. R. Civ. P. 15 (a)(1)(B) and "in the alternative" Fed. R. Civ. P. 15(a)(2).  Motion for Leave, ECF 35 at 2; s*ee also Savignac v. Jones Day*, 341 F.R.D. 120, 122 (D.D.C. 2022) ("[Rule 15], accordingly, gives

a plaintiff seeking to amend her complaint two options.").  To the extent Defendant Trump is correct about the timing provisions in Rule 15, this Court may still grant the Motion for Leave under Rule 15(a)(2).

Defendant Trump's prior Motion to Dismiss is easily adopted to the Amended Complaint.  He has previously argued an "absolute immunity" defense applies to his actions on or around January 6, 2021.  Therefore, Defendant Trump's previous Motion to Dismiss already addresses the substance of Plaintiff's claims against him, as described below, and he is not prejudiced by Plaintiff's slight amendments.

      **a.  Whether this Court grants leave to amend under Fed. R. Civ. P. 15(a)(1)(B) or 15(a)(2), Defendant Trump's prior arguments can—where applicable—be reargued without undue "tribulation or expense."**

In his Motion to Dismiss the original complaint, Defendant Trump argued that Plaintiff's claims against him "are barred by absolute immunity" and that "Courts have long held that presidents are absolutely immune from civil liability for actions within the outer perimeter of their official duties […]."  Trump Motion to Dismiss, ECF 24-1 at 18.  The first half of that brief undertakes to argue that Defendant Trump's actions on January 6, 2021, were within the "traditional scope of a president's duties" and were a proper use of the "presidential bully pulpit," *id.* at 19, or otherwise protected by the First Amendment.  *Id.* at 21- 31.

Defendant Trump's Response to the Motion for Leave advances no argument why absolute immunity or First Amendment protection—if applicable to the initial Complaint—would not also apply with equal force against the claims in the Amended Complaint.

Nonetheless, to the extent necessary, Plaintiff adopts her own arguments from her Response to Defendant Trump's Motion to Dismiss, ECF 25, and reiterates that Defendant Trump's claim of absolute immunity has already been rejected by this Court.  *See Thompson v.*

*Trump,* 590 F.Supp. 3d 46, 74 (D.D.C. 2022) ("After careful consideration, the court concludes that, on the facts alleged, absolute immunity does not shield President Trump from suit…"); *see also E. Jean Carrol v. Trump*, No. 1:20-cv-07311-LAK (S.D. NY June 29, 2023) (District Court in New York rejecting identical immunity claims and citing this Court with approval). Additionally, this Court has already concluded the First Amendment does *not* bar claims against him for the events of January 6, 2021.  *Id*. at 118 ("Dismissal of Plaintiff's claims on First Amendment grounds is not warranted.").

> **b.  The amended claims against Defendant Trump are already substantively answered by his prior arguments in his Motion to Dismiss and easily adopted to the Amended Complaint.**

The Amended Complaint does not alter the complexity of this case, nor call for substantial additional briefing on novel legal issues.  The differences between the original claims, ECF 1, and the Amended Complaint, ECF 35-3, as they relate to Defendant Trump, are minor and are summarized as follows:

> **i.  Count 1: Wrongful Death; D.C. Code § 16-2701**

In addressing Plaintiff's claim for Wrongful Death, Defendant Trump moved to dismiss, arguing that "Plaintiff has failed to allege that a spouse, domestic partner, or next of kin" existed that may recover under the wrongful death statute, D.C. Code § 16-2701.  Trump Motion to Dismiss, ECF 24-1 at 36.  The Amended Complaint simply clarifies that Plaintiff is "the personal representative for the Estate of Brian Sicknick;" and that she is "named in his last will and testament as his domestic partner and as executor of the will."  Amended Complaint, ECF 35-3 at 3.  The Amended Complaint also better details the nature of the financial loss resulting from Officer Sicknick's wrongful death.  *Id*. at 39, ¶¶ 133-135.

4

### ii.   Count 2: Survivor's Action; D.C. Code § 12-101

The addition of a Survivor's Action follows from the clarification of Plaintiff's status as the executor, domestic partner, and personal representative of the Estate.  The Survivor's Act claim contains no materially different elements—it is distinct from Wrongful Death only in the type of recovery available to Plaintiff.  "Remedies provided by the Survival Act and the Wrongful Death Act are not mutually exclusive and may be pursued simultaneously." *Strother v. District of Columbia*, 372 A.2d 1291, 1296 (D.C. 1977).  To the same extent Defendant Trump has moved to dismiss the Wrongful Death count, his argument there can be adopted to this count as well, should he choose to contest it.

### iii.   Count 3: Conspiracy to Violate Civil Rights (Interference with Official Duties); 42 U.S.C. § 1985(1)

The Amended Complaint adds, at paragraphs 155 – 159, language responsive to Defendant Trump's earlier contention that Plaintiff has failed to state a claim for conspiracy because "Members of Congress and the Vice President are not [o]fficers [p]ursuant to § 1985(1)."  Trump Motion to Dismiss, ECF 24-1 at 33.  As stated in the original complaint, Officer Sicknick is a "party so injured or deprived" by a conspiracy to interfere with Congress's official duties.  Initial Complaint, ECF 1 at 41, ¶146.  The additional, new language, merely clarifies that Officer Sicknick, *himself*, was conducting a lawful duty as a duly appointed Capitol Police Officer on January 6, 2021, and is therefore of the class of persons *directly* protected by 42 U.S.C. § 1985 (1).

*** 

These minor changes to the counts against Defendant Trump add no new, non-obvious facts.  Further, the Amended Complaint actually removes a count against Defendant Trump, which Plaintiff agrees is time-barred.  Defendant Trump's prior Motion to Dismiss is easily

adopted should he wish to file a new Motion to Dismiss the Amended Complaint.[1]  Therefore, should this Court grant Plaintiff's Motion for Leave to Amend, under either Fed. R. Civ. P. 15(a)(1)(B) *or* 15(a)(2), Defendant Trump will suffer no prejudice.

> **II.      This Court should reject Defendant Tanios's arguments against the Motion for Leave to Amend.**

"Courts routinely permit (under Rule 15(a)(2)) plaintiffs to assert alternative legal theories based on the same facts giving rise to the complaint." *City of Dover v. United States E.P.A.* 40 F. Supp. 3d 1, 6 (D.D.C. 2013) (parenthetical in original).  Defendant Tanios, however, argues that this Court should deny the Motion for Leave because it did not cite sufficient authority; that Plaintiff did not adequately confer with opposing counsel before filing the Motion; and that amendment would be futile.  Respectfully, these are not sufficient grounds to deny Plaintiff's motion.

> **a.      Plaintiff provided a statement of the specific points of law and authority in support of her Motion for Leave to Amend as required by the Local Rules.**

Defendant Tanios relies upon Local Rule LCvR7(a) to argue that Plaintiff's Motion for Leave to Amend should be denied because it "contains neither a statement of specific points of law and authority, nor a concise statement of facts."  Tanios Response, ECF 37-1 at 9.  Respectfully, this is a misreading of that rule—it is the Motion for Leave *itself* which must "include or be accompanied by a statement of the specific points of law and authority that support the motion, including where appropriate a concise statement of facts."  D.D.C R.

---

[1] Defendant Trump also asks this Court to stay all proceedings until an appellate court adjudicates his immunity claims in other cases arising from his actions relating to January 6, 2021.  ECF 39 at 3-4.  Plaintiff does not believe a stay is necessary or appropriate.

LCvR7(a).  Plaintiff's Motion for Leave to Amend is compliant with that rule.  The Motion cites

to the Federal Rules of Civil Procedure through which Plaintiff seeks leave to amend,

15(a)(1)(B) and, in the alternative, 15(a)(2).  And the Motion for Leave cites to ample case law

addressing "Rule 15's mandate that leave is to be freely given when justice so requires."  Motion

for Leave, ECF 35 at 2.  Further, Plaintiff explained the facts upon which the Motion for Leave

should be granted: that "Plaintiff's modifications to the preexisting counts merely clarify

information already alleged or obviously implied in the initial Complaint;" that the "First

Amended Complaint actually *eliminates* two counts the Plaintiff concedes are time-barred;" and

that "the newly added counts simply expand upon allegations previously made and introduce no

new facts."  *Id*. at 3 (emphasis in original).

     Plaintiff's Motion for Leave is compliant with the Local Rules' specific guidance as to

motions to amend pleadings.  *See* D.D.C. LCvR7(i), "Motions to Amend Pleadings" ("A motion

for leave to file an amended pleading shall be accompanied by an original of the proposed

pleading as amended.").  Plaintiff also included the following attachments: a courtesy copy of the

original complaint (ECF 35-1); a "redline" version showing the differences between the original

Complaint and the First Amended Complaint (ECF 35-2); a "clean" copy of the First Amended

Complaint (ECF 35-3); and a proposed order (ECF 35-4).

     Therefore, Plaintiff's filing is compliant with the Local Rules.

### b.  Plaintiff asked the Defendants if they consented to the filing of an Amended Complaint.

     Defendant Tanios asserts this Court should deny Plaintiff's Motion for Leave to Amend

because the undersigned attorneys did not adequately meet and confer to discuss that Motion.

No prejudice has been incurred by Defendant Tanios as he has been afforded every opportunity here to substantively challenge the filing.

However, Counsel for the Plaintiff acknowledges they should have made a timelier approach to discuss the merits of their Motion for Leave to Amend and apologizes for the oversight.  Counsel resolves to meet and confer on all non-dispositive motions moving forward and humbly moves that this Court forgive the error. *See Niedermeier v. Off. of Baucus,* 153 F. Supp. 2d 23 (D.D.C. 2001) (forgiving counsel's failure to meet and confer, adding, "Given the general judicial preference for resolving motions on their merits rather than dismissing them on technicalities, …, and the desire to avoid prejudicing litigants for their counsel's errors, the Court will consider plaintiff's Motion").

### c.   Neither the old nor the new claims in the First Amended Complaint are futile.

Defendant Tanios further argues that this Court should deny leave to amend because, he contends, Plaintiff's new claims and amendments are futile.  Respectfully, he is incorrect.

### i.   The amended Wrongful Death claim is well pled.

Plaintiff properly amended her complaint to identify herself as the personal representative for the Estate of Brian Sicknick.  First Amended Complaint, ECF 35-3 at 3.  Thus, Plaintiff's assertion that she is the authorized personal representative for the deceased, Officer Sicknick, is sufficient as a matter of fact and law to defeat Mr. Tanios's Response at this stage of the proceedings.  The claim of wrongful death thus satisfies D.C. Code §16-2702 which states "An action pursuant to this chapter shall be brought by and in the name of the personal representative of the deceased person, and within 2 years after the death of the person injured."  The term "personal representative" is limited to officially appointed executors and administrators.

*Saunders v. Air Fla., Inc.*, 558 F. Supp. 1233, 1235 (D.D.C. 1983), *quoting Strother v. District of Columbia*, 372 A.2d 1291 (D.C. 1977).

Although at this stage this issue is settled by the requirement that the Court accept the Complaint's facts as true, documentation exists reflecting that Ms. Garza was lawfully appointed as the personal representative of Officer Sicknick's estate, and was provided as Exhibit 1 in response to Defendant Trump's Motion to Dismiss.  *See* Certificate of Qualification, ECF 25-1 (Clerk of the Circuit Court of Fairfax County, Virginia certifying that Sandra Garza is qualified as the Executor for the estate of Brian Sicknick).

But, to help settle this issue once and for all, Plaintiff attaches to this filing Exhibit 1, "The Last Will and Testament of Brian Sicknick," which, on page 4, names Ms. Garza as "[his] domestic partner" and the "executor of [his] Will," and further specifies, "The term '**executor**' includes any executrix, personal representative, or administrator, if those terms are used in the statutes of any state that has jurisdiction over all or any portion of my estate."  (Emphasis in original).

Defendant Tanios points this Court to D.C. Code § 16-2701(c) which states, "the term domestic partner shall have the same meaning as provided in § 32-701(3)" but then quotes only the first half of the definition of "Domestic partner" in 32-701(3).  Tanios Response, ECF 37-1 at 11.  That section *actually* says, "Domestic partnership means the relationship between 2 persons who become domestic partners by registering in accordance with § 32-702(a) *or whose relationship is recognized under § 32-702(i)*."  (Emphasis added).

In turn, § 37-702(i)(1) and (2) are meant to be read together and are best quoted in full:

§ 32-702(i)(1):          Except as provided in paragraph (2) of this subsection, relationships established in accordance with the laws of other jurisdictions, other than marriages, that are substantially similar to domestic partnerships established by this chapter, as certified by the Mayor, shall be recognized as domestic partnerships in the District. The Mayor shall establish and maintain a certified list of jurisdictions so recognized. The Mayor shall broadly construe the term "substantially similar" to maximize the recognition of relationships from other jurisdictions as domestic partnerships in the District.

§ 32-792(i)(2):          If the Mayor has not yet certified, pursuant to paragraph (1) of this subsection, that the laws of a jurisdiction permit the establishment of relationships substantially similar to domestic partnerships established by this chapter, and if the laws of that jurisdiction prescribe that the relationship, regardless of the term or phrase used to refer to the relationship, has all the rights and responsibilities of marriage under the laws of that jurisdiction, the relationship shall be recognized as a domestic partnership in the District and the Mayor shall include that jurisdiction in the certified list required under paragraph (1) of this subsection.

Thus, there are ample grounds to find that Plaintiff has adequately pled she is Officer Sicknick's "domestic partner," "personal representative," and "executrix" for the purpose of stating a claim under D.C. Code 16-2701.

### ii.   The Survivor's Action states a legally cognizable claim.

Plaintiff has adequately pled a Survivor's Action under D.C. Code § 12-101.  "That statute provides that a cause of action that decedent would have had had he lived survives him in favor of his legal representative.  If a decedent has left heirs-at-law, his legal representative shall be one of them." *Saunders*, *supra*, at 1235.  A Survivor's Action "permits rights of action which accrued to a deceased person before his death to survive or to be pursued by that person's 'legal representative.'" *Strother, supra*, at 1295; *see also id.* at 1297 (noting, in the context of an amended complaint for a Survivor's Action, "Rule 15 seeks to ensure that litigation be decided upon the merits rather than upon technical pleading rules.").

10

The First Amended Complaint is replete with pleadings demonstrating the harm committed by the Defendants to Officer Sicknick and which survive to be pursued by Plaintiff. These include, as discussed more below, injury caused by the Defendants' conspiracy to interfere with his and Congress's official duties.

There is substantial overlap between what is recoverable under the Wrongful Death and Survivor's Action statutes.  Their interplay bespeaks a simple principle: that a decedent's survivors are entitled to compensation for both economic and emotional loss.  "The remedies provided by the Survival Act and Wrongful Death Act 'are not mutually exclusive and may be pursued simultaneously." *Burton v. United States*, 668 F.Supp. 2d 86, 110 (D.D.C 2009) (awarding damages under the Survival Act where "the existence of pain and suffering [can] be inferred from the circumstances surrounding the decedent's death.").

### iii.   The amended conspiracy claim is well pled.

To plead a civil conspiracy, a plaintiff "need not show that the members entered into any express or formal agreement, or that they directly, by words spoken or in writing, stated between themselves what their object or purpose was to be, or the details thereof, or the means by which the object or purpose was to be accomplished." *Smith v. Trump*, 2023 WL 417952 at *1 *citing Thompson v. Trump*, 590 F.Supp. 3d. 46, 97 (D.D.C. 2002) (internal citations omitted).  Further, "§ 1985 authorizes a party that is injured in his person or property to bring suit to recover damages for such injury against any one or more of the conspirators of a conspiracy proscribed by § 1985(1)." *Id*. at *2.

Additionally, this Court can, and should, take judicial notice that many Defendants have been convicted—either by plea or by jury verdict—of participating in a criminal conspiracy to obstruct Congress, other conspiratorial conduct, or criminal conduct related to the January 6,

2021, riot. *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (stating that, when reviewing motions to dismiss for failure to state a claim, courts may take judicial notice of facts in the public record).

In this regard, Plaintiff has adequately pled that the Defendants engaged in a conspiracy to both obstruct Congress *and* Officer Sicknick from discharging his official duties as a Capitol Police Officer tasked with defending the Capitol's Lower West Terrace. First Amended Complaint, ECF 35-3 at ¶¶ 156-158; ¶¶ 90-95. Plaintiff has clearly alleged that these Defendants interfered with, attacked, and prevented him from protecting the Capitol, and that they did so in concert with each other and multiple other people who have pled guilty to various criminal charges stemming from their actions around January 6. This is sufficient to allege conspiracy.

### iv.  Counts 4 and 5 state claims for Negligence Per Se.

Under District of Columbia law, violations of criminal statutes can create civil liability. *See Marusa v. District of Columbia,* 484 F.2d 828, 834 (D.C. Cir. 1973) (setting forth "guidelines for determining whether violation of a criminal statute can create civil liability"). In her First Amended Complaint, Plaintiff specified two different criminal statutes which serve as vehicles for two different negligence claims.

### 1.  The D.C. Riot Act gives rise to a Negligence Per Se Claim.

This Court has expressed "skepticism" that a violation of the D.C. Riot Act can give to a negligence claim in tort, and has previously held that this statute cannot sustain a claim of negligence per se. *Thompson*, *supra* at 119; *Smith v. Trump*, 2023 WL 417952 at *9 (D.D.C. Jan. 26, 2023).

Respectfully, Plaintiff submits that D.C. Code §§ 22-1322, "Rioting or inciting to riot" does actually satisfy the *Marusa* factors.  First, anti-riot statutes are designed to promote safety.  Second, Officer Sicknick, as a policeman tasked with maintaining civil order is a member of the class of persons designed to be protected by that law.  Third, while the law applies generally to all persons, a "riot" is defined as an assemblage of "5 or more persons," thus the duty imposed by that law applies only to persons congregating in groups of a certain size.  Plaintiff respectfully argues she has established the Defendants violated the anti-riot law in a way that gives rise to civil liability, and that *Marusa*'s tripartite rule is too rigid an interpretation of its predecessor *Whetzel v. Jess Fisher Mgmt. Co.,* 282 F.2d 943(D.C. Cir. 1960).  *Whetzel* held, more generally, "If by creating the hazard which the ordinance was intended to avoid, it brings about the harm which the ordinance was intended to prevent, it is a legal cause of the harm."  *Id.* at 947 (internal citation omitted).

### 2.  18 U.S.C. § 1752(a)(2) and (4) impose specific guidelines that govern behavior, and therefore give rise to a claim for Negligence *Per Se*.

By their plain language, 18 U.S.C. § 1752(a)(2) and (4) are statutes designed to promote public safety as they proscribe disorderly and disruptive conduct.  The statute is clearly designed to protect a specific class of people—those who may appear in restricted buildings or grounds (as defined in the statute) such as Capitol Police Officers and Secret Service protectees.  The duty imposed—to not engage in physical violence under the narrowly stated circumstances—is aimed at proscribing specified conduct by persons within those restricted places.  It is therefore not a generally drawn law, but applies only under specific conditions.  *See generally United States v. Puma*, 596 F. Supp. 3d 90 (D.D.C. 2022) (denying January 6 criminal defendant's motion to dismiss, and discussing the conduct prohibited by 18 U.S.C. § 1752 as not unduly vague).

The Plaintiff has identified a specific criminal statute which the Defendants plausibly violated, giving rise to a claim for *Negligence Per Se.  See generally Whetzel*, *supra*, at 946 ("[W]here legislation prescribes a standard of conduct for the purpose of protecting life, limb, or property from a certain type of risk […] then the statutory prescription of the standard will at least be considered in determining civil rights and liabilities.") (internal citation omitted).

### d.  The "Professional Rescuer Doctrine" does not apply to this case.

Defendant Tanios further argues that because Plaintiff's Amended Complaint alleged Officer Sicknick was injured in the performance of his duties, the "fireman's rule" or "professional rescuer doctrine" precludes relief.  Not so.

In essence, the Professional Rescuer Doctrine bars recovery by a professional rescuer when the "hazard ultimately responsible for causing the injuries is inherently within the ambit of those dangers which are unique to and generally associated with the particular rescue activity." *Melton c. Crane Rental Co.*, 742 A.2d 875, 877 (D.C. 1999).  First, Plaintiff has not alleged that Officer Sicknick is a "professional rescuer."  Second, even if Capitol Police Officers are "professional rescuers," "Public servants, like firemen and police officers …  do not assume the risk of all injury in the course of their duties."  *Gillespie v. Washington,* 395 A.2d 18 (D.C. 1978).

Officer Sicknick's injuries were not suffered in the regular course of his professional responsibilities.  The January 6 Capitol Riot was a *sui generis* horror, "the first ever presidential transfer of power marred by violence."  *Thompson v. Trump*, 590 F. Supp. 3d 46, 62 (D.D.C. 2022).  It was a massive and violent riot.

To say that Capitol Officers holding their lines while fighting off *thousands* of rioters and armed attackers was the regular course of business is to propose an idea with no limiting

principle.  Under Defendant Tanios's read, it's difficult to fathom any on-the-job injury suffered

by a policeman that would give rise to a claim against his assailant.  The same cases Defendant

Tanios cites make that point abundantly clear: "the doctrine does not preclude recovery when the

hazard is hidden, unknown, or nonincidental to the professional rescuer's work; one cannot fairly

say the professional rescuer has assumed the risks of such hazards."  *Young v. Sherwin-Williams*

*Co. Inc.*, 569 A.2d 1173, 1178 (D.C. 1990) (internal citation omitted).

***

Defendant Tanios has presented this Court no good reason why it should not grant leave

to amend the Complaint.  Nor has he argued the Plaintiff's amendments are futile.


### III. This Court should deny Defendant Khater's Motion to Dismiss the Amended Complaint.

Defendant Khater did not file a Motion to Dismiss the original Complaint, but has instead

moved to dismiss the First Amended Complaint.  ECF 40-1.  Respectfully, his arguments are

incorrect as a matter of law.  First, as explained above, Plaintiff has pled a conspiracy

adequately.  Second, Defendant Khater misreads Plaintiff's contention as to 18 USC § 1752—

that statute is a vehicle for her negligence claim, not a standalone allegation giving rise to a

private right of action, and she has, nonetheless, established the elements of those crimes for civil

liability.  Third, Plaintiff has established all the necessary elements for a Wrongful Death claim.

Fourth, this Court has, and should retain, jurisdiction.

#### a. The Amended Complaint pleads a conspiracy.

As argued above, Plaintiff has pled that Defendants Trump, Tanios, and Khater engaged

in a conspiracy and that Officer Sicknick was harmed—indirectly and directly—by that illegal

act.

15

"A civil conspiracy is defined as an agreement between two or more people to participate in an unlawful act or a lawful act in an unlawful manner." *Thompson, supra*, at 97.  Plaintiff has alleged more than enough facts to establish that the agreement to interfere with Congress and obstruct the Capitol police was at least either express or tacit, and that Defendants Trump, Tanios, and Khater each "came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* at 97 *citing Halberstam v. Welch*, 705 F.2d 472, 476 (D.C. Cir. 1983); 3B Fed. Jury Prac. & Instr. § 167:30 (6th ed.), 3B Fed. Jury Prac. & Instr. § 167:30 (6th ed.).

Further, the conspiracy allegations which pervade in the First Amended Complaint must be read together.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007 ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions."); *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 ("[T]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.") (internal citation omitted).  Therefore, the allegations set forth in the First Amended Complaint establish the elements of civil conspiracy.

In his Motion to Dismiss, Defendant Khater identifies four elements: (1) that there was an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act that was done pursuant to and in furtherance of the common scheme."  ECF 40-1 at 12, *citing Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).  To allege these elements, the First Amended Complaint charges, among other things:

¶¶ 67-69     In the days preceding January 6, 2021, Defendant Trump tweeted with the intention of convincing his supporters to come to Washington, D.C. where he incited them to violence in an effort to disrupt the counting of electoral votes and overturn the results of the 2020 election.

¶13   "On January 5, 2021, Defendant Khater contacted Defendant Tanios just prior to Tanios's purchase of Frontiersman brand bear spray and pepper spray.  Defendant Tanios gave some of the pepper spray to Defendant Khater, which Khater then carried with him as the two travelled from Morgantown to Washington, D.C., the next day."

¶150   "Many of those supporters, including Defendants Khater and Tanios, understood Defendant Trump's tweet to be a call to violent action to stop Congress from certifying the Electoral College vote.  Defendant Trump's tweets were, in essence, an offer to join a conspiracy to disrupt Congress."

¶145   "…[The] Defendants, by force, intimidation, or threat agreed and conspired with one another and others to undertake a course of action to prevent Congress and Vice President Mike Pence from discharging their duties to count the Electoral College Vote and certify President Biden and Vice President Harris as the winners of the 2020 presidential election.

¶¶ 153-159 Officer Brian Sicknick was indirectly injured by the Defendants' efforts to obstruct Congress and directly injured when Defendants Khater and Tanios assaulted him.

  Defendant Khater further objects to Plaintiff's various allegations as untrue, but such argument is premature.  At this stage, Plaintiff's allegations are to be accepted as accurate for the purposes of the Defendant's motion.  *Hurd v. District of Columbia*, 864 F.3d 671, 675 (D.C. Cir. 2017).  Nonetheless, this Court can and should take notice that Defendant Khater has signed a proffer contradicting his assertions and criticisms of the First Amended Complaint:

17

| Defendant Khater's Motion to Dismiss, ECF 40-1 at pages 14-16 | Defendant Khater's signed Proffer, Attached as Exhibit 2 |
|---|---|
| Moreover, the Amended Complaint is unclear whether Defendant Khater was present for Defendant Trump's in person remarks on January 6, 2021, or if Defendant Khater was merely present outside the grounds of the Capitol during the most contentious moments of the protest. | On January 6, the defendant and co-defendant Tanios attended the "Stop the Steal" rally at the White House and then marched with others to the Capitol. The defendant carried with him a canister of pepper spray. (Page 4) |
| In fact, Defendant Khater did not buy, in tandem or alone, any pepper spray… Additionally, Defendant Khater did not carry or possess on his person or belongings any type of spray. | On January 5, 2021, co-defendant Tanios, in preparing for his trip to Washington, D.C., purchased two cannisters of Frontiersman brand bear spray, and two additional cannisters of pepper spray.  Co-defendant Tanios was in contact by cellular phone with the defendant [Khater] just prior to this purchase.  Co-defendant Tanios provided one of the pepper spray cannisters to the defendant prior to arriving in Washington, D.C. (Page 3). |

\*\*\*

Ultimately, the Plaintiff has adequately pled a conspiracy to disrupt Congress and interfere with Capitol Police Officers like Brian Sicknick who were tasked with maintaining order that day.  The First Amended Complaint alleges the Defendants worked in tandem in this regard, took steps to accomplish their task, and caused injuries to both process and person.[2]

---

[2] Defendant Khater further argues that "Under Plaintiff's logic, every person who listened to Defendant Trump's speech on January 6, 2021, would have engaged in a conspiracy with Defendant Trump just by virtue of being present after Defendant Trump held his political rally" and that the Plaintiff "attempts to impute the mindset and intentions of hundreds of nameless rioters to Defendant Khater." ECF 40-1 at 14.  That is not at all what this lawsuit alleges. Defendants Trump, Khater, and Tanios are named in this suit based on their individual conduct.

Plaintiff has alleged "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

  **b.  Plaintiff's Claim under 18 USC § 1752(a)(2) is a well-pled vehicle for her negligence claim, not a standalone claim for a private right of action.**

  Plaintiff is not advancing a private right of action for a violation of 18 USC § 1752(a)(2) and (4).  She is suing for negligence.

  Under District of Columbia law, a "violation of a criminal statute can create civil liability."  *McCracken v. Walls-Kaufman*, 717 A.2d 346, 354 ("Violation of a statute may give rise to a civil cause of action, and may constitute negligence *per se* if the statute is meant to promote safety, if the plaintiff is a member of the class to be protected' by the statute, and if the defendant is a person upon whom the statute imposes specific duties.) (internal quotation omitted).

  Contrary to Defendant Khater's Motion, ECF 40-1 at 17-18, the First Amended Complaint establishes all the elements of these crimes such that civil liability can attach.

  Pursuant to 18 USC § 1752(a)(2), a crime is committed when any person "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions."

  The First Amended Complaint plainly alleges that the Defendants engaged in disorderly and disruptive conduct which interfered with the counting of the Electoral Votes.  ECF 35-3, Amended Complaint at ¶¶ 89-95.

  Pursuant to 18 USC § 1752(a)(4), a crime is committed when any person "knowingly engages in any act of physical violence against any person or property in any restricted building

or grounds."  For the purposes of the statute, "restricted building or grounds" includes "any posted, cordoned off, or otherwise restricted area … of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or of a building or grounds so restricted in conjunction with an event designated as a special event of national significance." 18 USC 1752(c)(1)(B)-(C). These elements are properly alleged in the First Amended Complaint as well:

First, the First Amended Complaint alleges Defendants Khater and Tanios participated in the January 6, 2021 riot at the U.S. Capitol and an assault upon Officer Sicknick during the certification of the Electoral College votes while Vice President Mike Pence was visiting the Capitol.  Amended Complaint at ¶ 93, 171.

Second, the Lower West Terrace of the Capitol is *obviously* part of the Capitol's restricted grounds, and Defendant Tanios, has already signed a proffer, of which this Court can take judicial notice, to that effect, and implicating his co-defendant.  Defendant Tanios has agreed that "[he] was walking on restricted grounds" and "Co-defendant Julian Khater was walking behind [him]." Exhibit 3, Defendant Tanios's "Proffer of Evidence" at ¶11.

Third, the First Amended Complaint amply establishes that Defendant Khater knew he was entering restricted grounds or buildings.  *See generally U.S. v. Bursey*, 416 F.3d 301 (4th Cir. 2005) (interpreting the *mens rea* component of 18 USC § 1752 as "not a close question" where evidence established a law enforcement presence cordoning off an area).  The First Amended Complaint alleges Defendants Khater and Tanios met near police barricades, ECF 35-3 at ¶ 90; and that they and others began pulling down those barriers. *Id.* at ¶ 93.

Fourth, Plaintiff's First Amended Complaint claims liability for 18 USC § 1752(a)(2) *and* 18 USC 1752(a)(4). *Id.* at ¶ 170.  Whether or not Plaintiff has established Defendant Khater's

intent to disrupt Congress, liability in tort for a violation of subsection (4) would attach upon a claim that the Defendant engaged in violence upon the restricted grounds, which is alleged thoroughly.

Finally, ¶ 112 of the First Amended Complaint notes Defendant Khater has proffered an admission to "assaulting, resisting, or impeding [Officer Sicknick] using a dangerous weapon." *See also* Exhibit 2 at ¶ 17.  Thus, Plaintiff has pled facts sufficient to support her contention that Defendant Khater's conduct violated 18 USC § 1752(a)(4) in that he engaged in "any act of physical violence" on the Capitol's grounds.

### c. Plaintiff has Plead facts necessary to sustain an action for wrongful death and negligence per se.

#### i. Plaintiff is not required to allege the exact mechanism of Officer Sicknick's death at this stage.

Defendant Khater contends that "Plaintiff has not pled facts necessary to establish that Defendant Khater caused Officer Sicknick's death."  ECF 40-1 at 19.  This is incorrect.

Under D.C. law, proximate causation is ordinarily a question of fact for a jury to decide and it is "only the exceptional case in which questions of proximate cause pass from the realm of fact to one of law."  *Beach TV Properties, Inc. v. Solomon*, 306 F. Supp. 3d 70, 96 (D.D.C. 2018) (adding, "Triers of fact determine not only whether a defendant's negligence proximately caused damage to the plaintiff, but also the extent of the plaintiff's damage that the defendant proximately caused.") (internal citation omitted).

Here, the Plaintiff has alleged that, according to the D.C. Medical Examiner, "all that transpired on [January 6] played a role in [Officer Sicknick's] condition that led to his death." ECF 35-3 at ¶ 109.  And the Plaintiff has pled that this includes "Defendant Khater spray[ing] Officer Sicknick in the face with chemical spray, which incapacitated [him] and left him unable

to defend himself from the mob." *Id*. at ¶ 128.  Plaintiff has further alleged that Officer Sicknick suffered physical injuries, ¶ 129, that he died the next day, ¶130, and that the actions taken by Defendants Trump, Khater, and Tanios led to his death. ¶ 131.

Therefore, contrary to the Defendant's assertion, the Plaintiff has claimed there is a "reasonable connection" between Defendant Khater's actions and the damage suffered by the Plaintiff.

### ii.  Plaintiff has adequately pled she is a proper representative who suffered damages.

As described above, Ms. Garza is a proper plaintiff in this case.  She is the lawful representative of the estate of the deceased; she is named variously as his "domestic partner," "personal representative," and "executrix."  Under both a Wrongful Death and a Survivor's Action, she is a proper plaintiff entitled to relief.

Further, she has properly alleged damages under both her Wrongful Death and Survivor's Action claims.  While "double recovery … should be avoided," *Burton*, *supra*, 668 F. Supp. 86, 110 (internal citation omitted), there is clearly an overlap between what is recoverable as to each claim.  "In the District of Columbia, if a tort causes death, two interests have been invaded. The first is the interest of the deceased in the security of his person and property.... The second is the impairment of the interest of the deceased's spouse and next of kin." *Id*. at 109.

Plaintiff has alleged that the Defendants' wrongful acts have deprived her of Officer Sicknick's love, attention, companionship, and comfort, which he would have provided had he not died.  Amended Complaint at ¶ 141.  And, she has lost the "reasonably calculable value he would have provided in the form of care, guidance, personal advice, and other pecuniary benefits that she and the Estate might reasonably have expected to derive from Officer Sicknick had he lived." *Id*. at ¶ 135.

**d. This Court has and should retain jurisdiction.**

If this Court dismisses Plaintiff's federal claims, Defendant Khater argues that this Court should also dismiss Plaintiff's claims that are based on violations of D.C. law for lack of subject matter jurisdiction.  ECF 40-1 at page 23.

If this Court dismisses Counts 3 and 5, which, of course, Plaintiff maintains it should not, this Court should still maintain jurisdiction over the surviving claims in the interest of judicial economy.  While Defendant Khater is correct that the case has not yet advanced beyond the Defendants' Motions to Dismiss, this Court *has* developed familiarity with the facts and related issues presented regarding D.C. law.  *See Thompson*, *supra*, at 119-120 (analyzing application of D.C. criminal code to tort claims).

Further, a substantial part of the conduct giving rise to the claims in this case occurred on U.S. Capitol Grounds, and the facts undergirding Plaintiff's claims are in large part based upon the federal crimes to which Defendants Khater and Tanios have already pled guilty: Assaulting a federal officer in violation of 18 USC § 111(a)(1) and (b); Entering and Remaining in a Restricted Building in violation of 18 USC § 1752(a)(1); and Disorderly Conduct in a Restricted Building in violation of 18 USC § 1752(a)(2).  Thus, jurisdiction is properly federal and the case is properly before this Court, where it should remain.

**IV.    Conclusion.**

For the reasons set forth above, this Court should grant the Plaintiff's Motion for Leave to Amend her complaint and issue an order denoting the First Amended Complaint as the live Complaint in this Matter.  This Court should further deny Defendant Khater's Motion to Dismiss the First Amended Complaint.

Dated: July 10, 2023          Respectfully submitted,

     *s/Matthew Kaiser*
     _____

KAISERDILLON PLLC
Matthew Kaiser (D.C. Bar No. 486272)
Noah Brozinsky (D.C. Bar No. 1655789)
1099 Fourteenth Street, N.W., 8th Fl.
Washington, D.C. 20005
Tel: (202) 640-2850
Email: mkaiser@kaiserdillon.com
       nbrozinsky@kaiserdillon.com

     *s/Philip Andonian*
     _____

CALEBANDONIAN PLLC
Philip Andonian (D.C. Bar No. 490792)
Joseph Caleb (D.C. Bar No. 495383)
1100 H Street, N.W. – Ste. 315
Washington, D.C. 20005
Tel: (202) 953-9850
Email:  phil@calebandonian.com
       joe@calebandonian.com

     *s/Mark S. Zaid*
     _____

Mark S. Zaid, Esq. (D.C. Bar #440532)
Bradley P. Moss, Esq. (D.C. Bar #975905)
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 498-0011
(202) 330-5610 fax
Mark@MarkZaid.com
Brad@MarkZaid.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

    I certify that on July 10, 2023, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Noah Brozinsky
Noah Brozinsky
*Attorney for Plaintiff*