UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| v. | : |
| | : Case No. 21-cr-222-01 (TFH) |
| **JULIAN E. KHATER,** | : |
| | : |
| **Defendant.** | : |

**GOVERNMENT'S SUBMISSION OF ELEMENTS OF OFFENSE AND
PROFFER OF EVIDENCE IN SUPPORT OF DEFENDANT'S PLEA OF GUILTY**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Julian E. Khater, with the concurrence of his attorneys, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*Proffer of Evidence*

**The Attack at the U.S. Capitol on January 6, 2021**

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected

1

members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted

those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### Julian E. Khater's Participation in the January 6, 2021, Capitol Riot

8. The defendant, Julian E. Khater, lives in Somerset, New Jersey. On January 6, the defendant traveled to Washington, D.C., via automobile, accompanied by co-defendant George P. Tanios.

9. On January 5, 2021, co-defendant Tanios, in preparing for his trip to Washington, D.C., purchased two cannisters of Frontiersman brand bear spray, and two additional cannisters of pepper spray. Co-defendant Tanios was in contact by cellular phone with the defendant just prior to this purchase. Co-defendant Tanios provided one of the pepper spray cannisters to the defendant prior to arriving in Washington, D.C.

10. On January 6, the defendant and co-defendant Tanios attended the "Stop the Steal" rally at the White House and then marched with others to the Capitol. The defendant carried with him a canister of pepper spray.

11. At 2:09 p.m., the co-defendant Tanios was walking on restricted grounds, from the south grassy area of the United States Capitol grounds toward the Lower West Terrace. The defendant was walking behind the co-defendant, Tanios. After separating briefly, the defendant and co-defendant Tanios reunited at approximately 2:14 p.m. near the police barricade near the steps on the south side of the Lower West Terrace. At approximately that time, the defendant told co-defendant Tanios, "Give me that bear shit," and then reached his hand into co-defendant Tanios' backpack and retrieved a white canister of bear spray.

12. At approximately 2:20 p.m., the defendant walked away from co-defendant Tanios, and walked through the crowd to within a few steps of the bike rack barrier and line of police officers protecting the Capitol grounds. The defendant was standing directly across from a line of law enforcement officers to include USCP Officers B.S. and C.E., and Metropolitan Police Department ("MPD") Officer D.C. The defendant stood still in place, facing the line of officers.

13. At 2:23 p.m., rioters began pulling on the bike rack barrier using ropes and their hands to pull the rack away. Seconds later, from less than eight feet away, the defendant sprayed pepper spray from a cannister in his right hand at the officers.

14. The defendant first sprayed USCP Officer B.S. in the face. B.S. turned his head away and retreated from the police line. The defendant continued to deploy the spray, advancing towards USCP Officer C.E. and spraying her directly in the face from only a few feet away. C.E. dropped her head and retreated, requiring the assistance of another officer to walk away because

she was unable to see. The defendant then sprayed MPD Officer D.C. directly in the face. D.C. also immediately retreated from the line.

15. Officers B.S, C.E, and D.C. suffered bodily injury from the defendant's pepper spray attack, and were incapacitated and unable to perform their duties for at least 20 minutes or longer while they recovered from the spray.

## Limited Nature of Proffer

16. This proffer of evidence is not intended to constitute a complete statement of all facts known by the government, but rather is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for defendant's plea of guilty to the charged offenses.

## Elements of the Offense

17. Julian E. Khater knowingly and voluntarily admits to all the essential elements of the charged offenses as listed below:

**Count Two and Count Three:**

The essential elements of Count Two and Count Three of the Indictment, Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. Sections 111(a)(1) and (b), each of which the government must prove beyond a reasonable doubt to sustain a conviction, are as follows:

1. The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with USCP Officers Sicknick and Edwards;

2. The defendant did such acts forcibly;

3. The defendant did such acts intentionally;

4. The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer or an employee of the United States who was then engaged in the performance of his or her official duties, or any person assisting such an officer or employee in the performance of that officer's duties;

5. The defendant made physical contact with the officer or employee of the United States who was then engaged in the performance of his or her official duties, or any person assisting such an officer or employee in the performance of that officer's duties, or acted with the intent to commit another felony; and

6. The defendant, in doing such acts, used a deadly or dangerous weapon.

## *Penalties for the Offense*

The penalties for Counts Two and Three, Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. Sections 111(a)(1) and (b), are as follows:

(A) a term of imprisonment not more than 20 years;

(B) a fine not to exceed $250,000;

(C) a term of supervised release of not more than three years; and

(D) a special assessment of $ 100 per count.

Respectfully submitted,

Matthew M. Graves
United States Attorney

        DC Bar No. 481052

By:       /s/
      Gilead Light
      D.C. Bar Number 980839
      Gilead.light@usdoj.gov
      Anthony Scarpelli
      D.C. Bar No. 474711
      Anthony.Scarpelli@usdoj.gov
      Assistant United States Attorneys
      555 4th Street, N.W.
      Washington, D.C. 20530
      (202) 252-6880 (Light)
      (202) 252-7707 (Scarpelli)

## DEFENDANT'S ACKNOWLEDGMENT

I have read this factual proffer, understand it, and agree that it is true and accurate. While it is not a complete recitation of all that I did or all that I know, it represents some of my conduct and some of my knowledge concerning my own involvement in illegal activity. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

Date: 8/26/22

_____
Julian E. Khater

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this factual proffer, reviewed them with my client, and discussed it with my client.

Date: 8/26/22

_____
Chad Seigel, Esquire
Joseph Tacopina, Esquire
Attorneys for the Defendant