## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SANDRA GARZA,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-00038 (APM) |
| | ) | |
| **DONALD J. TRUMP, et al.,** | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## DONALD J. TRUMP'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................ 8

    I.   Constitutional provisions preclude Plaintiff's claims........................ 8

        a.   Absolute immunity bars the claims against President Trump. ............... 8
        b.   The First Amendment bars the claims against President Trump. ......... 14

    II.  Plaintiff has failed to state a claim upon which relief may be granted........... 20

        a.   Plaintiff has failed to state a claim under 42 U.S.C. § 1985(1). .............. 21
        b.   Plaintiff has failed to state a claim under any District of Columbia
            state law claim. ......................................................................... 25

CONCLUSION .................................................................................................. 31

CERTIFICATE OF SERVICE ....................................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Allen v. District of Columbia,*

    187 A.2d 888, 889 (D.C. 1963).......................................................................15

*Ashcroft v. al-Kidd,*

    563 U.S. 731, 741 (2011) ..............................................................................14

*Ashcroft v. Free Speech Coal.,*

    535 U.S. 234, 253 (2002) ..............................................................................19

*Ashcroft v. Iqbal,*

    556 U.S. 662, 678 (2009) ..............................................................................21

*Bd. of Trustees of Univ. of D.C. v. DiSalvo,*

    974 A.2d 868, 871 (D.C. 2009).....................................................................29

*Bell Atl. Corp. v. Twombly,*

    550 U.S. 544, 549 (2007) .........................................................................20, 21

*Brandenburg v. Ohio,* 395 U.S. 444, 449 (1969) ......................................................3, 17

*Chaplinsky v. New Hampshire,*

    315 U.S. 568 (1942) ......................................................................................15

*Crawford-El v. Britton,*

    523 U.S. 574, 588 (1998) ................................................................................9

*Dalton v. United States,*

    71 Ct. Cl. 421, 425 (1931)............................................................................23

*Duckett v. D.C.*,

    654 A.2d 1288, 1290 (D.C. 1995)............................................................................27

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,

    472 U.S. 749, 758–59 (1985) ..............................................................................14

*Feiner v. New York*,

    340 U.S. 315, 321 (1951) ...................................................................................15

*Franklin v. Massachusetts*,

    505 U.S. 788, 800–801 (1992) ..............................................................................31

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,

    561 U.S. 477, 498 (2010) ....................................................................................23

*Gometz v. Culwell*,

    850 F.2d 461, 464 (7th Cir. 1988) ........................................................................21

*Griffin v. Breckenridge*,

    403 U.S. 88, 101 (1971) .....................................................................................20

*Harlow v. Fitzgerald*,

    457 U.S. 800, 816 (1982) ............................................................................10, 13

*Henson v. W.H.H. Trice & Co.*,

    466 F.Supp.2d 187, 192 (D.D.C. 2006) .................................................................30

*Herbert v. D.C.*,

    808 A.2d 776, 778 n. 2 (D.C. Cir. 2002) ................................................................25

*Hurd v. D.C.*,

    864 F.3d 671, 686 (D.C. Cir. 2017) .......................................................................26

*Lewis v. News-Press & Gazette,*

    782 F. Supp. 1338, 1342 (W.D. Mo. 1992) ............................................................24

*McCord v. Bailey,*

    636 F.2d 606 (D.C. Cir. 1980) .................................................................................21

*McFadden v. United States,*

    576 U.S. 186, 197 (2015) .........................................................................................20

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent,*

    466 U.S. 789, 816 (1984) .........................................................................................14

*Mitchell v. Forsyth,*

    472 U.S. 511, 521 (1985) ...........................................................................................9

*Morse v. Frederick,*

    551 U.S. 393, 442 (2007) (Stevens, J., dissenting)..................................................18

*Nixon v. Fitzgerald,*

    457 U.S. 731, 744 (1982) ...................................................................9, 12, 13, 30, 31

*Pearson v. Callahan,*

    555 U.S. 223, 231, (2009) .........................................................................................13

*Perry v. Criss Bros. Iron Works,*

    741 F. Supp. 985, 987 (D.D.C. 1990) ......................................................................30

*Pierson v. Ray,*

    386 U.S. 547, 554 (1967) ...........................................................................................9

*Powers-Bunce v. D.C.,*

    479 F. Supp. 2d 146, 160 (D.D.C. 2007) .................................................................30

*Rockwell v. Morris,*

    12 A.D.2d 272, 279 (N.Y. Sup. Ct. 1961) ...................................................15

*Snyder v. Phelps,*

    562 U.S. 443, 451–52 (2011) ....................................................................14, 15

*Stern v. U.S. Gypsum, Inc.,*

    547 F.2d 1329, 1337 (7th Cir. 1977) .......................................................24

*Thomas v, Collins,*

    323 U.S. 516, 535 (1945) .........................................................................18

*Thompson v. Trump,*

    590 F. Supp. 3d 46, 97 (D.D.C. 2022) .......................................4, 7, 10, 11

*United States v. Gieswein,*

    Criminal No. 21-024, Doc. 63 at 2 (D.D.C. Jan. 16, 2021)......................18

*United States v. Miselis,*

    972 F.3d 518, 536 (4th Cir. 2020) ...........................................................19

*United States v. Mouat,*

    124 U.S. 303, 307 (1888) .........................................................................22

**Statutes**

D.C. Code § 12-101 ..........................................................................................30

D.C. Code § 16-2701 ........................................................................................25

D.C. Code § 16-2702 ........................................................................................27

D.C. Code § 16-2703 ........................................................................................26

### Other Authorities

@realDonaldTrump, TWITTER (Jan. 6, 2021, 3:13pm) https://twitter.com/realDonaldTrump/status/1346912780700577792?cxt=HHwWg MC70bWCmbElAAAA...................................................................................7

@realDonaldTrump, TWITTER, (Jan. 6, 2021, 2:38pm), https://twitter.com/realDonaldTrump/status/1346904110969315332?cxt=HHwWiI C3jeOJlbElAAAA...................................................................................6

Benjamin Cassady, *"You've Got Your Crook, I've Got Mine": Why the Disqualification Clause Doesn't (Always) Disqualify*, 32 Quinnipiac L. Rev. 209, 279 (2014).........24

Brian Naylor, *Read Trump's Jan. 6 Speech, A Key Part of Impeachment Trial*, NPR (Feb. 10, 2021, 2:43 PM), https://www.npr.org/2021/02/10/966396848/ .................17

Caldron Pool, "How did you think it would end? Democrats and Progressives Inciting Violence." YOUTUBE, available at https://www.youtube.com/watch?v=7yYplnEkbqU....................................................2

DOJ Amicus Curiae Brief at 12, *Blassingame, et al. v. Trump*, No. 22-5069, ECF No. 1988265 (D.C. Cir. Appeal docketed Mar. 22, 2022).........................................11, 12

Eric Flack, Stephanie Wilson, and Jordan Fischer, *'I will always love you forever, Brian' / Officer Sicknick's partner recalls family's agonizing goodbye*, WUSA9 (Nov. 9, 2021, 7:00 AM), https://www.wusa9.com/article/news/national/capitol-riots/brian-sicknick-sandra-garza-girlfriend-final-moments-capitol-riot-january-6-donald-trump/65-6f8cafc4-293e-4f60-a915-1c9798d11863......................................26

Memorandum Opinion and Order, *Blassingame, et al. v. Trump*, Case No. 21-cv-00858, ECF No. 37, at 32 (D.D.C. filed March 30, 2021) ........................................16

Order, *Blassingame, et al. v. Trump*, No. 22-5069, ECF No. 1940608 (D.C. Cir. Appeal docketed Mar. 22, 2022) ............................................................................................7

Pete Williams, *Capitol Police Officer Brian Sicknick died of natural causes after riot, medical examiner says*, NBC NEWS (Apr. 19, 2021, 5:26 PM), https://www.nbcnews.com/politics/politics-news/capitol-police-officer-brian-sicknick-died-natural-causes-after-riot-n1264562 ......................................................28

President Donald J. Trump (@realDonaldTrump), FACEBOOK (January 6, 2020), https://www.facebook.com/plugins/post.php?href=https%3A%2F%2Fwww.facebook.com%2FDonaldTrump%2Fposts%2Fpfbid0bZ2Ls7V3DXZp2whwDE7Kx8x4wkhrB1E7Arssx6uCmJxVT2vd4uGHfz3kDfEfpBCBl&show_text=true&width=500 ...1

President Donald J. Trump (@realDonaldTrump), FACEBOOK (January 6, 2020), https://www.facebook.com/plugins/post.php?href=https%3A%2F%2Fwww.facebook.com%2FDonaldTrump%2Fposts%2Fpfbid0bZgKj6NawqeKgyVCzAwJLT4ZHf3WvNhPv7LG4wtRSBdRTRSYKfbCH2ogDdbpeaxnl&show_text=true&width=500 ................................................................................................................1

President Donald J. Trump (@realDonaldTrump), TWITTER (January 6, 2020), https://twitter.com/realDonaldTrump/status/1346912780700577792 ......................1

*Read: Former President Donald Trump's January 6 speech*, CNN (Feb. 8, 2021, 6:16pm), https://www.cnn.com/2021/02/08/politics/trump-january-6-speech-transcript/index.html ..................................................................................................4

STAFF OF S. COMM. ON HOMELAND SEC. & GOV'T AFFS., 117TH CONG., REP. ON EXAMINING THE U.S. CAPITOL ATTACK: A REVIEW OF THE SECURITY, PLANNING, AND RESPONSE FAILURES ON JANUARY 6, at 77 ("HSGA Report")(2021) ......................5, 6

Test Act of 1673, 25 Car. II, c. 2 (U.K.) ........................................................24

Tom, "Inciting Rhetoric from Democrats," YOUTUBE, available at https://www.youtube.com/watch?v=gcVlsq2x79g .......................................2

### Rules

Fed. R. Evid. 201(b)(2) .................................................................26

### Treatises

THE FEDERALIST NO. 72, at 487 (A. Hamilton) (J. Cooke ed., 1961) ...........................23

### U.S. Constitution

U.S. Const. art. I, § 6, cl. 2 .........................................................23

U.S. Const. art. II, § 1, cl. 2 ........................................................23

U.S. Const. art. II, § 2, cl. 2 ........................................................23

### U.S. Code

42 U.S.C. § 1985(1) .................................................................23

## INTRODUCTION

Capitol Police Officer Brian Sicknick's death is a tragedy. That does not make it a tort for which President Trump is liable. Plaintiff's Amended Complaint relies upon cherry-picked statements intended to mischaracterize political speech as unlawful conspiracy, fails to take into account President Trump's repeated and unequivocal urging for peace, and simply ignores the absolute immunity provided by the Constitution to President Trump. Further, the Amended Complaint fails to differentiate a speaker's words and intent from an unreasonable interpretation of such speech by its listeners.

Plaintiff provides no plausible theory of liability against President Trump, nor can she. On January 6, 2021, President Trump expressly called for peaceful political action. Any interpretation to the contrary is implausible.[1] Not only were his

---

[1] Throughout the day on January 6, 2021, President Trump consistently called for peace. *See, e.g.*, President Donald J. Trump (@realDonaldTrump), TWITTER (January 6, 2020, 3:13 P.M.), https://twitter.com/realDonaldTrump/status/1346912780700577792. On Facebook, President Trump encouraged everyone to "respect the Law and our great men and women in Blue." President Donald J. Trump (@realDonaldTrump), FACEBOOK (January 6, 2020), https://www.facebook.com/plugins/post.php?href=https%3A%2F%2Fwww.facebook.com%2FDonaldTrump%2Fposts%2Fpfbid0bZgKj6NawqeKgyVCzAwJLT4ZHf3WvNhPv7LG4wtRSBdRTRSYKfbCH2ogDdbpeaxnl&show_text=true&width=500. In the same sentiment, he also stated "Protect our Capitol Police and law enforcement. They are truly on the side of our Country. Stay peaceful!" President Donald J. Trump (@realDonaldTrump), FACEBOOK (January 6, 2020), https://www.facebook.com/plugins/post.php?href=https%3A%2F%2Fwww.facebook.com%2FDonaldTrump%2Fposts%2Fpfbid0bZ2Ls7V3DXZp2whwDE7Kx8x4wkhrB1E7Arssx6uCmJxVT2vd4uGHfz3kDfEfpBCBl&show_text=true&width=500. His clear and unambiguous statements are fully consistent with his calls and desires for peace and are inconsistent with any violence that occurred that day.

statements well within the norms of political discourse, but they can also easily be contrasted with the overt calls for violence regularly made by his political adversaries.[2] Moreover, Plaintiff has failed to plausibly allege facts establishing any of the claims in the Amended Complaint. First, Plaintiff fails to allege that she is a person who may recover damages under the District of Columbia Wrongful Death Act or, indeed, under any theory in her personal capacity. Next, Plaintiff brings a claim under a statute that does not create a separate cause of action. Finally, Plaintiff weaves an extensive and weak theory attempting to bootstrap President Trump into a conspiracy under § 1985(1), alleging that the President's speech on matters of public concern gave license to individuals to commit criminal acts. In support of these claims, Plaintiff brings threadbare allegations and factually deficient claims.

President Trump has repeatedly said attacks against law enforcement should be condemned and the perpetrators punished. As much as President Trump expresses his condolences for the passing of Officer Sicknick, he is in no way liable for that sad event.

## BACKGROUND

Presidents are expected to take advantage of the bully pulpit. As our nation's chief executives, Presidents routinely comment on election results and petition

---

[2] *See* Tom, "Inciting Rhetoric from Democrats," YOUTUBE, *available at* https://www.youtube.com/watch?v=gcVlsq2x79g and Caldron Pool, "How did you think it would end? Democrats and Progressives Inciting Violence." YOUTUBE, *available at* https://www.youtube.com/watch?v=7yYplnEkbqU for a representative compilation of incendiary remarks from other political and governmental officials that has been ignored by the media and the legal system.

Congress to act (or refrain from acting) in various ways. Yet, Plaintiff wrongfully alleges President Trump's speech, which expressed his strongly held belief in the insecurity and lack of integrity of the 2020 Presidential election and specifically called for peaceful conduct, amounted to an incitement to violence. Am. Compl., Dkt. No. 35-3, at ¶¶ 2–4.

Unfortunately for Plaintiff, the First Amendment forbids courts to regulate the content of political speech. Moreover, it is the content of the speech itself—not the effect on or subsequent actions of the listeners—that determines whether such speech is constitutionally protected. *See Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969).

Plaintiff alleges President Trump's statements and lawsuits challenging election results called for "express violence," but she fails to allege any actual words spoken by President Trump to justify that legal conclusion. Am. Compl. ¶ 4. Instead, Plaintiff offers garden-variety and well-worn metaphors about political fighting as a substitute. *Id.* ¶ 3. To bolster her argument, Plaintiff asserts that some of President Trump's purported supporters—unknown individuals using screen names such as Buttfart88, EvilGuy, and UncontrollableQueef—took his tweets and statements as a call to violent action. *Id.* at ¶¶ 60–67. This is as preposterous a legal position as are the online names used by these purported supporters.

Following Plaintiff's theory of liability would drastically chill political speech because public officials and candidates for public office could be held legally accountable if their supporters misinterpret, or otherwise use, their passionate or emphatic rhetoric and independently decide to carry out acts of violence or other

illegal activity. Plaintiff here incorrectly alleges President Trump intimidated and threatened state and local election officials by exerting political pressure on them to ensure that their elections were properly carried out and certified. *Id.* at ¶¶ 2, 34, 147. However, as this Court concluded in a similar case, this speech is not actionable. *Thompson v. Trump*, 590 F. Supp. 3d 46, 97 (D.D.C. 2022) ("[I]t is important to bear in mind what the alleged unlawful conspiracy is and what it is not. It is not that Defendants conspired to sow doubt and mistrust about the legitimacy of the electoral process and results of the 2020 presidential election. Nor is it that Defendants worked together to influence, pressure, or coerce local officials, members of Congress, and the Vice President to overturn a lawful election result. Though many Americans might view such conduct to be undemocratic or far worse, neither example is an actionable conspiracy under § 1985(1).").

Further, numerous allegations amount to legal conclusions unsupported by any nonconclusory factual allegations whatsoever, such as Plaintiff's claim that President Trump made "express calls for violence" at the rally. *Id.* at ¶ 3. The actual language of President Trump's speech, however, cannot be squared with that conclusory allegation.[3]

Plaintiff's Amended Complaint misstates the standard for liability for protected speech, especially that of a President when acting within the outer

---

[3] *Read: Former President Donald Trump's January 6 speech*, CNN (Feb. 8, 2021, 6:16 P.M.), https://www.cnn.com/2021/02/08/politics/trump-january-6-speech-transcript/index.html; *Thompson,* 590 F. Supp 3d at 83 (stating that the court has considered President Trump's speech in its entirety, beyond the words stated in the Complaint).

perimeter of his official duties. As such, her claims involving President Trump must be dismissed, particularly since she fails to allege any factual basis for inferring any improper agreements, which did not exist, between President Trump and anyone who chose to engage in unlawful rioting.

Plaintiff also alleges that President Trump is vicariously responsible for the death of United States Capitol Police Officer Brian Sicknick. Am. Compl., ¶¶ 118–137. Plaintiff alleges that President Trump is responsible for Officer Sicknick's death because he purportedly incited the riot that Plaintiff alleges caused Officer Sicknick's death, despite a medical report that concluded that Officer Sicknick passed away due to natural causes. *Id.* at ¶ 109.

While President Trump is a vocal proponent of election integrity, he also is strongly committed to public safety and law and order. Indeed, the Senate Homeland Security and Governmental Affairs Committee released a staff report ("HSGA Report") exonerating President Trump of involvement in the January 6 security failures.[4] In pertinent parts, the HSGA Report found that President Trump had delegated the ability to use emergency powers, a lead federal agency had been designated to deal with the security concerns around the January 6 counting of electoral ballots, and President Trump personally asked if the security was ready on January 3.[5] These are not the actions of a co-conspirator attempting to undermine

---

[4] STAFF OF S. COMM. ON HOMELAND SEC. & GOV'T AFFS., 117TH CONG., REP. ON EXAMINING THE U.S. CAPITOL ATTACK: A REVIEW OF THE SECURITY, PLANNING, AND RESPONSE FAILURES ON JANUARY 6, at 77 ("HSGA Report")(2021).

[5] *Id.*

security but rather the actions of a leader concerned with making sure that security is properly in place.[6] In addition, President Trump authorized the use of the national guard and encouraged law enforcement to coordinate and prepare accordingly for any eventuality on January 6, 2021.

Moreover, the HGSA Report found that law enforcement was aware of the possibility of violence on January 6, 2021, yet did not take proper actions to prepare.[7] This lack of preparation for the impending actions of individual wrongdoers is the primary cause of the events at the Capitol on January 6, 2021.

Recently, it was revealed that Twitter was coordinating with the FBI, various other parts of the government, and the Democrat Party, to skew the election in favor of Joe Biden and to deplatform and censor President Trump. Further, President Trump has just been reinstated on Twitter, and his previous tweets—long hidden from public view—were again made public. Two tweets from President Trump, which were posted in the early afternoon of January 6, 2021, clearly state his desire that all protests be peaceful. Specifically, at 2:38 P.M., President Trump tweeted: "Please support our Capitol Police and Law Enforcement. They are truly on the side of our Country. Stay peaceful!"[8] And at 3:13 P.M., President Trump tweeted: "I am asking

---

[6] *Id.* at 56, 95. The HSGA Report found that the agencies working on security did not properly perform their functions, which is regrettable. The Report also discusses knowledge of chatter by outside organizations regarding potential action at the United States Capitol, but there is no mention of any involvement of President Trump.

[7] *Id.* at 36.

[8] @realDonaldTrump, TWITTER, (Jan. 6, 2021, 2:38 P.M.), https://twitter.com/realDonaldTrump/status/1346904110969315332?cxt=HHwWiIC3jeOJlbElAAAA.

for everyone at the U.S. Capitol to remain peaceful. No violence! Remember, WE are the Party of Law & Order – respect the Law and our great men and women in Blue. Thank you!"[9]

These tweets were consistent with a major theme of President Trump's speech on the Ellipse—that the attendees were there to "peacefully and patriotically make [their] voices heard." Indeed, in addition to being constitutionally immune from liability, President Trump's statements and tweets make it clear that he acted completely legally and appropriately.

Last year, this Court entered an order granting the motions to dismiss in part and denying them in part on similar issues. *Thompson v. Trump*, 590 F. Supp 3d. 46, 53 (D.D.C. Feb. 18, 2022). In that order, the court declined, in part, to afford President Trump the long-held, standard, and vital constitutional protections of absolute immunity. *Id.* at *18. Those orders are now being considered on appeal before the U.S. Court of Appeals for the D.C. Circuit. *See generally,* Order, *Blassingame, et al. v. Trump*, No. 22-5069, ECF No. 1940608 (D.C. Cir. Appeal docketed Mar. 22, 2022) (ordering that the three cases be consolidated for consideration of the appeal on the court's own motion).

The D.C. Circuit heard argument on those cases on December 7, 2022. On December 20, 2022, the D.C. Circuit invited the Department of Justice to file a brief

---

[9] @realDonaldTrump, TWITTER (Jan. 6, 2021, 3:13 P.M.) https://twitter.com/realDonaldTrump/status/1346912780700577792?cxt=HHwWgMC70bWCmbElAAAA.

amicus curiae expressing the position of the United States in those consolidated cases. On March 2, 2023, the Department of Justice filed that brief expressing the position of the United States. On March 23, 2023, Appellees filed a supplemental brief, and President Trump filed his response to the Department of Justice's brief. *Blassingame* is still pending before the D.C. Circuit as of the time of this brief.

## ARGUMENT

## I.     Constitutional provisions preclude Plaintiff's claims.[10]

President Trump's public statements before and on January 6, 2021, are within the outer perimeter of his official duties, and thus protected by absolute presidential immunity and protected by the First Amendment as speech on matters of public concern.  Moreover, even if the speech in question were not cloaked with the highest presumption of First Amendment protection—and it is—the legal doctrines of res judicata and collateral estoppel preclude Plaintiff's claims.

### a.  Absolute immunity bars the claims against President Trump.

Plaintiff's claims are barred by absolute immunity. Courts have long held that presidents are absolutely immune from civil liability for actions within the outer perimeter of their official duties, a rule grounded in the principle of separation of

---

[10] Aside from the legal reasons why Plaintiff's case must be dismissed, there are serious and significant prudential concerns, namely the existence of a political question due to the judgment of the Senate Impeachment Court that acquitted the President of incitement charges on the same facts addressed in this Complaint. The Court should also decline to get involved in line drawing over what types of speech are acceptable in the political realm, a matter which is currently on appeal before the D.C. Circuit. Such questions are not susceptible to judicially manageable standards and are necessarily reserved to the political branches.

powers and entrenched in precedent dating back to common law traditions. *See Mitchell v. Forsyth*, 472 U.S. 511, 521 (1985); *Nixon v. Fitzgerald*, 457 U.S. 731, 744 (1982). Here, Plaintiff's claims boil down to an assertion that President Trump should be civilly liable for various alleged torts based on his use of the presidential bully pulpit on a matter of public concern—something well within the traditional scope of a president's duties—and her claims are therefore barred by absolute immunity.

Precluding this type of civil litigation against the President is vital to ensuring a functioning Executive Branch—the absence of immunity would incentivize lawsuits that would make the President hesitant to exercise his discretion "even when the public interest required bold and unhesitating action." *Nixon*, 457 U.S. at 744–45. *See also, Pierson v. Ray*, 386 U.S. 547, 554 (1967) (explaining that immunity serves the public interest in preserving the independence and decisiveness necessary of government officials). Even when a plaintiff alleges that a President's actions exceed their legal authority, the privilege still prohibits litigation. Otherwise, the rule would be swallowed whole by the exceptions; litigation would constantly test whether a particular "action was unlawful[] or was taken for a forbidden purpose." *Nixon*, 457 U.S. at 756.

The Supreme Court has also held that evidence of a defendant's subjective intent is irrelevant. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) ("[The] defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated."). "[J]udgments surrounding discretionary action almost inevitably are influenced by the decisionmaker's

experiences, values, and emotions," and allowing subjective intent would result in no clear standard for relevant evidence. *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982).

Here, President Trump is an elected official, the most senior elected official in the United States, entitled to absolute immunity. During the time at issue, President Trump was engaged in the execution of his duties as President, which is constitutionally committed to his sole discretion. In this case, those duties involved using his bully pulpit to ensure the faithful execution of the laws of the United States and lobbying for proper legislative action to the same ends. The Office of the President, even more than the office of prosecutor, requires the ability to act boldly and fearlessly to carry out the duties of the office as the person vested with the entire authority of the Executive Branch. A holding that Plaintiff can bring a suit of this subjective nature would encourage political opponents to take their disputes out of the public square and halls of Congress and into courtrooms to punish a President for his disfavored speech. The President's absolute immunity forecloses the jurisdiction of this Court to do so.

In *Thompson*, this Court did not accept President Trump's absolute immunity claim because it found that it was too simple of an analysis to determine that President Trump's speech was on a matter of public concern, which is a function of the President. *Thompson*, 590 F. Supp 3d. at 79–80. The court did, however, make two findings: "The court agrees with President Trump in two respects. First, speech is unquestionably a critical function of the presidency. . . . Second, his pre-January

10

6th tweets and the January 6 Rally Speech addressed matters of public concern: the outcome of the 2020 Presidential Election and election integrity." *Id.* at 79.

The court went on to determine that in a deeper analysis, looking at the speech and the President's underlying motives, it would be appropriate to withhold the protection of absolute immunity. *Thompson*, 590 F. Supp 3d. at 81–84. With respect, President Trump believes that this Court erred in that determination.

In the Department of Justice's ("DOJ") amicus brief filed in the appeal stemming from the court's decision in *Blassingame*, the DOJ correctly endorsed a broad view of Presidential immunity. It recognized that "[t]he traditional 'bully pulpit' of the Presidency" falls within the scope of absolute immunity. DOJ Amicus Curiae Brief at 12, *Blassingame, et al. v. Trump*, No. 22-5069, ECF No. 1988265 (D.C. Cir. Appeal docketed Mar. 22, 2022). Moreover, the President's use of the bully pulpit "is not limited to speech concerning matters for which the President himself bears constitutional or statutory responsibility;" it includes "matters over which the Executive Branch—or the federal government as a whole—has no direct control," including matters constitutionally committed to another branch of government, such as Congress. *See id.* at 12.

DOJ also recognized that the line between "official" and "campaign" activities, particularly with respect to speech addressing matters of public concern, is vanishingly thin. Therefore, Presidential immunity is broader than even Congressional immunity under the Westfall Act, and "conduct occurring in the

context of a political campaign" may fall within the scope of Presidential immunity. *Id.* at 12, 14 n.3.

Despite these findings that President Trump's actions were, in fact, within the outer perimeter of his office, DOJ went on to argue for a carve-out. At its core, DOJ's argument is that "plausibly" illegal or unprotected conduct is outside the scope of Presidential immunity. DOJ argues that "[n]o part of a President's official responsibilities includes incitement of imminent private violence," therefore "[b]y definition, such conduct plainly falls outside the President's constitutional statutory duties." DOJ Brief at 16. DOJ then suggested that the D.C. Circuit remand the case to this Court for a further determination of whether absolute immunity applied under a standard that incorporated *Brandenburg*.

DOJ's argument misses the point of absolute immunity. Immunity only matters if a President is alleged to have done something wrong. After all, if a plaintiff does not have an at least arguable claim that a President acted wrongfully, a civil suit would either not be brought or would be promptly disposed of on a motion to dismiss under Rule 12(b)(6), as this suit should be on other grounds, irrespective of presidential immunity.

Dispositively, the Supreme Court in *Nixon* rejected a remarkably similar argument. In *Nixon*, the Respondent claimed that he was illegally dismissed in retaliation for his testimony to Congress. *Nixon*, 457 U.S. at 736. More specifically, he argued that unlawful conduct, by virtue of being unlawful, cannot fall within the scope of the President's official duties and, therefore, is beyond the scope of

12

presidential immunity. *Id.* at 756. Because a statute protected federal employees, he argued that any violation of that statute could not be within the scope of the President's responsibilities. *Id.* ("Because Congress has granted this legislative protection, respondent argues, no federal official could, within the outer perimeter of his duties of office, cause Fitzgerald to be dismissed without satisfying this standard in prescribed statutory proceedings.").

The Court firmly rejected this approach. "Adoption of this construction . . . would deprive absolute immunity of its intended effect" because it "would subject the President to trial on virtually every allegation that an action was unlawful or was taken for a forbidden purpose." *Nixon*, 457 U.S. at 756. Therefore, President Trump's actions were within the outer perimeter of his office and are thus protected by absolute immunity.

Even if the *Brandenburg* standard had some role to play in the absolute immunity analysis, it would need to be filtered through the prism and purposes of immunity law. The application of immunity does not turn on whether a federal officer seeking immunity committed a tort, but rather whether it was clearly established that the official's conduct was tortious when undertaken. It is well-settled that even qualified immunity—by definition lesser than the absolute immunity at issue here— "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be sufficiently

13

clearly established that immunity will not apply, "existing precedent must have placed the statutory or constitutional question *beyond debate." Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis added).

As discussed below, the question of whether President Trump's speech crossed the *Brandenburg* line is, at worst, a *debatable* proposition. It therefore makes no sense to hold that absolute Presidential immunity does not apply in circumstances where qualified immunity—a lesser immunity—would protect an inferior federal official. An immunity rule whose application turns on, at worst, a *deeply questionable and unrealistic* proposition under *Brandenburg* cannot be reconciled with *Nixon's* emphasis on ensuring that presidential action be unrestricted by fear of civil liability or with the substantial body of immunity law requiring that the tortious nature of a federal official's acts be clearly established before immunity can be held not to apply.

### b. The First Amendment bars the claims against President Trump.

Well-established First Amendment jurisprudence bars Plaintiff's claims based on President Trump's political speech. An individual's rights to speak, assemble, and petition the government for redress of grievances are afforded the strongest presumption against infringement. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 816 (1984) ("[P]olitical speech is entitled to the fullest possible measure of constitutional protection."). Moreover, "speech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection.'" *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985)).

The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Snyder*, 562 U.S. at 452. That is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Id.* Accordingly, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Id.* "The primary question is whether the message conveyed . . . was of such a nature as to come within the ambit of the First Amendment Protection, or whether it must be placed in the categories of speech which the Supreme Court has held are not protected." *Allen v. District of Columbia*, 187 A.2d 888, 889 (D.C. 1963) (citing *Chaplinsky v. New Hampshire,* 315 U.S. 568 (1942)). For Plaintiff's claims alleging conspiracy and incitement to riot, the "[defendant's] conduct, and not the crowd's reaction to it, must be the starting point, for 'the measure of the speaker is not the conduct of his audience.'" *Allen*, 187 A.2d at 889 (quoting *Rockwell v. Morris*, 12 A.D.2d 272, 279 (N.Y. Sup. Ct. 1961)).

Therefore, the "[a]udience reaction, and the immediacy of the disorder, become significant elements of proof only after the speaker passes the bounds of argument or persuasion and undertakes incitement to riot." *Allen*, 187 A.2d at 889 (citing *Feiner v. New York*, 340 U.S. 315, 321 (1951)). Here, President Trump's speech did not surpass any reasonable standard for the bounds of argument and persuasion commonly used by public officials and candidates for public office.

### 1. *President Trump's speech was petitioning activity undertaken in his official capacity.*

President Trump's speech on January 6, 2021, regarding the 2020 Presidential Election, is certainly on matters of public concern. In fact, this Court has already found that it was on matters of public concern. Memorandum Opinion and Order, *Blassingame, et al. v. Trump*, Case No. 21-cv-00858, ECF No. 37, at 32 (D.D.C. filed March 30, 2021). As President, it was President Trump's duty to ensure that the laws are faithfully executed, and he had plausible concerns about the legality and integrity of the November election results. Allegations of election interference were more than welcome by politicians and the media in 2000, 2004, and 2016 when they were being voiced by Democrats Maxine Waters, Jerrold Nadler, Barbara Lee, Stacy Abrams, and Hillary Clinton.

In 2020, President Trump was condemned for voicing concerns with the massive changes to state election procedures that created uncertainty about their security and outcomes. State legislatures are charged with setting the election process in every state, but the President has every right to question whether procedures were properly enacted and followed. Indeed, dialogue between the political branches of government and the several states on such issues is at the core of federalism and represents one of the checks and balances that are the heart and soul of our Constitution's framework. Questioning the integrity of the election and his discussion of the matter while attempting to petition Congress to redress his grievance was a matter of public concern cloaked with the highest presumption of

16

protection. It simply does not meet the standards described by the Supreme Court for when speech may be restricted or punished without violating the First Amendment.

### 2. President Trump's speech does not meet the standard for incitement.

Throughout the Amended Complaint, Plaintiff alleges President Trump incited and provoked individuals to riot at the Capitol through weeks of voicing his concerns over the legitimacy of the elections (*see, e.g.*, Am. Compl., ¶¶ 60–69, 74–81), filing lawsuits challenging those election results (*see, e.g.*, Am. Compl., ¶¶ 2, 54), and planning a rally to petition Congress to delay certifying the election (*see, e.g.*, Am. Compl., ¶ 68–69). Plaintiff asserts these actions provide the basis for President Trump's liability for the actions of others at the Capitol. Yet, President Trump's speech clearly reminded his supporters to "peacefully and patriotically make [their voices] heard" at the Capitol, where the election certification was going to take place.[11] At no point during the speech was there any advocacy for violence or unlawful activity.

Retrospectively assuming a speaker's intent based upon the actions of others cannot support an incitement claim. *See Brandenburg*, 395 U.S. at 449 (1969). But that is exactly what Plaintiff would have this Court endorse. In her Amended Complaint, Plaintiff claims unknown internet users with dubious handles like "Buttfart88" and "EvilGuy" interpreted President Trump's language as a call to

---

[11] Brian Naylor, *Read Trump's Jan. 6 Speech, A Key Part of Impeachment Trial*, NPR (Feb. 10, 2021, 2:43 P.M.), https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-impeachment-trial.

action. Am. Compl., ¶¶ 60–67. According to Plaintiff, based upon this stretched interpretation, third parties acted. This theory has been recently rejected by the Department of Justice, which referred to any theory that President Trump could authorize citizens to interfere with the relevant proceedings as "objectively unreasonable." *United States v. Gieswein*, Criminal No. 21-024, Doc. 63 at 2 (D.D.C. Jan. 16, 2021). Moreover, Plaintiff never alleges that President Trump gave directions; only that third parties misunderstood innocuous political rhetoric to mean something not stated, implied, or intended.

Further, one cannot have negligent liability for incitement—intent on the part of the speaker is a required element of a plaintiff's claim. An individual cannot be liable for incitement based on how others interpreted his speech, or "the distinction between advocacy and incitement" would be too blurred. *Morse v. Frederick*, 551 U.S. 393, 442 (2007) (Stevens, J., dissenting). The Supreme Court rejected such an interpretation because this "would 'pu[t] the speaker in these circumstances wholly at the mercy of the varied understanding of his hearers and consequently of whatever inference may be drawn as to his intent and meaning.'" *Id.* at 442–43 (quoting *Thomas v. Collins*, 323 U.S. 516, 535 (1945)).

Starting in 2020, the media continuously referred to the right to protest as a central element of our republic—even when the protests that were encouraged in cities across the country were turning violent and putting American lives, property, and law enforcement officers in jeopardy. If President Trump's speech is not protected by the First Amendment, the floodgates of litigation would open. Any number of

18

people could be liable for the unlawful conduct of others who claimed to be under the influence of their political speech. This would clutter the dockets of federal courts and incentivize using courts as a weapon against political opponents.

### 3. Incitement is limited to true threats, and a holding to the contrary would subject anti-riot laws to facial challenges.

As the Supreme Court has recognized, the "mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002). After all, "mere encouragement is quintessential protected advocacy" under the First Amendment. *United States v. Miselis*, 972 F.3d 518, 536 (4th Cir. 2020). Indeed, the Fourth Circuit has held that an Anti-Riot Act that "proscribes speech tending to 'encourage' or 'promote' a riot, as well as speech 'urging' others to riot or 'involving' mere advocacy of violence" was overbroad under *Brandenburg* and swept up too much protected speech to be constitutional. *Miselis*, 972 F.3d at 540.

If such activity cannot incur liability under the First Amendment, the allegations that Plaintiff has made here are surely not sufficient, and D.C.'s Anti-Riot statute would be subject to a facial challenge as overly broad.

Should Plaintiff's construction of § 1985 be adopted, it would lead to a boundless statute that would essentially hold politicians vicariously liable for the actions of their supporters, substantially chilling constitutionally protected political speech. Moreover, the broad and vague prescriptions of the statute would encourage selective enforcement, inevitably based upon the political affiliations of the enforcer.

19

Simply put, Plaintiff's proposed interpretation of the statute provides no way to draw clear lines.

A conspiracy under § 1985(1) should not be read so broadly as to encompass all tortious interferences with the rights of others. *See Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971) (discussing the legislative history of the statute, specifically as it applied to § 1985(3)). Indeed, a plain reading of the word "conspiracy" in the statute requires that the Court limit its application to specific agreements to interfere with the acceptance or performance of an officer's duties through an unlawful act. *See McFadden v. United States*, 576 U.S. 186, 197 (2015) (applying the canon of constitutional avoidance). Therefore, an agreement to engage in lawful political speech and assembly with others is no conspiracy at all; there must be an actual agreement to perform an overt act that extends beyond protected political speech. And as with any conspiracy allegation, proof of the actual agreement is key to surviving a motion to dismiss.

Plaintiff here does not meet that threshold. The First Amendment protects President Trump's speech. Because all the claims against him stem directly and solely from President Trump's political speech, this Court should dismiss Plaintiff's Complaint in its entirety.

## II.    Plaintiff has failed to state a claim upon which relief may be granted.

To state a claim upon which relief may be granted, Plaintiff must plead her Amended Complaint so that it plausibly lays out a legally recognized case against Defendants. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 549 (2007). While she need not

include "detailed factual allegations," she must do more than state an unadorned "the-defendant-unlawfully-harmed-me" accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Moreover, Plaintiff's conspiracy allegations must be pled with particularity. *See Gometz v. Culwell*, 850 F.2d 461, 464 (7th Cir. 1988); *McCord v. Bailey,* 636 F.2d 606 (D.C. Cir. 1980).

### a. Plaintiff has failed to state a claim under 42 U.S.C. § 1985(1).

#### 1. *Plaintiff does not adequately allege that President Trump caused the events of January 6.*

Plaintiff has not alleged that President Trump took any action other than his protected speech to cause the alleged events in her Amended Complaint. Notably, Plaintiff does not plausibly allege that President Trump entered into an agreement with any other alleged co-conspirator; this alone is fatal to her claims of conspiracy. Plaintiff has woven her own story to implicate President Trump in a supposed plot between individuals unrelated and distant from President Trump and certain people in the District of Columbia.

In addition to being protected by immunity and the First Amendment, President Trump's speech was far removed from the Capitol. Further, President Trump's language, both during the speech and subsequent to the speech, indicates

that he wanted his supporters to remain peaceful. *See* Am. Compl. ¶ 99 (showing President Trump's tweet asking people to "[s]tay peaceful!"), ¶ 104 (explaining that President Trump made statements in the afternoon asking the people at the Capitol to go home). The protestors' and rioters' lack of obedience demonstrates that President Trump did not have control over their actions and was not directing them, nor was he the one who incited them. The HSAG Report also clearly indicates that there were organizations and individuals planning to get involved in the events at the Capitol ahead of time, divorced from any contact with President Trump, and that President Trump was concerned with, and insistent on, all events of January 6, 2021, being safe and secure.

### 2. *Members of Congress and the Vice President are not Officers Pursuant to § 1985(1).*

Plaintiff's claims against President Trump under § 1985(1) are contingent upon a finding that President Trump conspired to interfere with the duties of a federal officer as described in § 1985(1). Neither members of Congress nor Vice President Pence, whom Plaintiff alleges were the individuals prevented by force, intimidation, and threats from discharging their duties, are federal officers for purposes of § 1985(1).

An officer of the United States is one who "holds his place by virtue of an appointment by the president, or of one of the courts of justice or heads of departments authorized by law to make such an appointment." *United States v. Mouat*, 124 U.S. 303, 307 (1888). Additionally, as the Supreme Court explained in 2010, "[t]he people do not vote for the 'Officers of the United States.' U.S. Const. art.

II, § 2, cl. 2. They instead look to the President to guide the 'assistants or deputies . . . subject to his superintendence.'" *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 498 (2010) (*quoting*, THE FEDERALIST NO. 72, at 487 (A. Hamilton) (J. Cooke ed., 1961)). Furthermore, the Appointments Clause makes it clear that the President appoints the Officers of the United States. *See* U.S. Const. art. II, § 2, cl. 2.

The Constitution makes clear that members of Congress are not office holders "under . . . the United States." 42 U.S.C. § 1985(1). The Ineligibility Clause specifically states that "no person holding any Office under the United States, shall be a member of either House during his Continuance in Office." U.S. Const. art. I, § 6, cl. 2. Therefore, a member of Congress is not in an office under the United States; otherwise, the Constitution would state that they could not hold more than one such office. In defining an office of the United States, the United States Court of Claims defined it as a "public station or employment established or authorized by Congress and conferred by appointment of the Government." *Dalton v. United States*, 71 Ct. Cl. 421, 425 (1931). Neither do members of Congress hold a position of trust or a place of confidence under the United States. The Constitution specifically delineates between senators, representatives, and those holding an office of trust or profit under the United States when it prohibits any of the above from serving as electors. U.S. Const. art. II, § 1, cl. 2.

In common law, an office of trust or profit referred exclusively to those in the employ of the executive, judiciary, or church. *See* Benjamin Cassady, *"You've Got*

*Your Crook, I've Got Mine": Why the Disqualification Clause Doesn't (Always) Disqualify*, 32 Quinnipiac L. Rev. 209, 279 (2014). English statutes applied the term to offices conferred by the Crown, not by Parliament. *Id.* (citing Test Act of 1673, 25 Car. II, c. 2 (U.K.)). There are few examples of those who hold a place of confidence under the United States. A district court has applied that term to state court judges since they decide federal constitutional issues and are bound by federal law. *Lewis v. News-Press & Gazette,* 782 F. Supp. 1338, 1342 (W.D. Mo. 1992). Other authority suggests that all the categories listed in Section 1 are limited to those who carry out and apply the law. *See Stern v. U.S. Gypsum, Inc.,* 547 F.2d 1329, 1337 (7th Cir. 1977) (explaining the statutory history of § 1985(1) and concluding that the purpose of the legislation was to protect the "federal interest in the carrying out of federal functions").

Given the previously discussed limitation that officers of the United States are those who are appointed by the President, the fact that the Vice President is elected with the President prevents a finding that he is an officer. One thing is clear: the Congress that adopted the statute could have made it applicable to the legislative branch and to the President and Vice President. But it did not. Indeed, if the statute did apply as broadly as Plaintiff alleges, any time that Congress and the President disagreed politically, it could incur liability on either party in the courts of law if their bombastic rhetoric or conduct could be perceived as a threat to the other. Plaintiff does not have a cause of action under § 1985(3) because neither the members of

24

Congress nor Vice President Pence qualify as individuals with whom interference of their duties gives rise to a cause of action under § 1985(1).

### b.  Plaintiff has failed to state a claim under any District of Columbia state law claim.

Plaintiff has brought three claims against President Trump based on alleged District of Columbia state law violations: (1) wrongful death, (2) a "survival action", and (3) incitement to riot. Each of these are precluded by the above, but Plaintiff has also failed to adequately allege plausible facts to state a claim under any of these statutes.

#### 1.  *Plaintiff has failed to state a claim for wrongful death.*

##### A.  *Plaintiff has failed to allege that a spouse, domestic partner, or next of kin exists that may recover under the wrongful death statute.*

The District of Columbia wrongful death statute, D.C. Code § 16-2701, sets a statutory limitation on who may recover damages in a wrongful death lawsuit. Specifically, the "District of Columbia's Wrongful Death Act is designed to provide a remedy whereby close relatives of the deceased who might have expected maintenance or assistance from the deceased had he lived, may recover compensation from the wrongdoer commensurate with the loss sustained." *Herbert v. D.C.*, 808 A.2d 776, 778 n. 2 (D.C. Cir. 2002) (internal quotations omitted).

The statute itself is clear: "The damages shall be assessed with reference to the injury resulting from the act, neglect, or default causing the death, to the spouse or domestic partner and the next of kin of the deceased person[.]" D.C. Code § 16-2701. The chapter continues to clarify that the damages must be "distributed to the *spouse*

and *next of kin* according to the allocation made by the verdict or judgment, or in the absence of an allocation, according to the provisions of the statute of distribution in force in the District." D.C. Code § 16-2703 (emphasis added).  Respectfully, Plaintiff is neither spouse nor next of kin.

Plaintiff included new allegations in the Amended Complaint alleging that "[s]he is named in his last will and testament as his domestic partner and as executor of the will." Am. Compl. at ¶ 8. This, however, does not establish that she was Officer Sicknick's domestic partner under D.C. law.

First, the will in question is not attached to the Amended Complaint, and, as such this allegation is a legal conclusion that is not accepted as true. Second, Plaintiff has specifically and publicly admitted that she is not, and was not, married to Officer Sicknick at the time of the relevant events. In an interview with WUSA9, Ms. Garza admitted that she and Officer Sicknick separated six months before January 6, 2021, because she wanted to get married and he did not.[12] This is direct evidence from Plaintiff that she was not a spouse or domestic partner of Officer Sicknick, nor did they hold themselves out to be married or domestic partners.

The Court may take judicial notice of this information because it is readily available from a source whose accuracy cannot reasonably be questioned. *Hurd v. D.C.*, 864 F.3d 671, 686 (D.C. Cir. 2017); Fed. R. Evid. 201(b)(2). Here, the source of

---

[12] Eric Flack, Stephanie Wilson, and Jordan Fischer, *'I will always love you forever, Brian' / Officer Sicknick's partner recalls family's agonizing goodbye*, WUSA9 (Nov. 9, 2021, 7:00 AM), https://www.wusa9.com/article/news/national/capitol-riots/brian-sicknick-sandra-garza-girlfriend-final-moments-capitol-riot-january-6-donald-trump/65-6f8cafc4-293e-4f60-a915-1c9798d11863.

the information is Plaintiff herself speaking about her relationship with Mr. Sicknick. Because Plaintiff is not kin, spouse, or domestic partner of Mr. Sicknick, there are no damages due to Plaintiff under the wrongful death statute to Plaintiff. Therefore, this count must be dismissed for failure to state a claim upon which relief may be granted.

For that matter, to the extent that Plaintiff purports to be advancing claims in her own right as the decedent's girlfriend—or, more accurately, *former* girlfriend—as opposed to in her alleged capacity as personal representative of Officer Sicknick's estate, she lacks standing to bring any claim. D.C. Code § 16-2702 ("An action pursuant to this chapter shall be brought by and in the name of the personal representative of the deceased person"); *Duckett v. D.C.*, 654 A.2d 1288, 1290 (D.C. 1995). Plaintiff's Amended Complaint removed from the caption of the Amended Complaint that she is bringing any claims "individually", yet she still appears to be attempting to claim recovery for the loss of financial support, comfort, care, and guidance provided to her by Officer Sicknick. *See* Am. Compl. at ¶ 134–35. These are all damages that are not contemplated by the Wrongful Death statute and would be personal in nature and, therefore, not recoverable by Plaintiff.

> ### B. Plaintiff does not adequately allege Officer Sicknick's death was caused by the wrongful act, neglect, or default of President Trump.

As outlined above, Plaintiff's claim for the wrongful death of Mr. Sicknick is precluded by constitutional considerations. In addition, Plaintiff's Amended Complaint fails to adequately allege that Officer Sicknick's death was caused by a wrongful or negligent act of President Trump or by President Trump's default.

27

As an initial matter, Plaintiff admits that Officer Sicknick's death was determined to have been caused by natural causes. Am. Compl., ¶ 109. This negates the necessary element of causation: a showing that an alleged wrongful act caused Officer Sicknick's tragic passing. Plaintiff includes an alleged excerpt from the medical examiner's report stating that the events of January 6 played a role in Officer Sicknick's condition, yet Plaintiff has not provided a copy of the report or citation. The medical examiner, however, did tell the Washington Post that: "the autopsy found no evidence that Sicknick experienced an allergic reaction to chemical irritants. He also said there was no evidence of either external or internal injuries."[13]

Moreover, Plaintiff fails to adequately allege that President Trump's wrongful or negligent action caused Officer Sicknick's death or that President Trump's default allowed it to happen. Plaintiff alleges no communication between President Trump and the other two defendants, or for that matter, any other alleged conspirator. Plaintiff does not even plausibly allege any agreement between President Trump and any other person. At most, Plaintiff alleges that others took President Trump's words to be a call to violence. This is not a wrongful action of President Trump sufficient to make him responsible for the violent actions of others.

It is an uncontested fact that President Trump encouraged the people at the Capitol to remain peaceful. In his speech, President Trump requested that any

---

[13] Pete Williams, *Capitol Police Officer Brian Sicknick died of natural causes after riot, medical examiner says*, NBC NEWS (Apr. 19, 2021, 5:26 P.M.), https://www.nbcnews.com/politics/politics-news/capitol-police-officer-brian-sicknick-died-natural-causes-after-riot-n1264562.

protest be peaceful and patriotic. President Trump also sent multiple messages, including in video form, requesting that rallygoers respect law enforcement. Yet, some individuals ignored these calls. This underscores that President Trump was not directing or controlling the rioters at the Capitol, and he was not giving them orders.

Further, Plaintiff argues, in conclusory fashion, that President Trump ratified the conduct of the others by not immediately condemning that conduct, and, for that reason, President Trump is somehow responsible for the alleged wrongful death of Officer Sicknick. This suggested rule would create a new duty on an individual to condemn actions that they are not part of or risk incurring liability. Such a novel standard would facially violate due process and subject people to liability for the actions of others far removed from their control. It is also barred by the rule that a plaintiff seeking to hold a defendant liable for negligence for injuries resulting from intervening criminal acts must plead facts establishing that the defendant meets the "heightened foreseeability" test. *Bd. of Trustees of Univ. of D.C. v. DiSalvo*, 974 A.2d 868, 871 (D.C. 2009). Plaintiff has not even attempted to do so.

### i.  *D.C.'s survivor provision does not create a cause of action.*

Plaintiff alleges she is bringing a "Survivor's Action" under D.C. Code § 12-101. In full, this statute provides:

> On the death of a person in whose favor or against whom a right of action has accrued for any cause prior to his death, the right of action, for all such cases, survives in favor of or against the legal representative of the deceased.

D.C. Code § 12-101. While this statute explains how a cause of action survives the death of an individual and inures to the favor or detriment of their estate and its representative, it does not create a new or separate cause of action.

Indeed, "§ 12–101 allows a person representing a decedent's estate to assert tort claims belonging to the deceased victim that would have been precluded at common law; it does not create a distinct, substantive cause of action." *Powers-Bunce v. D.C.*, 479 F. Supp. 2d 146, 160 (D.D.C. 2007) (citing *Henson v. W.H.H. Trice & Co.*, 466 F.Supp.2d 187, 192 (D.D.C. 2006) ("[A]t common law, tort claims do not survive a plaintiff's death; however, [§ 12–101] permits legal representatives to bring tort claims on behalf of a decedent's estate.")); *see also Perry v. Criss Bros. Iron Works*, 741 F. Supp. 985, 987 (D.D.C. 1990) ("The D.C. Survival Statute allows a surviving representative to stand in the shoes of the deceased, and to sue as the deceased would have had a right to sue had he lived. It creates no new right of action.").

To the extent Plaintiff intended to plead some other cause of action, she has failed to do so sufficiently.

### ii.   The President is not subject to a claim for money damages under § 1985(1).

Plaintiff has failed to adequately allege that 42 U.S.C. § 1985(1) applies to the President of the United States. *Nixon* held that the President is not subject to damages actions without specific authorization from Congress. *Nixon,* 457 U.S. at 748 ("In neither case has Congress taken express legislative action to subject the President to civil liability for his official acts."). The President occupies a unique position within the constitutional structure of our government; it is therefore

appropriate that generally worded statutes, such as § 1985, do not always reach the President or his office. *Nixon,* 457 U.S. at 749–50; *Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992).

Here, Plaintiff's allegations include claims that President Trump exerted political pressure on officials and spoke from his bully pulpit on matters of public concern.  These actions not only fall within the duties of the presidency as discussed above, but they also are constitutionally and statutorily invested in the President, making him a unique individual in the statutory and constitutional framework of our legal system and neither the Constitution nor the Congress has provided a way around this bar to Plaintiff's claims.

*          *          *

As a matter of law, Plaintiff has made no plausible allegations to overcome Presidential immunity, nor has she made any plausible allegations that she has standing to bring these claims, or that the President incited a riot, or that the President or his words are responsible for Officer Sicknick's death.

## CONCLUSION

For the foregoing reasons, President Trump respectfully requests this Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: November 1, 2023                    Respectfully submitted,

                                           /s/ Jesse R. Binnall
                                           Jesse R. Binnall, VA022
                                           THE BINNALL LAW GROUP, PLLC

717 King Street, Suite 200
Alexandria, Virginia 22314
Tel:  (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com

David A. Warrington
D.C. Bar No. 1616846
Jonathan M. Shaw
D.C. Bar No. 446249
Gary M. Lawkowski
D.C. Bar No. 1781747
DHILLON LAW GROUP, INC.
2121 Eisenhower Ave, Suite 402
Alexandria, Virginia 22314
Tel: (703) 574-1206
Fax: (415) 520-6593
dwarrington@dhillonlaw.com
jshaw@dhllonlaw.com
glawkowski@dhillonlaw.com

*Attorneys for Donald J. Trump*

## CERTIFICATE OF SERVICE

I certify that on November 1, 2023, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jesse R. Binnall
Jesse R. Binnall (VA022)
*Attorney for Donald J. Trump*