UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANDRA GARZA, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No. 1:23-cv-00038 (APM) |
| | ) |
| DONALD J. TRUMP, et al., | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**DEFENDANT DONALD J. TRUMP'S REPLY IN SUPPORT
OF HIS MOTION TO DISMISS**

The D.C. Circuit is currently weighing important constitutional issues—absolute immunity and the freedom of speech in the *Blassingame* case, which will without doubt impact the issues raised here. Judicial economy suggests that this Court should wait for that decision before deciding this motion. Moreover, Plaintiff has failed to factually justify her claims of conspiracy pursuant to 42 U.S.C. § 1985 and has failed to state a claim for relief as to the state law claims. Plaintiff's case should be dismissed in its entirety.

I. **President Trump's speech was protected by absolute immunity.**

As this Court knows, its ruling on absolute immunity in *Thompson* is on appeal to the D.C. Circuit, where the Department of Justice weighed in (at the Circuit's request) with a brief that generally urged a much broader view of the applicability of Presidential absolute immunity than was previously adopted by this Court, while suggesting that, in this particular case, a *Brandenburg*-related test be applied to

determine its application. Presumably, this Court will wish to wait for the appeal process to play out before deciding this motion. Plaintiff simply ignores all of this, relying entirely upon this Court's prior decision.

Notably, DOJ recognized that "[t]he traditional 'bully pulpit' of the Presidency" falls within the scope of absolute immunity. DOJ Amicus Curiae Brief ("DOJ Br."), at 12, *Blassingame, et al. v. Trump*, No. 22-5069, ECF No. 1988265 (D.C. Cir. Appeal docketed Mar. 22, 2022). This means that President Trump's speech on matters of public concern, especially when publicly addressing the entire nation, is conduct regularly engaged in by Presidents and may be within the outer perimeter of the President's Office, protected by absolute immunity.

Plaintiff asserts that certain speech can be exempted from the protection of absolute immunity based upon an evaluation of the motivations for the speech. Opp'n Br. at 4 (incorporating Plaintiff's prior briefing). In part, this argument suggests that since President Trump was a candidate for office, his speech was not an official act. Yet, both this Court in *Thompson* and the DOJ recognized that the line between "official" and "campaign" activities, particularly with respect to speech addressing matters of public concern, is vanishingly thin. *Thompson v. Trump,* 590 F. Supp. 3d 46, 80 (D.D.C. 2022) ("For one, the line between President and candidate will not always be clear. A first-term President is, in a sense, always a candidate for office."); DOJ Br. at 14-15 ("The Supreme Court in *Nixon* emphatically rejected an argument that otherwise-official acts lose immunity if they are motivated by an impermissible purpose. 457 U.S. at 756. That logic applies with even greater force to the suggestion

that the President should be subject to suit for his official acts whenever those acts are—or are plausibly alleged to have been—motivated by electoral or political considerations.").

Indeed, DOJ strongly suggested that this Court erred in *Thompson* when it found that political or policy messages could remove the protection of absolute immunity. DOJ Brief at 14 ("Nor is it appropriate to frame the immunity question— as even the district court appeared to do at times—in terms of whether the challenged conduct of the President was undertaken with a purpose 'to secure or perpetuate incumbency.' … The Supreme Court in *Nixon* emphatically rejected an argument that otherwise-official acts lose immunity if they are motivated by an impermissible purpose."). This is exactly the argument President Trump has consistently raised, that *Nixon v. Fitzgerald* holds that no investigation may be conducted into the motivation for a speech if it is within the outer perimeter of the President's office. ECF No. 24.1 at 13.

Among other things, Plaintiff has entirely failed to respond to President Trump's argument on pages 13-14 of his opening brief—which was not before this Court in *Thompson*— that if a *Brandenburg*-influenced test of the sort suggested by DOJ were to be adopted, basic immunity law requires that President Trump receive immunity unless it is "beyond debate" that his speech was not constitutionally protected. That question plainly isn't beyond debate, as members of the D.C. Circuit panel observed during oral argument in *Blassingame*. *Infra,* at 5-6.

3

Instead, Plaintiff mistakenly suggests that *Clinton v. Jones*, 520 U.S. 681 (1997) removes the absolute immunity of a president. Opp'n Br. at 4-5. This, however, is a misleading characterization. While the *Clinton* Court did find that conduct of an unofficial or personal nature was outside of the protection, this was not contrary to the *Fitzgerald* Court's finding, which shared the exact same exclusion of non-official conduct. *Compare Clinton,* 520 U.S. at 693-94 *with Nixon v. Fitzgerald*, 457 U.S. 731, 756 (1982) ("we think it appropriate to recognize absolute Presidential immunity from damages liability for acts within the 'outer perimeter' of his official responsibility."). Plaintiff then cites cases requiring presidential compliance with subpoenas to argue that the shield against personal liability may be broken. Opp'n Br. at 5. Those cases are inapposite; a subpoena and civil liability are not comparable.

President Trump respectfully submits that this Court should await the final result of the *Blassingame* appeal process, as that will undoubtedly provide guidance that the Court and parties will find useful.

## II. President Trump's speech was protected by the First Amendment.

Plaintiff seeks to recast President Trump's speech on January 6, 2021, which the *Thompson* Court and the DOJ labeled as speech on matters of public concern, as "dangerous" and inciting violence. Opp'n Br. at 4 (incorporating Plaintiff's prior briefing). Even if President Trump's speech was dangerous, Plaintiff has failed to plausibly allege it was aimed at inciting imminent violence. Plaintiff then goes on to largely reiterate positions from the *Thompson* Court's decision. *Id.* at 7-12.

4

"The primary question is whether the message conveyed . . . was of such a nature as to come within the ambit of the First Amendment Protection, or whether it must be placed in the categories of speech which the Supreme Court has held are not protected." *Allen v. District of Columbia*, 187 A.2d 888, 889 (D.C. 1963) (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)). The *Thompson* Court already found that President Trump's speech was on matters of public concern and was to the American public. *Thompson*, 590 F. Supp. 3d at 79.

The *Thompson* Court acknowledged that for the *Brandenburg* analysis, it could not consider anything other than President Trump's speech that day. *Id.* at 113. First, there is nothing in the speech explicitly encouraging violence or lawless action. *Id.* at 115 ("The President's words on January 6th did not explicitly encourage the imminent use of violence or lawless action.").

Second, President Trump's speech did not implicitly encourage the use of violence or lawless action. The *Thompson* Court erred in pointing to phrases such as "fight like hell. And if you don't fight like hell, you're not going to have a country anymore" to suggest that President Trump was "plausibly" encouraging his supporters to literally "fight." *Id.*

In *Hess v. Indiana*, the Court found that stating "[w]e'll take the f[***]ing streets later (or again)" while standing in front of a crowd of antiwar demonstrators after a number of demonstrators had just been forcibly removed from the street was protected speech. 414 U.S. 105, 107 (1973). Similarly, in *Nwanguma*, the Court found that exhorting a crowd to "get 'em out of here" several times in reference to a protestor

5

at a political rally was neither an explicit nor implicit exhortation to violence, particularly when coupled with the admonition "don't hurt 'em." *Nwanguma*, 903 F.3d at 611–12.

President Trump's actual words on January 6th are less inflammatory than those at issue in *Hess* or *Nwanguma*, and, therefore, do not qualify as "implicit" incitement. The *Thompson* Court's contention also ignores the full textual context of President Trump's words. President Trump's use of the word "fight" was clearly metaphorical, referring to a political "fight," not a literal fistfight or other violent interaction. When read in context, President Trump's exhortation to "fight" is unambiguously a reference to applying political pressure, not engaging in illegal or violent activity, even absent his exhortation to the crowd to proceed "peacefully."

There is no implicit or explicit exhortation to violence in President Trump's speech. Even the D.C. Circuit panel reviewing the absolute immunity ruling in *Thompson* doubted that President Trump's words meet the *Brandenburg* standard. *See generally* Oral Argument Transcript at 64:5-7, *Blassingame v. Trump*, Case No. 22-5069 (D.C. Cir. Dec. 7, 2022) (Katsas, J.: "[Y]ou just print out the speech, which I have done, and read the words on the page, it doesn't look like it would satisfy the [*Brandenburg*] standard, right?"); *Id.* at 74:21-25 (Rogers, J.: "You acknowledge I think that the statement, the actual words used by the President, are not what the crowd actually did. In other words, the President didn't say break in, didn't say assault members of Congress, assault Capitol Police, or anything like that."). Plaintiff has not and cannot plausibly plead incitement because none of President Trump's

6

well-documented statements urged violence or any other lawless or illegal activity. Plaintiff has failed to state a claim upon which relief may be granted.

### III. The complaint fails to allege a violation of 42 U.S.C. § 1985.

Plaintiff alleges that the *Thompson* Court's finding that other cases plausibly alleged that President Trump engaged in a conspiracy with some militant groups such as the Proud Boys and Oath Keepers suffices to carry their burden of alleging a conspiracy here. Opp'n Br. at 4 (incorporating Plaintiff's prior briefing). Plaintiff, however, has not alleged any connection between the other two defendants and President Trump, and she has not alleged that either of the other two defendants are members of those organizations. Indeed, Plaintiff broadly points to an entire section of her First Amended Complaint to claim that she has adequately pleaded an agreement. Opp'n Br. at 20. This level of generality is insufficient. Rather than actually presenting substantive arguments on this issue, Plaintiff immediately reverts to arguing about whether President Trump's actions were within the outer perimeter of his office. Yet, this is not pertinent to the question of whether Plaintiff has adequately pleaded the requirement elements of 42 U.S.C. § 1985(1).

Plaintiff also suggests without any citation that it is clear that § 1985(1) applies to the President solely because President Trump did not present an example of a Court that found that it did not apply to the President. Given the dearth of § 1985(1) lawsuits against Presidents, it is unsurprising that this issue has not been explored in detail by previous courts. Yet, President Trump pointed to authority for the premise that generally worded statutes do not always reach the Office of the

7

Presidency. *Nixon*, 457 U.S. at 749–750; *Franklin v. Massachusetts*, 505 U.S. 788, 800–801 (1992). The logic of those decisions applies with equal force here.

## IV. Plaintiff fails to adequately state a claim for any D.C. state law claim.

### a. Plaintiff has failed to state a claim for wrongful death.

Plaintiff flatly asserts that she has adequately alleged the required elements for a wrongful death claim. Opp'n Br. at 13-17. Plaintiff bases her entire argument that she is the "domestic partner" of Mr. Sicknick based on his will, which names her as domestic partner. *Id.* at 13. This, however, is not sufficient under D.C. law. Under D.C. Code 32-701(3), which Plaintiff cited, the code requires that the domestic partner also meet the standard required by the definition of "committed relationship" under 32-701(1). As outlined in the Motion to Dismiss, Plaintiff and Officer Sicknick were not in a committed relationship at the time of Officer Sicknick's death. Mem. in Support of Mot. to Dismiss, ECF No. 49-1, at 26. Plaintiff admitted as much in her own words to WUSA9. *Id.*

Moreover, Plaintiff has failed to adequately allege causation and damages. Recovery under the Wrongful Death Act requires that the Plaintiff prove "(1) the standard of care owed by the [defendant] to [the deceased] and (2) a breach of that standard by the [defendant] that (3) caused injury to [the deceased] before his death," and that "(4) [the victim's] death caused injury to the plaintiffs themselves." *Burton v. United States,* 668 F. Supp. 2d 86, 98 (D.D.C. 2009).

Plaintiff broadly alleges that this has been adequately pleaded because "proximate causation is ordinarily a question left for the fact finder." Opp'n Br. at 16.

8

This, however, is not an absolute rule when Plaintiff has failed to provide any sufficient allegations to demonstrate any connections in the causal chain. Indeed, Plaintiff's bald allegation that she has pleaded probable cause with no support for her claim is insufficient and makes this one of the extraordinary cases where the question of proximate cause is a legal one. *See* Opp'n Br. at 16 (claiming Plaintiff has claimed a "reasonable connection" between the Defendants and Officer Sicknick's injuries). The reasonable connection is, however, a fiction.

### b. Plaintiff has failed to state a claim for a survival action.

Plaintiff for the first time in their opposition brief alleges that they are bringing the so-called survival action based on substantive underlying torts. Nowhere in their First Amended Complaint did they make such an allegation. Even if this alone was not fatal to Plaintiff's survivor's action claim, Plaintiff has also failed to plausibly allege violation of a substantive, underlying tort.

Plaintiff's claim for negligence *per se* for incitement to riot is insufficient. Indeed, this Court has repeatedly found that such a claim is not viable and dismissed the claim. *Smith v. Trump*, No. 21-CV-02265, 2023 WL 417952, at *9 (D.D.C. Jan. 26, 2023) ("None of these statutes imposes 'specific guidelines to govern behavior.' Rather, they are generally drawn statutes applicable to all and prohibit certain behaviors. They therefore cannot sustain a claim of negligence per se."). In *Smith*, the plaintiffs argued that President Trump had violated the same incitement to riot statute and this Court dismissed that claim. In addition, as shown above, Plaintiff's claim for violation of 42 U.S.C. § 1985(1) is also inadequate.

9

## CONCLUSION

For the foregoing reasons, President Trump respectfully requests this Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: November 22, 2023

Respectfully submitted,

/s/ Jesse Binnall
Jesse R. Binnall, VA022
THE BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel:  (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com

David A. Warrington
D.C. Bar No. 1616846
Jonathan M. Shaw
D.C. Bar No. 446249
Gary M. Lawkowski
D.C. Bar No. 1781747
DHILLON LAW GROUP, INC.
2121 Eisenhower Ave, Suite 402
Alexandria, Virginia 22314
Tel: (703) 574-1206
Fax: (415) 520-6593
dwarrington@dhillonlaw.com
jshaw@dhllonlaw.com
glawkowski@dhillonlaw.com

*Attorneys for Donald J. Trump*

## CERTIFICATE OF SERVICE

I certify that on November 22, 2023, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/  Jesse Binnall
Jesse R. Binnall, VA022

*Attorney for Donald J. Trump*