UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SANDRA GARZA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 23-cv-0038 (APM) |
| DONALD J. TRUMP et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

U.S. Capitol Police Officer Brian Sicknick was at the U.S. Capitol on January 6, 2021, when rioters disrupted the Electoral College certification. Among the rioters were Defendants Julian Khater and George Tanios. After attending former President and Defendant Donald J. Trump's rally, Khater and Tanios marched to the Capitol. There they battled with law enforcement officers defending the building, including Officer Sicknick. Tanios had purchased chemical spray the day before, and Khater demanded it from him at the Capitol. From close range, Khater deployed the chemical spray at Officer Sicknick, incapacitating him. Officer Sicknick would collapse later that night and die the next day.

This is another civil suit arising out of the attack on the U.S. Capitol on January 6th. The plaintiff in this matter is Sandra Garza, the personal representative for the Estate of Brian Sicknick and the executor of his will. She brings a host of claims against Defendants Trump, Khater, and Tanios. All Defendants have moved to dismiss the complaint. For the reasons that follow, the courts grants in part and denies in part their motions.

II.     BACKGROUND

   A.     **Factual Allegations**

This court has previously recounted the allegations relating to the January 6th attack on the U.S. Capitol in *Thompson v. Trump*, 590 F. Supp. 3d 46 (D.D.C. 2022).  The court presumes familiarity with those allegations and sets forth here only those that are unique to this matter.

Officer Brian Sicknick joined the U.S. Capitol Police in July 2008.  First Am. Compl., ECF No. 35-3, ¶ 19. [hereinafter Am. Compl.].  He served in its First Responder's Unit.  *Id.* On January 6, Officer Sicknick was part of a police line at the perimeter of the Lower West Terrace of the U.S. Capitol.  *Id.* ¶ 20.

The day prior, on January 5, 2021, Khater, a resident of New Jersey, contacted Tanios, a resident of West Virginia, just before Tanios purchased bear spray and pepper spray.  *Id.* ¶¶ 12–13.  Tanios gave some pepper spray to Khater, which Khater brought with him as the two traveled from West Virginia to Washington, D.C.  *Id.* ¶ 13.

After the former President's rally on the Ellipse, Khater and Tanios proceeded to the Lower West Terrace of the Capitol.  *Id.* ¶¶ 74–82, 89.  Once there, they pulled down barriers and physically confronted law enforcement officers.  *Id.* ¶ 93.  Khater told Tanios, "Give me that bear shit," reached into Tanios's backpack, and retrieved a white canister of chemical spray.  *Id.* ¶ 90. Khater sprayed Officer Sicknick in the face with chemical spray from less than eight feet away. *Id.* ¶¶ 14, 93.  Incapacitated from the spray, Officer Sicknick retreated from the police line.  *Id.* ¶ 94.

Around 10:00 p.m. that evening, Officer Sicknick collapsed while still at the Capitol.  *Id.* ¶ 108.  He was rushed to the hospital for treatment.  *Id.*  The next day around 9:30 p.m., he died. *Id.*  According to the District of Columbia's Chief Medical Examiner, Officer Sicknick died of

"natural causes," specifically, a series of strokes. *Id.* ¶ 109. The Medical Examiner further stated that "all that transpired on [January 6] played a role in his condition" that led to his death. *Id.*

B. **Procedural History**

On January 5, 2023, Garza filed the instant action. Compl., ECF No. 1. "She is named in [Officer Sicknick's] last will and testament as his domestic partner and executor of the will." Am. Compl. ¶ 8. Garza asserts four claims against all Defendants: (1) wrongful death under D.C. Code § 16-2701 (Count 1); (2) a survivor's action under D.C. Code § 12-101 (Count 2); (3) conspiracy to violate civil rights under 42 U.S.C. § 1985(1) (Count 3); and (4) negligence per se based on violations of the District of Columbia's anti-riot statute, D.C. Code § 22-1322 (Count 4). She alleges a second negligence per se claim against Defendants Khater and Tanios only, based on violations of the federal restricted buildings or grounds provision, 18 U.S.C. § 1742(a)(2) and (a)(4) (Count 5).

Defendants have moved to dismiss all claims on various grounds. Def. Khater's Mot. to Dismiss Pl.'s Am. Compl., ECF No. 40 [hereinafter Khater's Mot.]; Def. Trump's Mot. to Dismiss First Am. Compl., ECF No. 49 [hereinafter Trump's Mot.]; Def. Tanios's Mot. to Dismiss First Am. Compl., ECF No. 50 [hereinafter Tanios's Mot.].

III. **DISCUSSION**

A. **Constitutional Defenses**

The court first addresses, and quickly disposes of, former President Trump's assertion of immunity from suit. Trump's Mem. in Supp. of Trump's Mot., ECF No. 49-1, at 8–14 [hereinafter Trump's Mem.]. That argument is now foreclosed by the D.C. Circuit's decision in *Blassingame v. Trump*, 87 F.4th 1 (D.C. Cir. 2023). There, like here, President Trump argued that "a President's speech on matters of public concern is invariably an official function, and he was engaged in that

function when he spoke at the January 6 rally and in the leadup to that day." *Id.* at 5; *see* Trump's Mem. at 9–10. But the Circuit held that, at the motion to dismiss stage, the plaintiffs had plausibly alleged that the former President's alleged actions, including his speech at the Ellipse, were not within the "outer perimeter of a President's official responsibility." *Blassingame*, 87 F.4th at 5, 13–14; *see id.* at 17 ("It follows that, when a sitting President acts in his capacity as a candidate for re-election, he acts as office-*seeker*, not office-*holder*."). The same is true here. Based on Plaintiff's pleading, absolute immunity does not bar suit against President Trump. *See Smith v. Trump*, No. 23-7010, 2023 WL 9016458 (D.C. Cir. Dec. 29, 2023) (per curiam) (rejecting President Trump's presidential immunity claim because "[t]his case is indistinguishable from *Blassingame* in all relevant respects").

President Trump raises a second constitutional argument: because his speech on January 6th was protected expression under the First Amendment, he cannot be held liable for it. Trump's Mem. at 14–20. As Garza notes, this court has already held otherwise in *Thompson* on similar motions to dismiss. Pl.'s Resp. in Opp'n to Defs. Trump and Tanios's Mots. to Dismiss First Am. Compl., ECF No. 51, at 2, 7–12 [hereinafter Pl.'s Resp.] (citing *Thompson*, 590 F. Supp. 3d at 115–17). The court incorporates that holding and reasoning here.

### B. Wrongful Death Act Claim

The court next addresses Defendants' grounds for dismissing the wrongful death claim. *See* Trump's Mem. at 25; Tanios's Stmt. of P&A in Supp. of Tanios's Mot., ECF No. 50-1, at 9 [hereinafter Tanios's Mem.]; Mem. of P&A in Supp. of Khater's Mot., ECF No. 40-1, at 21–23 [hereinafter Khater's Mem.]. The court agrees with Defendants that Garza lacks statutory standing to bring such a claim. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118,

4

128 & n.4 (2014) (defining the "statutory standing" inquiry as whether the plaintiff "falls within the class of plaintiffs whom [the legislature] has authorized to sue").

The District of Columbia's Wrongful Death Act, as relevant here, entitles "the spouse or domestic partner" of a person who is wrongfully killed "to maintain an action and recover damages[.]" D.C. Code § 16-2701(a); *Strother v. District of Columbia*, 372 A.2d 1291, 1295 (D.C. 1977) (explaining that "the Wrongful Death Act . . . allows recovery for pecuniary loss to the decedent's next of kin (e.g., loss of support) occasioned by the death"); *Nelson v. Am. Nat'l Red Cross*, 26 F.3d 193, 199 (D.C. Cir. 1994) (stating that "the wrongful death provision gives a right of action to [the decedent's] survivor who suffers a loss because of his death"). Such an action must be "brought by and in the name of the personal representative of the deceased person[.]" D.C. Code § 16-2702. Thus, as the representative of Officer Sicknick's estate, Garza can recover damages under the Wrongful Death Act for herself *personally* only if she was Officer Sicknick's "spouse or domestic partner." *See* Am. Compl. ¶¶ 134–35 (alleging that "Plaintiff has suffered financial loss from Officer Sicknick's death in the form of lost financial support that Officer Sicknick furnished or could have been expected to provide").

Garza was not Officer Sicknick's spouse. *See* Am. Compl. ¶ 8. Instead, she maintains that her wrongful death claim is valid because in his will Officer Sicknick named her as his "domestic partner." Pl.'s Resp. at 13–14. That allegation, however, is not sufficient to confer statutory standing under the Wrongful Death Act.

The Wrongful Death Act adopts the definition of "domestic partner" found at D.C. Code § 32-701(3). D.C. Code § 16-2701(c). That provision defines "domestic partner" as "a person [1] with whom an individual maintains a committed relationship as defined in paragraph (1) of this section and who has registered under § 32-702(a) or [2] whose relationship is recognized under

5

§ 32-702(i)." *Id.* § 32-701(3). Section 32-702(a) provides that "[t]o establish the existence of a domestic partnership . . . , persons shall register as domestic partners by executing a declaration of domestic partnership to be filed with the Mayor." Under § 32-702(i), the District of Columbia recognizes domestic partnerships that are "established in accordance with the laws of other jurisdictions[.]" Garza does not allege that she and Officer Sicknick filed the requisite "declaration of domestic partnership" under District of Columbia law. Nor does she claim that they formed a domestic partnership under the law of any other jurisdiction. Her contention that a "domestic partnership" was established simply by Officer Sicknick having identified Garza as his "domestic partner" in his will finds no basis in the plain text of the statute. Garza therefore cannot recover the damages she *personally* seeks under the Act. The Wrongful Death Act claim therefore is dismissed.[1]

### C. Negligence Per Se

The court next addresses Garza's negligence per se claims based on violations of two criminal law provisions: (1) D.C. Code § 22-1322 (Count 4) and (2) 18 U.S.C. § 1752(a)(2) and (a)(4) (Count 5).

As to the first of these, this court already has held in another January 6th civil suit that the District of Columbia's anti-riot statute, D.C. Code § 22-1322, "cannot sustain a claim of negligence per se." *Smith v. Trump*, No. 21-cv-02265 (APM), 2023 WL 417952, at *9 (D.D.C. Jan. 26, 2023). The court adopts that holding here. Count 4 is thus dismissed.

Plaintiff's other negligence per se claim fares no better. As the court observed in *Smith*, under District of Columbia law, a violation of a criminal statute can give rise to a negligence per

---

[1] President Trump makes the additional argument that Officer Sicknick's death was not "caused by a wrongful or negligent act of President Trump or by President Trump's default." Trump's Mem. at 27. Because the court has dismissed the Wrongful Death Act claim, it need not consider this argument.

se claim only if, among other requirements, the provision "imposes specific duties" on the defendant. *Id.* (quoting *Marusa v. District of Columbia*, 484 F.2d 828, 834 (D.C. Cir. 1973)). Section 1752(a)(2) bars individuals from "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engag[ing] in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions[.]" 18 U.S.C. § 1752(a)(2). Section 1752(a)(4) prohibits "knowingly engag[ing] in any act of physical violence against any person or property in any restricted building or grounds[.]" *Id.* § 1752(a)(4). Like the District's anti-riot statute, these federal criminal laws do not "impose[] specific guidelines to govern [a defendant's] behavior" but instead "are generally drawn statutes applicable to all and prohibit certain" conduct. *Smith*, 2023 WL 417952, at *9 (internal quotation marks omitted).[2] Because violations of 18 U.S.C. § 1752 do not give rise to a negligence per se claim, Count 5 is dismissed.

### D.      Survival Act & 42 U.S.C. § 1985(1)

What remains then is Garza's Survival Act claim.  The District of Columbia Survival Act provides that "[o]n the death of a person in whose favor or against whom a right of action has accrued for any cause prior to his death, the right of action, for all such cases, survives in favor of . . . the legal representative of the deceased." D.C. Code § 12-101.  "The Survival Act preserves for the benefit of the decedent's estate a right of action the decedent had before death.  Its purpose is to place the decedent's estate in the same position it would have occupied if the decedent's life had not been terminated prematurely." *Lewis v. Lewis*, 708 A.2d 249, 252 (D.C. 1998) (citations

---

[2] Defendant Khater makes additional arguments that the criminal statutes do not support a private right of action and that Plaintiff has failed to plead sufficient facts to support a plausible claim. Khater's Mem. at 17–18. The court does not address these arguments.

omitted); *see also Strother*, 372 A.2d at 1295 ("The Survival Act permits a claim which accrued to a decedent before his death to be enforced after his death by his 'legal representative.'").

The negligence per se claims, as explained above, cannot provide the basis for the survival action. So, what remains is the federal statutory claim arising under 42 U.S.C. § 1985(1).[3] Defendants contend, for various reasons, that Garza fails to plead a § 1985(1) claim. Trump's Mem. at 21–25, 30–31; Tanios's Mem. at 9–10; Khater's Mem. at 12–16. The court finds these arguments unpersuasive.

President Trump asserts that members of Congress and the Vice President do not qualify as "officers" under § 1985(1). Trump's Mem. at 22–25. The court rejected that argument in *Thompson* with respect to Members of Congress, 590 F. Supp. 3d. at 91–94, and does so again here. Moreover, the court's reasoning applies with equal force to the office of the Vice President.

President Trump additionally challenges the § 1985(1) claim on the grounds that the President cannot be held liable for money damages under that statute. Trump's Mem. at 30–31. This argument is largely undeveloped. President Trump does cite two Supreme Court decisions, but neither supports his contention. *Nixon v. Fitzgerald* holds no more than that the President is immune from a suit for money damages for his official acts. 457 U.S. 731 (1982). *Franklin v. Massachusetts* holds only that presidential actions are not reviewable for abuse of discretion under the Administrative Procedure Act, reasoning that Congress would have expressly provided for such review if it had intended to do so. 505 U.S. 788, 800–01 (1992). Neither case establishes

---

[3] Garza's Survival Act pleading is far from a model of clarity. Garza has no personal § 1985(1) claim, as she was not a victim of the alleged conspiracy. Garza can only assert the claim as the representative of Officer Sicknick's estate. Yet, the Survival Act count does not expressly identify § 1985(1) as a basis for the claim. *See* Am. Compl. ¶¶ 138–142. Garza does allege in the separately pleaded § 1985(1) count that "Officer Sicknick (through his personal representative, Plaintiff Sandra Garza) is a 'party so injured or deprived' by acts committed by Defendants in furtherance of the conspiracy." *Id.* ¶ 154 (quoting 42 U.S.C. § 1985(3)). The court reads this to say that the § 1985(1) claim was available to Officer Sicknick before his death, and Garza now asserts the claim as the representative of his estate under the Survival Act. *See Strother*, 372 A.2d at 1295.

what President Trump seems to suggest, which is that a former President cannot be subject to money damages for non-official actions that violate a federal statute unless the statute expressly says otherwise.

Next, all Defendants maintain that Plaintiff has not alleged a plausible civil conspiracy that each joined. Trump's Mem. at 21–22; Tanios's Mem. at 9–10; Khater's Mem. at 12–16. In *Thompson*, this court discussed the principles of civil conspiracy as applied to a § 1985(1) claim. 590 F. Supp. 3d at 96. The court there explained that a plaintiff pleading civil conspiracy "need not show that the members entered into any express or formal agreement, or that they directly, by words spoken or in writing, stated between themselves what their object or purpose was to be, or the details thereof, or the means by which the object or purpose was to be accomplished." *Id.* (quoting 3B Fed. Jury Prac. & Instr. § 167:30 (6th ed.)). A plaintiff need only plausibly allege that the "conspirators share[d] the same general conspiratorial objective, or a single plan the essential nature and general scope of which is known to all conspirators." *Id.* at 101.

Plaintiff's allegations of conspiracy here largely mirror those in *Thompson*. Plaintiff asserts that Trump, Khater, and Tanios tacitly agreed with each other and others to "disrupt the Certification of the Electoral College vote through force, intimidation, or threats." *Id.* She alleges that Tanios and Khater coordinated in advance to bring chemical spray and, upon Trump's urging, entered the Capitol grounds to prevent Members of Congress from discharging their duties through force, intimidation, or threats. Am. Compl. ¶¶ 13–14, 69, 157–58. For the same reasons that the court found a civil conspiracy plausible in *Thompson*, it does so here as well. *Thompson*, 590 F. Supp. 3d at 97–105.

Finally, Khater asserts that he cannot be held liable under § 1985(1) because the complaint fails to establish his alleged actions caused Officer Sicknick's death. He points out that, according

to the complaint, the District of Columbia's Chief Medical Examiner determined that Officer Sicknick died of "'natural causes'—specifically a series of strokes." Khater's Mem. at 19–21 (quoting Am. Compl. ¶ 109). The court need not, however, at this stage, decide whether Garza has plausibly alleged that Khater caused Officer Sicknick's death. That is because, at a minimum, Officer Sicknick's estate can recover for any pain and suffering that he experienced *before* his death, and the complaint sufficiently pleads that Khater's actions caused such harm. *See Doe v. Binker*, 492 A.2d 857, 860 (D.C. 1985) (recognizing availability of damages for pain and suffering under the Survival Act); *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 939 n.15 (D.C. 1995), *opinion amended on denial of reh'g*, 681 A.2d 1097 (D.C. 1996) (noting that the 1978 amendment of the Survival Act "reflected a legislative intent to permit recovery for pain and suffering in survival actions"); *cf. Thompson*, 590 F. Supp. 3d at 71–72 (holding that an allegation of "severe emotional distress" pleaded a sufficient injury in fact to maintain a § 1985(1) claim).

Accordingly, none of Defendants' arguments merit dismissal of Plaintiff's Survival Act claim insofar as it is based on a violation of § 1985(1).

### E. Professional Rescuer Doctrine

Last, the court addresses a defense that only Tanios raises: the professional rescuer doctrine. Tanios's Mem. at 11–12. That doctrine "bars those engaged in rescue work as a part of their employment from recovering damages for injuries sustained on the job" under "[t]he rationale . . . that professional rescuers, such as police or firefighters, have assumed the risks inherent in the profession for which they are compensated by the public." *Lee v. Luigi, Inc.*, 696 A.2d 1371, 1373–74 (D.C. 1997). Professional rescuers therefore cannot pursue civil remedies "for injuries occasioned by hazards which are neither hidden nor unknown to them in the course of their work, nor nonincidental to that work[.]" *Gillespie v. Washington*, 395 A.2d 18, 21 (D.C. 1978).

According to Tanios, because Officer Sicknick was injured in the line of duty, the professional rescuer doctrine precludes recovery. Tanios's Mem. at 11–12.

It is premature to rule on this argument. The rationale for the professional rescuer doctrine in the District of Columbia rests in part on the premise that "the professional rescuer is held to have assumed the risks attending his work." *Gillespie*, 395 A.2d at 20. Assumption of risk "is typically an affirmative defense and the burden of proof lies with the defendant." *Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affs.*, 892 F.3d 348, 359 (D.C. Cir. 2018). At the Rule 12(b)(6) stage, although a plaintiff must plead sufficient facts to establish a plausible claim, she is "not required to negate an affirmative defense in [her] complaint." *de Csepel v. Republic of Hungary*, 714 F.3d 591, 608 (D.C. Cir. 2013) (quoting *Flying Food Grp., Inc. v. NLRB*, 471 F.3d 178, 183 (D.C. Cir. 2006)). "[A]s long as a plaintiff's potential 'rejoinder to the affirmative defense [is not] foreclosed by the allegations in the complaint,' dismissal at the Rule 12(b)(6) stage is improper." *Id.* (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007) (en banc)). Here, Garza's allegations do not foreclose a finding that the assault on the Capitol was the type of hazard at least "unknown" to U.S. Capitol Police officers, making the professional rescuer doctrine inapplicable. The court thus declines to dismiss on that ground. *Cf. Young v. Sherwin-Williams Co.*, 569 A.2d 1173, 1176 (D.C. 1990) (holding that the doctrine was applicable where it could not be "said that someone hanging from a high place in life-threatening danger is a type of hazard unknown to firefighters in the course of their work").[4]

---

[4] The court need not address whether the professional rescuer doctrine, a defense at common law, applies to a claim made under §1985(1), a federal statute, as Garza has not raised that argument. See Pls.' Mem. of L. in Opp'n to Def. Zachary Rehl's Mot. for Summ. J., Smith v. Trump, Case No. 21-cv-02265 (APM), ECF No. 201, at 5 (arguing that the professional rescuer doctrine "—a state common law doctrine—does not bar recovery or claims under § 1985").

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the court grants in part and denies in part Defendants' Motions to Dismiss, ECF Nos. 40, 49, 50.  Plaintiff's claims under the Wrongful Death Act (Count 1) and for negligence per se (Counts 4 and 5) are dismissed, but Plaintiff may proceed as to her Survival Act claim based on § 1985(1) (Counts 2 and 3).

Dated:  January 2, 2024

Amit P. Mehta
United States District Court Judge